## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LAWRENCE SMITH

                    Plaintiff,                    Civil Action No.
                                                  9:12-CV-1474 (GTS/DEP)

        v.

ALBERT PRACK, *et al.*,

                    Defendants.

_____

APPEARANCES:                                      OF COUNSEL:

FOR PLAINTIFF:

LAWRENCE SMITH, *Pro se*
93-A-0080
Attica Correctional Facility
Box 149
Attica, NY 14011

FOR DEFENDANTS

HON. ERIC T. SCHNEIDERMAN                         MICHAEL G. McCARTIN, ESQ.
New York State Attorney General                   Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Lawrence Smith, a New York State prison inmate, brought this action pursuant to 42 U.S.C. § 1983 alleging that various named prison officials have violated his civil rights. In the two causes of action that remain in the case, plaintiff alleges that two individuals employed by the New York State Department of Corrections and Community Supervision ("DOCCS") violated his Fourteenth Amendment due process rights in connection with a disciplinary hearing and three other DOCCS employees violated his First Amendment rights by retaliating against him for filing grievances against them and another corrections officer.

Following the close of discovery, defendants filed a motion seeking the entry of summary judgment dismissing plaintiff's remaining claims. In his response in opposition to the motion, plaintiff has asked that the court "reinstate" one of the originally named defendants, a request which I have construed as a motion for reconsideration. For the reasons set forth below, I recommend the court grant defendants' motion and deny plaintiff's motion.

I.    <u>BACKGROUND</u>

Although plaintiff is now confined elsewhere, at the times relevant to this action, he was an inmate housed at the Auburn Correctional Facility ("Auburn"), a prison operated by the DOCCS. *See generally* Dkt. No. 12.

Plaintiff alleges that while he was incarcerated at Auburn, defendants Michael Parish, Eric VanNess, and Daniel Vitale, all of whom are corrections officers stationed at the facility, retaliated against him after he filed various grievances against them and D. Walters, another corrections officer at Auburn who is not a defendant in this action.[1] Dkt. No. 12 at 22, 26, 31-32, 34, 47; Dkt. No. 36-3 at 57-62. Specifically, plaintiff contends that defendants Parish, VanNess, and Vitale denied him recreation on one occasion, unnecessarily pat-frisked him on a separate occasion, and started a fire in his cell on October 25, 2009. *Id.*; Dkt. No. 40 at 41. In support of defendants' motion, these individuals have submitted declarations in which they all deny having had any involvement with the fire in plaintiff's cell. Dkt. No. 36-10 at 2; Dkt. No. 36-11 at 2. Dkt. No. 36-12 at 1-2. There is also evidence in the record that suggests defendant Vitale did

---

[1]    Although the record evidence includes some grievances authored by plaintiff between 2008 and 2012, he fails to specifically identify which served as the basis for the alleged retaliation by defendants Parish, VanNess, and Vitale. Dkt. No. 41-1. Two of the grievances, dated September 8, 2008 and September 7, 2011, complain of conduct by Corrections Officer F. F. Smith and Lieutenant Ouimette, neither of whom is named as a defendant in the action. *Id.* at 5-7, 21-24. Other grievances accuse Walters and/or defendants Parish, VanNess, and Vitale of stalking him, but are dated November 18, 2009, December 13, 2010, and August 28, 2011. *Id.* at 3-4, 9-14, 15-18. Because these grievances were filed after the alleged conduct by defendants Parish, VanNess, and Vitale that forms the basis of plaintiff's retaliation claim, they cannot be the grievances that allegedly motivated the defendants to take adverse action against him. For the same reason, the grievances filed by plaintiff accusing defendants Parish and Vitale of setting a fire in his cell, which are dated October 27, 2009 and November 10, 2009, also cannot serve as the motivation for defendants' alleged retaliation. Dkt. No. 36-8 at 11-14, 15-22.

not work in plaintiff's block, nor was he near plaintiff's cell on the day of the fire. Dkt. No. 36-8 at 7. In an investigation regarding the fire, Lieutenant J. Valice interviewed all of the parties involved and found no evidence to support plaintiff's allegations, noting that plaintiff "was continuously uncooperative by insisting that there was some sort of conspiracy being perpetrated against him by Officer D. Vitale and Officer M. Parish." *Id.*

Unrelated to plaintiff's allegations of retaliation, plaintiff authored grievances on January 25, 2012 and February 16, 2012, alleging that Walters was stalking him, describing Walters in derogatory terms, and threatening to cause "problems" if Walters' conduct was not addressed.[2] Dkt. No. 36-4 at 17-18, 21-22. On February 22, 2012, Walters issued a misbehavior report to plaintiff in connection with his grievances, charging him with making threats, harassment, and lying. Dkt. No. 36-4 at 5; Dkt. No. 36-5 at 25. Plaintiff was served with a copy of the misbehavior report on February 23, 2012. Dkt. No. 36-5 at 2-4.

---

[2]    By way of example, plaintiff's grievance dated January 25, 2012, included the following language:

> So, you don't want to stop this sick beast homosexual from following me!? Well, let him to try [sic] to get near me to steal my property again! I suggest you keep your homosexual staff from stalking people or there's gonna [sic] be problems!

Dkt. No. 36-4 at 18.

Beginning on February 28, 2012, and ending on March 19, 2012, a Tier III disciplinary hearing was conducted by defendant Brian Chuttey,[3] a captain with the DOCCS, in connection with the misbehavior report issued to plaintiff by Walters.[4] Dkt. No. 36-5; Dkt. No. 36-9 at 1-2. Prior to the hearing, plaintiff met with an assistant to help him prepare for the hearing, at which time plaintiff requested, and was granted access to, certain prison records and identified three individuals as witnesses to be called at the hearing. Dkt. No. 36-4 at 9; Dkt. No. 36-5 at 3-4. At the hearing, defendant Chuttey heard testimony from Walters and two other corrections officers, Auburn's food administrator, and two inmates requested by the plaintiff. *See generally* Dkt. No. 36-5. Plaintiff was permitted to ask each of the witnesses questions. *Id.* Although plaintiff requested that a third inmate be called to

---

[3]   Although plaintiff has identified this defendant as "Capt. B. Chuttney" in his amended complaint, Dkt. No. 12 at 7, the correct spelling of that individual's last name is "Chuttey." Dkt. No. 36-9. The clerk of the court is respectfully directed to modify the docket sheet in this matter to reflect the correct spelling of this defendant's name.

[4]   The DOCCS conducts three types of inmate disciplinary hearings. *See* 7 N.Y.C.R.R. § 270.3; *see also Hynes v. Squillace*, 143 F.3d 653, 655 n.1 (2d Cir. 1998). Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges. *Hynes*, 143 F.3d 655 n.1. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the SHU. *Id.* Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. *Id.*

testify on his behalf, the inmate refused on the basis that "[he] didn't see anything."[5] Dkt. No. 36-4 at 7.

At the hearing, defendant Chuttey was primarily concerned with ascertaining whether, as plaintiff alleged, he was confined in keeplock[6] on February 20, 2012, two days prior to having been issued the misbehavior report. *See generally* Dkt. No. 36-5. Plaintiff contends that Walters ordered him to be unlawfully keeplocked in retaliation for the filing of grievances in January and February 2012. *Id.* The Auburn Food Service Administrator, Miss Martin, testified at the disciplinary hearing that her records for February 20, 2012, reflected that plaintiff was in keeplock and received his food tray in his cell on that date. Dkt. No. 36-5 at 23. Corrections Officer Bauer, however, testified that according to the prison log book, plaintiff was

---

[5]      In his unsworn response to defendants' local rule 7.1(a)(3) statement of material facts and memorandum of law, plaintiff contends that the inmate that refused to testify did so only after being offered a family reunion visit in exchange for remaining silent. Dkt. No. 39 at 11; Dkt. No. 40 at 47. There is no competent record evidence to support this allegation.

[6]      "Keeplock" is a form of confinement through which an "inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); *accord*, *Warburton v. Goord*, 14 F. Supp. 2d 289, 293 (W.D.N.Y. 1998); *Tinsley v. Greene,* No. 95-CV-1765, 1997 WL 160124, at *2 n.2 (N.D.N.Y. Mar. 31, 1997) (Pooler, J., *adopting report and recommendation by* Homer, M.J.) (citing *Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995)).

not keeplocked until February 22, 2012.[7] *Id.* at 24. The two inmates called to testify on plaintiff's behalf both stated that plaintiff was under keeplock confinement on February 20, 2012. *Id.* at 30-31, 32-33. Corrections Officer Hesse, who was working in plaintiff's block on February 20, 2012, testified that he could not recall whether plaintiff was keeplocked on that date. *Id.* at 38.

At the conclusion of the hearing, defendant Chuttey found plaintiff guilty of the three charges lodged against him in the misbehavior report, and imposed a penalty of six months disciplinary confinement in the facility's special housing unit ("SHU"), with a corresponding loss of privileges and a recommendation that plaintiff forfeit good time credits. Dkt. No. 36-4 at 3; Dkt. No. 36-5 at 51-52. On appeal to defendant Albert Prack, the DOCCS Director of Special Housing/Inmate Disciplinary Program, defendant Chuttey's determination was affirmed on May 23, 2012. Dkt. No. 36-6 at 1.

II.     PROCEDURAL HISTORY

Plaintiff's complaint in this action was filed on September 26, 2012, accompanied by an application for leave to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2, 5. After the court determined that plaintiff's initial IFP request was incomplete, plaintiff thereafter filed a second IFP application.

---

[7]     Although plaintiff alleges that the log book was tampered with, Dkt. No. 40 at 44, this is not supported by any record evidence.

Dkt. No. 6. District Judge Glenn Suddaby granted plaintiff's renewed IPF application and, on initial review of his complaint pursuant to 18 U.S.C. §§ 1915(e), 1915A, dismissed plaintiff's claims with leave to amend. Dkt. Nos. 6, 8. On or about July 22, 2013, plaintiff availed himself of the opportunity to amend and filed an amended complaint. Dkt. No. 12. After again reviewing plaintiff's claim for facial sufficiency, Judge Suddaby *sua sponte* dismissed all of plaintiff's claims, with the exception of his (1) due process claim asserted against defendants Chuttey and Prack, and (2) retaliation claim against defendants Parish, VanNess, and Vitale. Dkt. No. 15 at 20-21.

Following the completion of discovery in this matter, defendants moved for summary judgment, arguing that the record evidence does not support either plaintiff's due process or retaliation claim, and that, in any event, they are entitled to qualified immunity from suit. *See generally* Dkt. No. 36-14. Plaintiff has responded in opposition to defendants' motion. Dkt. No. 40. In that response, he requests, *inter alia*, that the court "reinstate D. Walters as one of [the] defendants." Dkt. No. 40 at 51. I have construed this as a request to reconsider the court's order dismissing Walters following its review of plaintiff's amended complaint pursuant to 28 U.S.C. §§ 1915(e), 1915A. The parties' motions have been forwarded to me for the issuance of

a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and

Northern District of New York Local Rule 72.3(c).

III.   DISCUSSION

    A.   Defendants' Motion for Summary Judgment

        1.   Legal Standard

Summary judgment motions are governed by Rule 56 of the Federal

Rules of Civil Procedure. Under that provision, the entry of summary

judgment is warranted "if the movant shows that there is no genuine dispute

as to any material facts and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins.

Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d

Cir. 2004). A fact is "material" for purposes of this inquiry, if it "might affect

the outcome of the suit under the governing law." *Anderson*, 477 U.S. at

248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

A material fact is genuinely in dispute "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson*,

477 U.S. at 248.

A party moving for summary judgment bears an initial burden of

demonstrating that there is no genuine dispute of material fact to be decided

with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a motion for summary judgment, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553.The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### 2.    Due Process Claim

Defendants seek to dismiss the due process claim asserted by Smith against defendants Chuttey and Prack because, according to them, the record evidence reflects that, during the course of his disciplinary hearing,

plaintiff was afforded all of the protections required under the due process clause. Dkt. No. 36-14 at 6-11.

To establish a procedural due process claim under section 1983, a plaintiff must show that he (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Specifically, while under certain circumstances disciplinary confinement of less than 101 days can be shown to meet the atypicality standard under *Sandin*, the Second Circuit generally takes the position that SHU confinement, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even under "normal conditions." *Colon v. Howard*, 215 F.3d 227, 231, 232 n.5 (2d Cir. 2000); *Ortiz*, 380 F.3d at 654. "Where the plaintiff was confined for an intermediate duration between 101 and 305 days—'development of a detailed record' of the conditions of the

confinement relative to ordinary prison conditions is required." *Palmer v. Richards*, 364 F.3d 60, 64-65 (2d Cir. 2004) (quoting *Colon*, 215 F.3d at 234).

With respect to the second element of a due process claim, the procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well established, the contours of the requisite protections having been articulated in *Wolff v. McDonnell*, 418 U.S. 539, 564-69 (1974). Under *Wolff*, the constitutionally mandated due process requirements include (1) written notice of the charges to the inmate; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of his defense, subject to a prison facility's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense. *Wolff*, 418 U.S. at 564-70; *see also Luna v. Pico,* 356 F.3d 481, 487 (2d Cir. 2004).

The due process clause of the Fourteenth Amendment also guarantees that "[a]n inmate subject to a disciplinary hearing is entitled to . . . an impartial hearing officer." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (citing *Wolff*, 418 U.S. at 570-71). The Second Circuit has explained

that its "conception of an impartial decision maker is one who, *inter alia*, does not prejudge the evidence and who cannot say . . . how he would assess evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990). "The degree of impartiality required of prison officials[, however,] does not rise to the level of that required of judges." *Allen*, 100 F.3d at 259. Indeed, "[i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Russell v. Selsky*, 35 F.3d 55, 60 (2d Cir. 1996). "A hearing officer may satisfy the standard of impartiality if there is 'some evidence in the record' to support the findings of the hearing." *Allred v. Knowles*, No. 06-CV-0456, 2010 WL 3911414, at *5 (W.D.N.Y. Oct. 5, 2010) (quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985) ("To pass muster under the Fourteenth Amendment, a hearing officer's disciplinary determination must garner the support of at least "some evidence."))[8] "Thus, a plaintiff-inmate armed with nothing more than conclusory allegations of bias and prejudgment should not be able to defeat a well-supported motion for summary judgment." *Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989).

---

[8]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

In this instance, defendant Chuttey sentenced plaintiff to serve 180 days in SHU confinement following the disciplinary hearing. Because such a sentence falls within the "intermediate duration" recognized by the Second Circuit, "development of a detailed record" of the conditions of the confinement relative to ordinary prison conditions is required in order to determine whether plaintiff has been deprived a liberty interest. *Palmer*, 364 F.3d at 64-65. Because the parties have provided the court with no evidence regarding the conditions of plaintiff's SHU confinement, I have assumed, for purposes of this report, that plaintiff was deprived of a cognizable liberty interest.

Examining the record to determine whether plaintiff was afforded procedural due process at the disciplinary hearing, I find no reasonable factfinder could conclude that either defendant Chuttey or defendant Prack denied plaintiff the protections afforded under the due process clause. Plaintiff received written notice of the charges against him, had an opportunity to appear at a disciplinary hearing, and was afforded a reasonable opportunity to present witnesses and evidence in support of his defense at the hearing. Dkt. No. 36-5 at 2-3, 30-33. In addition, plaintiff received assistance in preparing for the hearing and was provided with a written decision by defendant Chuttey explaining his determination. Dkt. No.

36-4 at 3-4, 9-10; Dkt. No. 36-5 at 2-4.

Plaintiff contends that defendant Chuttey denied him the opportunity to call one witness, identified as Inmate Hawkins, and that defendant Chuttey forged the form that purports to reflect Inmate Hawkins' refusal to testify. Dkt. No. 39 at 11; Dkt. No. 40 at 52-53. At the hearing, defendant Chuttey explained on the record that, although plaintiff requested his testimony, Inmate Hawkins declined to do so because he "'didn't see anything.'" Dkt. No. 36-5 at 29. Plaintiff objected, stating that he requested Inmate Hawkins' testimony because Hawkins "was the one who brought [plaintiff] the feed up tray" at his cell on February 20, 2012, which would purport to prove that plaintiff was keeplocked on that day, not because he sought testimony from Inmate Hawkins regarding anything he witnessed.[9] *Id.* at 29-30, 35-36. With respect to inmates refusing to testify at disciplinary hearings, the Second Circuit has said that, "if a prison official. . . reasonably

---

[9]      Whether or not plaintiff was keeplocked on February 20, 2012, or February 22, 2012, is not relevant for purposes of the due process claim. Even assuming that Walters keeplocked plaintiff on February 20, 2012, and the disciplinary hearing did not commence within the seven days prescribed by 7 N.Y.C.R.R. § 251-5.1, the hearing, which began eight days after plaintiff alleges he was keeplocked, was commenced within a reasonable time. *See Russell v. Coughlin*, 910 F.2d 75, at 79 n.1 (2d Cir. 1990) ("Federal constitutional standards rather than state law define the requirements of procedural due process. The fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action, does not settle what protection the federal due process clause requires. Here, defendants' conduct is to be judged against the flexible reasonable[-]time standard . . . and we are not bound to rely on New York's seven-day rule[.]" (citations, quotation marks omitted)).

concludes that it would be futile to call a witness to testify, his refusal to do so will not constitute a violation of the prisoner's constitutional rights." *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993). In addition, a hearing officer is under no obligation to "make an independent evaluation of the basis for the refusal to testify." *Greene v. Coughlin*, No. 93-CV-2805, 1995 WL 60020, at *14 (S.D.N.Y. Feb. 10, 1995); *see also Jamison v. Fischer*, No. 11-CV-4697, 2013 WL 5231457, at *3 (S.D.N.Y. July 11, 2013) ("[A]n inmate has no constitutional claim simply because the hearing officer chooses not to inquire into a witness' reasons for refusing to testify."). In this case, defendant Chuttey explained to plaintiff at the hearing why he would not call Inmate Hawkins as a witness, citing Hawkins' refusal to testify, as reflected in a form entitled "REQUESTED INMATE WITNESS REFUSAL TO TESTIFY IN TIER II/III DISCIPLINARY HEARING."[10] Dkt. No. 36-5 at 29-30, 35-36. Based on this information, defendant Chuttey reasonably believed that calling Inmate Hawkins as a witness would be futile. Accordingly, plaintiff's due process rights were not violated by defendant Chuttey's refusal to call Inmate Hawkins. *See, e.g., Johnson v. Doling*, No. 05-CV-0376, 2007 WL 3046701, at *7 (N.D.N.Y. Oct. 17, 2007) (McAvoy, J., *adopting report and recommendation by* Treece, J.) ("A failure to summon

---

[10]    Plaintiff's allegation that defendant Chuttey forged this form, *see, e.g.,* Dkt. No. 40 at 53, is not supported by any record evidence and constitutes mere conjecture.

the testimony of a witness who has refused to testify, in the absence of evidence that the refusal was linked to intimidation on the part of prison officials, does not violate due process because calling a witness who refuses to speak upon questioning would be futile.").

Plaintiff also contends that defendant Chuttey exhibited bias against him during the hearing. *See, e.g.,* Dkt. No. 40 at 21, 46. There is no evidence in the record, however, aside from plaintiff's conclusory allegations, that defendant Chuttey committed "fraud," "corrupted the entire hearing process," forged documents, or suborned perjury from Walters, all of which, plaintiff contends, demonstrates defendant Chuttey's bias. Dkt. No. 39 at 9-15; Dkt. No. 40 at 6, 11-14, 19, 21, 33, 46. The hearing record in this case reveals more than adequate evidence to support all of the charges upon which a finding of guilt was rendered. Plaintiff admitted to writing the grievances containing inflammatory language, and Walters' testimony was evidence upon which defendant Chuttey could have relied in concluding that plaintiff was guilty of the threats, harassment, and false statements. Dkt. No. 36-3 at 26, 28, 30, 33-38; Dkt. No. 36-5 at 18-19, 25-26. In light of this evidence, I find there was at least "some evidence in the record" to support defendant Chuttey's findings. *Hill*, 472 U.S. at 455.

Accordingly, for all the reasons cited above, I recommend the court

grant defendants' motion for summary judgment as it relates to plaintiff's due process claim asserted against defendant Chuttey. As for defendant Prack, because plaintiff asserts a due process cause of action against him based on his affirmance of defendant Chuttey's determinations at the disciplinary hearing, which I have concluded comported with due process, I recommend the court also grant defendants' motion with respect to plaintiff's due process claim asserted against him. *See, e.g., Lopez v. Whitmore*, No. 13-CV-0952, 2015 WL 4394604, at *11 (July 16, 2015) (Sannes, J., *adopting report and recommendation by* Baxter, M.J.) (dismissing due process claim against defendant Prack "[b]ecause his only involvement in plaintiff's claims was to affirm the results of a disciplinary hearing that th[e] court . . . found comported with due process").

### 3. Retaliation

Defendants also seek dismissal of plaintiff's retaliation claim, asserted against defendants Parish, VanNess, and Vitale, based on the lack of record evidence from which a reasonable factfinder could conclude that they took adverse action against plaintiff in retaliation for his filing grievances against them and Walters. Dkt. No. 36-14 at 11-14.

A cognizable section 1983 retaliation claim lies when prison officials take adverse action against an inmate that is motivated by the inmate's

exercise of a constitutional right, including the free speech provisions of the First Amendment. *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). The Second Circuit has cautioned, however, that, because of "the ease with which claims of retaliation may be fabricated, courts should "examine prisoners' claims of retaliation with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *accord, Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2013).

To establish a claim under section 1983 for unlawful retaliation, a plaintiff must prove that (1) he engaged in protected conduct, (2) the defendants took adverse action against him, and (3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 99-CV-2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.). "[P]rison officials' conduct constitutes an 'adverse action' when it

'would deter a similar situated individual or ordinary firmness from exercising his or her constitutional rights.'" *Alicea v. Howell*, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

In this case, plaintiff alleges that defendants Parish, VanNess, and Vitale retaliated against him for filing grievances against them and Walters by (1) denying him recreation on one occasion, (2) pat-frisking him without cause on a separate occasion, and (3) setting a fire in his cell on October 25, 2009. Dkt. No. 12 at 22, 26, 31-32,34, 47; Dkt. No. 36-3 at 57-62. As to the first element of the retaliation claim, it is well settled that the filing of grievances constitutes protected activity for purposes of a First Amendment retaliation analysis, and defendants do not contend that plaintiff cannot satisfy this requirement. Dkt. No. 36-14 at 12; *see Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001) ("It is undisputed that retaliation by prison officials against an inmate for the filing of a grievance can act as a deprivation of a constitutionally protected right.").

Turning now to the alleged adverse action taken by defendants Parish, VanNess, and Vitale, while denying recreation to and pat-frisking plaintiff on one occasion do not, standing alone, constitute adverse action because they amount to *de minimis* conduct, *see, e.g., Lunney v. Brureton*,

No. 04-CV-2438, 2007 WL 1544629, at *21 (S.D.N.Y. May 29, 2007) ("Case law suggests that the isolated or sporadic denial of privileges do not suffice to state a claim of actionable retaliation." (citing cases)), I find that plaintiff's allegation that those individuals intentionally set a fire in his cell on October 25, 2009, is sufficient to satisfy the second element of the retaliation claim. Fatal to plaintiff's retaliation claim, however, is the absence of any record evidence from which a reasonable factfinder could conclude that defendants Parish, VanNess, or Vitale set the fire. In this respect, at his deposition, plaintiff testified as follows:

> **Q. Mr. Smith, is there any other way in which Officer Vitale retaliated against you in the October 2009 time frame?**
>
> A. Really this is conjecture and my own opinion, but I believe Vitale along with Parrish as well as E Van Ness set a fire in my cell and they went on to conspire to steal 95 percent of my property.
>
> **Q. You began that statement with the phrase 'this is conjecture and my own opinion', correct?**
>
> A. Yes.
>
> **Q. That's what you said, right?**
>
> A. Yes, I said that.
>
> **Q. Is that because you don't know if Officer Vitale, Officer Parrish or Officer Van Ness actually set a fire in your cell?**
>
> A. No, I said conjecture and my opinion, because I can't say that I stood there and watched them, but all of the evidence points to only the staff who I had filed grievances on for threats and other retaliation. No other staff did I have any

> problems with in my entire period of being in
> Auburn would have a reason to do anything
> unless of course they were ordered to or
> requested to by those I have problems with.
>
> **Q. So you assume based upon the fact that
> you had problems with them that they must
> have set a fire in your cell?**
>
> A. Partially and their responses to my complaints
> and grievances point to guilt.
>
> **Q. Did the officers ever indicate to you in any
> way, shape or form that they set the fire in
> your cell? And when I say 'the officers,' I'm
> talking about Officer Parrish, Officer Vitale
> and Officer Van Ness.**
>
> A. . . . No, they didn't say it directly to me, no.
>
> **Q. Did any inmate ever tell you that Officer
> Parrish, Officer Vitale or Officer Van Ness
> set the fire in your cell in October of 2009?**
>
> A. No.

Dkt. No. 36-3 at 62-65. Based on this testimony, as well as the absence of

any other evidence that suggests defendants Parish, VanNess, or Vitale

were involved in setting a fire in plaintiff's cell in October 25, 2009, I

recommend plaintiff's retaliation claim be dismissed.

  B.   Plaintiff's Motion for Reconsideration of the Court's Prior Order
       Dismissing Walters

Plaintiff's amended complaint named Walters as a defendant. *See,

e.g.,* Dkt. No. 12 at 7. District Judge Suddaby dismissed plaintiff's claims

against this individual, however, pursuant to 28 U.S.C. §§ 1915(e), 1915A

because the amended complaint failed to "clearly allege that [plaintiff] had

filed grievances against Walters in temporal proximity to the [fire in plaintiff's

cell on October 25, 2009]." Dkt. No. 15 at 16 n.20. In his memorandum of law submitted in opposition to defendants' motion for summary judgment, plaintiff requests the court "reinstate D. Walters as one of my defendants, because it is NOW clear who the author of the February 22, 2012 disciplinary report is: <u>D. Walters!</u>" Dkt. No. 40 at 51 (emphasis in original). I have liberally construed plaintiff's request as a motion to reconsider the court's order dismissing Walters.

Plaintiff's reconsideration motion implicates rule 7.1(g) of the court's local rules of practice. Rule 7.1(g) provides, in pertinent part, as follows:

> **Motion for Reconsideration.** Unless Fed. R. Civ. P. 60 otherwise governs, a party may serve a motion for reconsideration or reargument no later than **FOURTEEN DAYS** after the entry of the challenged judgment, order, or decree.   All motions for reconsideration shall conform with the requirements set forth in L.R. 7.1(a)(1) and (2) . . . . The Court will decide motions for reconsideration or reargument on submission of the papers, without oral argument, unless the Court directs otherwise.

N.D.N.Y. L.R. 7.1(g) (emphasis in original).[11] In this district, reconsideration

---

[11]     Parenthetically, Rule 60 of the Federal Rules of Civil Procedure does not apply in this case, where the order or judgment in question (an order denying a party's motion to stay) is not a final one. *See, e.g., Makas v. New York State Dep't of Motor Vehicles*, No. 97-CV-1892, 1998 WL 219588, at   *1 n.1 (N.D.N.Y. Apr. 29, 1998) (McCurn, J.) ("This motion for reconsideration is not made pursuant to Rule 60(b) of the Federal Rules of Civil Procedure because [that rule] only applies to final judgments and orders."). Instead, reconsideration is properly sought under rule 7.1(g) of the local rules. *Douglas v. New York State Adirondack Park Agency*, No. 10-CV-0299, 2012 WL 5364344, at *4 (N.D.N.Y. Oct. 30, 2012) (Suddaby, J.).

of an order entered by the court is appropriate upon a showing of "(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C-TC 9th Ave. P'ship*, 182 B.R.1, 3 (N.D.N.Y. 1995) (McAvoy, J.); *see also Cayuga Indian Nation of New York v. Pataki*, 188 F. Supp. 2d 223, 244 (N.D.N.Y. 2002) (McCurn, J.); *Sumner v. McCall*, 103 F. Supp. 2d 555, 558 (N.D.N.Y. 2000) (Kahn, J.).

The benchmark for seeking reconsideration of a court's order has been described as demanding. *In re C-TC 9th Ave. P'ship*, 182 B.R. at 2. A motion for reconsideration is not a vehicle through which a losing party may raise arguments that could have been presented earlier but for neglect, nor is it a device "intended to give an unhappy litigant one additional chance to sway the judge." *Brown v. City of Oneonta, New York*, 858 F. Supp. 340, 342 (N.D.N.Y. 1994) (McAvoy, J.) (quotation marks omitted). To qualify for reconsideration, "[t]he moving party [must] point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F. 3d 255, 257 (2d Cir. 1995).

As an initial matter, plaintiff's motion is untimely. The court issued its order dismissing Walters from this action on January 27, 2014, and plaintiff

submitted his motion for reconsideration on or about December 14, 2014, eleven months later. Dkt. No. 16, 40. This is well beyond the fourteen days provided for in rule 7.1(g) of the local rules of practice for this court. Because plaintiff has not provided any justification for his delay, denial of plaintiff's motion on this basis alone would be appropriate. N.D.N.Y. L.R. 7.1(g); *Lyman v. City of Albany*, 597 F. Supp. 2d 301, 311 (N.D.N.Y. 2009).

In any event, plaintiff's motion also fails on the merits. Plaintiff contends that the court erred in overlooking certain allegations contained in his amended complaint that reflect that Walters authored the misbehavior report issued to him on or about February 22, 2012. Dkt. No. 40 at 48-51. Whether Walters was the author of the misbehavior report, however, is not relevant to any of plaintiff's claims asserted in the amended complaint. In dismissing plaintiff's claims against defendant Walters, the court merely noted the uncertainty with respect to the author of this misbehavior report for contextual purposes and not as a basis for dismissing Walters. Dkt. No. 15 at 5 n.11. As implied in the court's order dated January 27, 2014, the amended complaint could be construed only to have asserted a retaliation claim against Walters, and the allegations do not, as concluded by Judge Suddaby, plausibly allege temporal proximity between a grievance plaintiff filed against Walters and the fire incident in plaintiff's cell on October 25,

2009. *See generally* Dkt. No. 12. Because I find no error or manifest injustice in the court's decision dismissing Walters, I recommend plaintiff's motion for reconsideration be denied.[12]

IV.    SUMMARY AND RECOMMENDATION

Because plaintiff was afforded the protections articulated by *Wolff* and has "armed [himself] with nothing more than conclusory allegations of bias and prejudgment", *Francis*, 891 F.2d at 47, regarding defendant Chuttey's hearing determination and defendant Prack's affirmance, he has failed to establish the existence of a dispute of material fact with respect to his due process claim, and no reasonable factfinder could find that his due process rights were violated. That cause of action is therefore subject to dismissal. Similarly, because there is no evidence that defendants Parish, VanNess, and Vitale retaliated against him by setting fire to his bed, his retaliation claim asserted against these individuals is also subject to dismissal.[13]

Accordingly, it is hereby

---

[12]    Because plaintiff has not argued that the court should reconsider its decision based on an intervening change in law or the availability of evidence not previously available, I have not considered those grounds for reconsideration. Dkt. No. 40 at 48-51; *Shannon v. Verizon N.Y., Inc.*, 519 F. Supp. 2d 304, 307 (N.D.N.Y. 2007) (Kahn, J.).

[13]    In light of my recommendation that all of plaintiff's claims be dismissed on other grounds, I have not addressed defendants' qualified immunity argument.

ORDERED that the clerk modify the court's records to reflect the correct spelling of defendant Brian Chuttey's name; and it is further hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 36) be GRANTED and all of plaintiff's claims be DISMISSED; and it is further

RECOMMENDED that plaintiff's motion for reconsideration (Dkt. No. 40) of the court's order dismissing plaintiff's claims against Corrections Officer Walters be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     July 29, 2015
               Syracuse, New York

_____
David E. Peebles
U.S. Magistrate Judge

Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)
**(Cite as: 2010 WL 3911414 (W.D.N.Y.))**



Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
W.D. New York.
Jeffrey ALLRED, Plaintiff,
v.
Captain KNOWLES, Hearing Officer Sgt. Noto,
Defendants.

No. 06–CV–0456Sr.
Oct. 5, 2010.

Jeffrey Allred, Queensvillage, NY, pro se.

Kim S. Murphy, NYS Attorney General's Office, Buffalo, NY, for Defendants.

### DECISION AND ORDER
H. KENNETH SCHROEDER, JR., United States Magistrate Judge.

**\*1** Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including entry of final judgment. Dkt. # 14.

Plaintiff, Jeffrey Allred, filed this *pro se* action seeking relief pursuant to 42 U.S.C. § 1983. Dkt. # 1. Plaintiff alleges that while an inmate at the Gowanda Correctional Facility ("Gowanda") his rights pursuant to the First, Eighth, and Fourteenth Amendments to the United States Constitution were violated. *Id.* Currently before the Court is defendants' motion for summary judgment. Dkt. # 18. For the following reasons, defendants' motion for summary judgment is granted and the plaintiff's complaint is dismissed in all respects.

### BACKGROUND
Plaintiff filed this action on July 11, 2006, against defendants, Michael Knowles and Louis

Noto, pursuant to 42 U.S.C § 1983, seeking monetary damages. *Id.* The action arises from a misbehavior report issued on or about July 27, 2003 by defendant Noto against plaintiff and the resulting Tier III disciplinary hearing conducted by defendant Knowles. *Id.* Specifically, the complaint alleges the issuance of a false misbehavior report, retaliation and violation of plaintiff's due process rights. *Id.*

At the time of the events alleged in the complaint, plaintiff was an inmate in the care and custody of the New York State Department of Correctional Services ("DOCS") housed at Gowanda. Dkt. # 1, p. 2; Dkt. # 20, p. 1. Defendant Knowles was a Captain at Gowanda and his duties included, from time to time, conducting inmate disciplinary hearings. Dkt. # 1, pp. 3–4; Dkt. # 21, pp. 1–2. Sergeant Noto was a DOCS Sergeant on plaintiff's housing unit at Gowanda. Dkt. # 1, p. 4; Dkt. # 22, pp. 1–2.

On July 22, 2003, at approximately 8:30 p.m., Correctional Officer Millich discovered several marijuana cigarettes during a search of inmate Meja's cell. Dkt. # 22, p. 3. Consequently, defendant Noto initiated an investigation into the matter. Dkt. # 1, p. 8; Dkt. # 22, p. 3. Defendant Noto maintained that Meja told him that he had purchased the marijuana cigarettes from plaintiff. Dkt. # 22, p. 3. Based on Meja's identification of plaintiff and information allegedly received from confidential informant(s)—who identified plaintiff as a drug dealer and indicated that the sale in question occurred between 7:00 and 8:00 p.m. on July 22, 2003 in the prison yard—defendant Noto issued a misbehavior report charging plaintiff with violating Inmate Rule 113.25. Dkt. # 1, pp. 22 and 25; Dkt. # 22, p. 3. Inmate Rule 113.25 provides that "an inmate shall not make, possess, sell or exchange any narcotic, narcotic paraphernalia, controlled substance or marijuana. An inmate shall not conspire with any person to introduce such items into the facility." Dkt. # 22, p. 2; *see also* 7 NYCRR § 270.2(14)(xv).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

On July 28, 2003, a Tier III disciplinary hearing was conducted before defendant Knowles. Dkt. # 1, p. 23; Dkt. # 21, p. 2. At the hearing, plaintiff testified in his own defense that he was at a Nation of Islam ("NOI")/Black studies program during the period of the alleged drug sale in the prison yard. Dkt. # 1, p. 24; Dkt. # 21, p .6. Plaintiff called two other inmates, Ford and Williams, as alibi witnesses. Dkt. # 1, p. 29; Dkt. # 21, p. 7. Ford and Williams attended the NOI/Black studies program with plaintiff, but could not verify the time plaintiff left. Dkt. # 21, pp. 7 and 16. The sign-out sheet for the NOI/Black studies class did not indicate the time plaintiff left, although it indicated that both Ford and Williams left at 7:00 p.m. *Id.* Plaintiff did not sign back into his housing unit until 8:10 p.m. and no one was able to verify his whereabouts after 7:00 p.m. Dkt. # 21, p. 17. Defendant Knowles interviewed the confidential informant(s) outside the presence of plaintiff and found them to be credible witnesses. Dkt. # 21, pp. 7–8. The confidential informant(s) identified plaintiff as a drug dealer and indicated that the sale of the drugs to Meja occurred between 7:00–8:00 p.m. in the prison yard. *Id.* Meja also testified at the hearing, and recanted his initial identification of plaintiff as the person who sold him drugs. Dkt. # 1, p. 26; Dkt. # 21, p. 11. When asked by defendant Knowles why he initially told defendant Noto that plaintiff was the individual who sold him drugs, Meja answered that he did so because he wanted defendant Noto to "leave [him] alone." Dkt. # 24, Ex. D, p 5. In response, defendant Knowles asked Meja to confirm, by answering in either the affirmative or the negative, if he initially identified plaintiff as the individual who sold him drugs, to which Meja answered in the affirmative. *Id.*

**\*2** On August 3, 2003, at the close of the disciplinary hearing, defendant Knowles entered a guilty finding against plaintiff. Dkt. # 24, Ex. C. Based on the Hearing Disposition Report completed by defendant Knowles, he based his guilt determination on the following evidence: defendant Noto's misbehavior report and his testimony that Meja initially identified plaintiff as the individual who sold Meja drugs in the yard; and the testimony of the confidential informant(s). *Id.* Defendant Knowles imposed a penalty of 12 months of confinement in special housing unit ("SHU") and a loss of privileges between the period August 22, 2003 and August 22, 2004.

### *DISCUSSION AND ANALYSIS*
### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff." *Thomas v. Irvin,* 981 F.Supp. 794, 799 (W.D.N.Y.1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Catanzaro v. Weiden,* 140 F.3d 91, 93 (2d Cir.1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248; *see Bryant v. Maffucci,* 923 F.2d 979 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant,* 923 F.2d at 982. A party seeking to defeat a motion for summary judgment must do more than make broad factual allegations and invoke the ap-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

propriate statute. The non-moving party must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial. *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995).

Pursuant to Fed.R.Civ.P. 56(e), affidavits in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, affidavits "must be admissible themselves or must contain evidence that will be presented in an admissible form at trial." *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir.2001), *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also H. Sand & Co. v. Airtemp Corp.,* 934 F.2d 450, 454–55 (2d Cir.1991) (hearsay testimony that would not be admissible if testified to at trial may not properly be set forth in an affidavit).

**Due Process Claim**

**\*3** Plaintiff alleges that defendants deprived him of his constitutional right to procedural due process. Dkt. # 1, p. 42. This allegation appears to be based on the following: (1) that he was not afforded all of the procedural safeguards set forth in *Wolff v. McDonnell*[FN1] during the Tier III disciplinary hearing; and (2) that defendant Knowles was not an impartial hearing officer.

> FN1. 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1975).

To prevail on a procedural due process claim under § 1983, a plaintiff must show that he possessed a protected property or liberty interest and that he was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000) (liberty interest); *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir.1998).

"A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004) (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In assessing whether the discipline imposed rises to this level, the Court of Appeals for the Second Circuit has directed the district courts to consider both the conditions of confinement and their duration, "since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Id.,* quoting *Sealey v. Giltner,* 197 F.3d 578, 586 (2d Cir.1999). In light of this standard, the Court of Appeals has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights" and has "explicitly noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions ... or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer,* 364 F.3d at 64–65.

Notwithstanding the foregoing, courts in this Circuit "generally require that the duration of confinement be at least 100 days" to be categorized as constituting an "atypical and significant hardship." *Palmer v. Goss,* No. 02 Civ 5804(HB), 2003 U.S. Dist. LEXIS 18103, 2003 WL 22327110 (S.D.N.Y. Oct. 10, 2003), *aff'd, Palmer,* 364 F.3d 60; *Sims v. Artuz,* 230 F.3d 14, 24 (2d Cir.2003) (vacating dismissal of, *inter alia,* procedural due process claims, stating, during little more than a 4 1/2 month period, Sims was sentenced to SHU for a total of nearly 3 1/2 years); *Durran v. Selsky,* 251 F.Supp.2d 1208, 1214 (W.D.N.Y.2003) (quoting *Tookes v. Artuz,* No. 00CIV4969, 2002 U.S. Dist. LEXIS 12540, 2002 WL 1484391 (S.D.N.Y. July 11, 2002)) ("[c]ourts in this Circuit routinely hold that an inmate's confinement in special housing for 101 days

or less, absent additional egregious circumstances, does not implicate a liberty interest."); *Colon v. Howard,* 215 F.3d 227, 232 (2d Cir.2000) (instructing district courts to develop detailed factual records "in cases challenging SHU confinements of durations within the range bracketed by 101 days and 305 days"). Here, following the Tier III disciplinary hearing, defendant Knowles imposed a penalty of 12 months of confinement in SHU and a loss of privileges between the period August 22, 2003 and August 22, 2004. Thus, there can be no dispute that plaintiff has demonstrated a protected liberty interest. The issue that remains and that which will be addressed below, is whether plaintiff was deprived of that protected liberty interest without due process. Defendants maintain that plaintiff was not. Dkt. # 21, p. 2; Dkt. # 22, p. 7.

**\*4** In *Wolff,* the Supreme Court enumerated certain procedural safeguards that must be afforded to an inmate during the course of a prison disciplinary proceeding in order to ensure that the minimum requirements of procedural due process are satisfied. *Wolff,* 418 U.S. at 563–66. Specifically, the Supreme Court identified the following procedures: advance written notice of the claimed violation or charges; the opportunity for an inmate to call witnesses and present documentary evidence in his/her defense, provided that such a process would not jeopardize institutional safety; and a written statement by the fact finder of the evidence relied upon and the reasons for the disciplinary action taken. *Id* . Additionally, the findings must be supported by some evidence in the record. *Walpole v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

Here, contrary to plaintiff's contention, he was afforded all of the procedural safeguards set forth in *Wolff.* Dkt. # 24, p 4–5. Plaintiff was provided with a copy of defendant Noto's misbehavior report before the hearing, giving him advance notice of the charge against him.[FN2] Dkt. # 1, p. 22; Dkt. # 21, p. 5. Plaintiff had the opportunity to call witnesses and present evidence. Dkt. # 1, pp. 26, 29; Dkt. #

21, pp. 6, 8. Plaintiff was also provided with a written statement of the guilty finding and the evidence relied on for the disposition. Dkt. # 21, p. 12. The guilty disposition was supported by evidence in the form of defendant Noto's notes; defendant Noto's misbehavior report and testimony; and the testimony of the confidential informant(s), particularly because plaintiff's alibi was uncorroborated. *Id.* at pp. 10–11. Thus, plaintiff's claim that he was deprived of procedural due process fails as a matter of law.

> **FN2.** Plaintiff concedes this fact. However, he suggests that he was deprived of his due process rights under the standard set forth in *Wolff* because defendant Knowles found him guilty of drug possession, rather than sale of a narcotic substance, which he was charged with in the misbehavior report. Dkt. # 24, p 5. However, inmate Rule 113.25, which plaintiff was charged with in the misbehavior report and found guilty of at the close of the Tier III hearing, encompasses possession **and** sale of a narcotic. Dkt. # 21, pp. 5 and 19.

**Impartial Hearing Officer**

Plaintiff contends, in particular, that his due process rights were violated because defendant Knowles was not an impartial hearing officer. *See* Dkt. # 1, p. 6–8. Plaintiff points to the following to support his allegation: (1) that defendant Knowles was involved in both the Tier III hearing and in the investigation into plaintiff's drug sale; (2) that defendant Knowles instructed Meja to respond affirmatively at the hearing that plaintiff had sold Meja drugs although Meja testified at the hearing that he did not know plaintiff; and (3) that defendant Knowles rejected his alibi and confused the time of the drug sale at issue. Dkt. # 1, pp. 28, 39; Dkt. # 24, p. 6.

Indeed, as plaintiff correctly contends, "[a]n inmate subject to a disciplinary hearing is entitled to an impartial hearing officer." *Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996); *see Wolff,* 418 U.S. at

570–71; *Russell v. Selsky,* 35 F.3d 55, 59 (2d Cir.1994). An impartial hearing officer "is one who, inter alia, does not prejudge the evidence and who cannot say ... how he would assess evidence he has not yet seen." *Patterson v. Coughlin,* 905 F.2d 564, 569–70 (2d Cir.1990); *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989) ("it would be improper for prison officials to decide the disposition of a case before it was heard").

**\*5** It is well recognized, however, "that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Allen,* 100 F.3d at 259; *see Francis,* 891 F.2d at 46 ("Because of the special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process."). For example, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges generally." *Allen,* 100 F.3d at 259; *see Francis,* 891 F.2d at 46. A hearing officer may satisfy the standard of impartiality if there is *"some evidence* in the record" to support the findings of the hearing. *Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (emphasis added).

In this case, there is ample evidence to support defendant Knowles' guilty finding: defendant Noto's misbehavior report and his testimony that Meja originally identified plaintiff as the individual who sold him drugs; and the testimony of the confidential informant(s), which was considered outside the presence of plaintiff. Dkt. # 21, pp. 8–9.

Notably, plaintiff's only defense at the Tier III hearing was that he had been at an NOI/Black studies program at the time of the drug sale, which took place allegedly between 7:00–8:00 p.m. Dkt. # 21, p. 7. However, inmates Ford and Williams could not verify plaintiff's alibi defense. *Id.* Because plaintiff did not sign back into his cell area until 8:10 p.m., defendant Knowles determined that there was ample time for plaintiff to sell the drugs in the

yard during the period of his unexplained absence. Dkt. # 21, pp. 7, 16–18.

Plaintiff further contends that defendant Knowles violated his constitutional right to due process by failing to adhere to the state guidelines for conducting prison disciplinary hearings (set forth in Title 7 of the NYCRR §§ 253.1(b), 254.1 FN3) because, he alleges, that defendant Knowles conducted the Tier III hearing and was also involved in the investigation of plaintiff's drug sale. Dkt. # 24, p 6.

> FN3. 7 NYCRR § 253.1 gives superintendents the discretion to designate DOCS employees to conduct disciplinary hearings. Pursuant to § 253.1(b), "[n]o person who has participated in any investigation of the acts shall be a hearing officer at a hearing relating to those acts, nor shall any person who has prepared or caused to be prepared the misbehavior report on which a hearing is held, act as the hearing officer on that charge." Section § 254.1 of 7 NYCRR precludes a person who was a witness to or who investigated an incident that is the subject of a disciplinary proceeding from acting as a hearing officer relating to that incident.

This argument fails because violations of state law that do not deprive the plaintiff of a right "secured by the Constitution and laws" are insufficient to support a claim under § 1983. *See Baker v. McCollan,* 443 U.S. 137, 139–40, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Shakur v. Selsky,* 391 F.3d 106, 119 (2d Cir.2004); *Blouin v. Spitzer,* 356 F.3d 348, 362 (2d Cir.2004). State procedural protections do not give rise to substantive federal rights. *See Olim v. Wakinekona,* 461 U.S. 238, 249–50, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Holcomb v. Lykens,* 337 F.3d 217, 224 (2d Cir.2003) ("[S]tate statutes do not create federally protected due process entitlements to specific state-mandated procedures."). Moreover, "[s]tate procedures designed to protect substantive liberty interests entitled to pro-

tection under the federal constitution do not themselves give rise to additional substantive liberty interests." *Blouin,* 356 F.3d at 363. It is "federal law, not state regulations, [that] determines the procedures necessary to protect that liberty interest ." *Id.* (citing *Watson v. City of New York,* 92 F.3d 31, 38 (2d Cir.1996)). Therefore, "the only relevant inquiry was whether the constitutional [procedures] were met, not whether state procedures were followed." *Shakur,* 391 F.3d at 119 (citing *Holcomb,* 337 F.3d at 224). As set forth above, plaintiff's constitutional rights were not violated during the Tier III hearing. Plaintiff's exclusive reliance on defendants' alleged violations of 7 NYCRR §§ 253.1(b) and 254.1 is insufficient to support his claim under § 1983. *See Shakur,* 391 F.3d at 119; *Holcomb,* 337 F.3d at 224; *Ramsey v. Goord,* 661 F.Supp.2d 370, 391–92 (W.D.N.Y.2009).

**\*6** Accordingly, since plaintiff received all of the process he was due in the course of the Tier III disciplinary hearing, defendants' motion for summary judgment on plaintiff's due process claim is granted.

**Retaliation Claim**

Plaintiff alleges that, in retaliation for attending a Nation of Islam ("NOI")/Black Studies course and/or for his affiliation therewith, defendant Noto filed a false misbehavior report and gave false testimony and that defendant Knowles found him guilty. Dkt. # 1, p. 43.

"In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for 'adverse action' taken against him by defendants." *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citing *Gayle v. Gonyea,* 313 F.3d 677 (2d Cir.2002); *see also Hendricks v. Coughlin,* 114 F.3d 390 (2d Cir.1997)). Third, the plaintiff must establish a causal connection between the protected speech and the adverse action. *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (citing *Dawes v. Walker,*

239 F.3d 489, 491 (2d Cir.2001), overruled on other grounds, *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill v. Pidlypchak,* 389 F.3d at 381 (quoting *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003), superseded by 2003 U.S.App. LEXIS 13030, 2003 WL 360053 (2d Cir. Feb. 10, 2003)) (omission in the original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.*

The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett,* 343 F.3d at 137 (citing *Dawes,* 239 F.3d at 491). Accordingly, plaintiff must set forth nonconclusory allegations. *Id.* Finally, even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Id.*

A prison inmate has no constitutionally-guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest, as long as the prisoner is provided with procedural due process. *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). However, if a defendant initiated disciplinary proceedings against plaintiff in retaliation for his exercise of a constitutionally protected right, substantive due process rights are implicated even if the plaintiff did receive full procedural due process. *Franco v. Kelly,* 854 F.2d 584, 588–89 (2d Cir.1988). Any adverse action taken by defendant in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Id.*

**\*7** Here, even assuming plaintiff's affiliation

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

with the NOI/Black studies program was constitutionally protected conduct, he cannot show that his affiliation therewith was a substantial motivating factor for the filing of the misbehavior report and the subsequent finding of guilt concerning the report. Defendant Knowles declares that he "did not even recall plaintiff prior to the hearing he conducted," and had no involvement whatsoever in any NOI activities. Dkt. # 21, p. 22. Similarly, defendant Noto declares that he had no knowledge of plaintiff's participation in the NOI/Black Studies program, and, up until the time of the instant litigation, "did not know that plaintiff attended such a course or was a member of the NOI." Dkt. # 22, p. 6. To this extent, plaintiff cannot demonstrate that his affiliation with the NOI/Black studies program was a motivating factor in defendants' actions. Since plaintiff cannot establish any plausible connection between NOI/Black studies participation and the misbehavior report and the guilty finding, his retaliation claim fails as a matter of law.

Assuming, *arguendo,* that plaintiff could show that the disciplinary actions were motivated by retaliatory animus (an assumption that has no basis in the record before this Court), plaintiff's retaliation claims would fail because defendants can easily show that they would have taken the same disciplinary actions even in the absence of the protected conduct. *See Davidson v. Chestnut,* 193 F.3d at 149 ("At the summary judgment stage, if the undisputed facts demonstrate that the challenged action clearly would have been taken on a valid basis alone, defendants should prevail."). The record shows that there was sufficient evidence, based on defendant Noto's investigation, to have charged plaintiff with a drug sale. Further, there was ample evidence at the Tier III disciplinary hearing for defendant Knowles to find plaintiff guilty of the drug sale charge. This is so particularly in the context of prison administration where courts must be cautious to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage. *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994).

Accordingly, defendants' motion for summary judgment on plaintiff's claim of retaliation is granted.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted. Dkt. # 18. The Clerk of the Court is directed to enter judgment in favor of the defendants.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**\*8 SO ORDERED.**

W.D.N.Y.,2010.
Allred v. Knowles
Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)

END OF DOCUMENT

1995 WL 60020
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Alonzo GREENE, Plaintiff,

v.

Thomas COUGHLIN, III, Commissioner,
Donald Selsky, Deputy Commissioner, John
P. Keane, Superintendent, E. Pico, Civilian,
Alfredo Dezayas, T. Benjamin, Sergeant,
and R.J. Colon, IGP Supervisor, Defendants.

No. 93 Civ. 2805 (DLC). | Feb. 10, 1995.

**Attorneys and Law Firms**

Alonzo Greene, plaintiff pro se.

G. Oliver Koppell, Atty. Gen. of the State of New York, New York City (August L. Fietkau, Asst. Atty. Gen., of counsel), for defendants.

### OPINION & ORDER

COTE, District Judge:

**\*1** Plaintiff filed this action pursuant to Section 1983 of Title 42 of the United States Code, alleging that the defendants conducted a disciplinary hearing in violation of the plaintiff's First, Fifth and Fourteenth Amendment rights. Discovery was closed on November 15, 1993, and defendants subsequently brought a motion for summary judgment. In plaintiff's opposition to the motion, he attempted to add thirteen additional defendants and include allegations related to a large number of grievances filed before and after the events described in the original complaint. By order dated September 13, 1994, Magistrate Judge Grubin, to whom this case was assigned for general pretrial purposes, denied plaintiff's request that these additions be treated as amendments to the complaint. For the reasons set forth below, defendants' motion for summary judgment is granted in part and denied in part.

### SUMMARY JUDGMENT

Summary judgment may not be granted unless the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. In making this judgment, the burden is on the moving party, and all facts must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In addition, because plaintiff is acting *pro se,* the Court must "read [plaintiff's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *accord Soto v. Walker,* No. 93–2291, 1995 WL 9496, at *4 (2d Cir. Jan. 11, 1995).

When the moving party has provided sufficient evidence to support a motion for summary judgment, however, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Rule 56(e), Fed.R.Civ.P.; *accord Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994). The point at which an asserted fact in opposition to a motion for summary judgment has a sufficient basis to constitute evidence rather than a "mere allegation" is, however, less than certain. On one extreme, a party's "bald assertion," completely unsupported by evidence is not sufficient to overcome a motion for summary judgment. *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991) (holding that unsupported assertion that person's name on deed was an "accommodation" is not sufficient without more to challenge ownership). In contrast, facts regarding what occurred at a meeting, when alleged in an affidavit of a person who took part in a meeting, are sufficient to overcome a motion for summary judgment if there is some basis to believe that the "version of relevant events is not fanciful." *Christian Dior–New York, Inc. v. Koret, Inc.,* 792 F.2d 34, 37–39 (2d Cir.1986). Thus, in determining whether to grant summary judgment, this Court must (i) determine whether a factual dispute exists based on evidence in the record, and (ii) must determine, based on the substantive law at issue, whether the fact in dispute is material.

**\*2** The facts set forth below are based primarily on the documentation provided by the parties as exhibits to their motion papers. There are very few factual disputes as to the events in this case. Instead, the dispute lies primarily in the motivation for those actions.

### BACKGROUND

Plaintiff is an inmate at Sing Sing Correctional Facility in New York. The defendants are Thomas Coughlin, III, the former Commissioner of the New York State Department of Corrections ("DOCS"); Donald Selsky, the Deputy Commissioner and Director of the Office of Special Housing and Inmate Disciplinary Programs for DOCS; John P. Keane, the Superintendent of Sing Sing; Jose Pico, a Commissioner's Hearing Officer for DOCS; Alfredo Dezayas, a Sergeant at Sing Sing; Thomas Benjamin, a Corrections Officer at Sing Sing; and R.J. Colon, the Inmate Grievance Program Supervisor at Sing Sing.

As an inmate at Sing Sing, plaintiff was at the time of the incident at issue in this case a representative on the Inmate Grievance Resolution Committee ("IGRC"). The IGRC is a committee created pursuant to Section 139 of the New York Corrections Law and is organized pursuant to rules set forth in Title 7 of the New York Compilation of Codes Rules and Regulations. *See* N.Y.Comp.Codes R. & Regs. tit. 7, §§ 701.1–.16 (1994). The purpose of this program is to provides inmates with "an orderly, fair, simple and expeditious method of resolving grievances ... including allegations of discriminatory treatment...." *Id.* § 701.1(a). The IGRC is made up of five persons, including two voting inmates, two voting staff members, and a non-voting chairperson who may be an inmate, staff, or third-party. *Id.* § 701.4(a). Members of the IGRC investigate and conduct hearings on inmate grievances. Decisions of the IGRC are appealable first to the superintendent of the prison, and second to the Central Office Review Committee ("CORC"), which consists of deputy commissioners. *Id.* § 701.7. Plaintiff asserts that the misbehavior report discussed below and the penalties imposed as a result of it were imposed in retaliation for plaintiff's actions as a grievance representative. According to plaintiff, defendants Dezayas, Benjamin and possibly Colon were attempting to have the plaintiff removed from his position as a grievance representative due to his persistent efforts to resolve inmate complaints and improve prison conditions.

On May 29, 1992, defendant Benjamin alleges that he was told by inmate Joseph Dougherty that on the previous day Dougherty saw plaintiff and another inmate on the "D gallery" (where Dougherty was housed) and that plaintiff asked Dougherty if he had seen them the previous day distributing flyers.[1] When Dougherty replied yes, plaintiff allegedly stated that if plaintiff were keeplocked or transferred for distributing the flyers, Dougherty would be a

"dead man." After relaying this story to Benjamin, Dougherty allegedly signed a written statement that stated:

> **\*3** On Thursday May 28th at about 8:30 p.m. Inmate Green A–50 and Inmate Dabney A–11 came up to D Gallery and ask[ed] me if I saw them passing out flyers on Wednesday May 27th. I said yes I saw when you and Green passed the flyers out. Inmate Green then said to me that the Sergeant and Lieutenant got ahold of the flyers and should he be keeplocked or transferred I am a dead man.

Benjamin and defendant Dezayas signed this statement as witnesses to Dougherty's signature. As a result of this statement by Dougherty, Benjamin prepared a Misbehavior Report, charging plaintiff with a violation of regulation 102.10 (making threats). *See* N.Y.Comp.Codes R. & Regs. tit. 7, § 102.10 (1994).

Based on this report, Dezayas placed the plaintiff in keeplock and, on May 31, 1992, Correction Officer Hill served plaintiff with the misbehavior report and an assistance sheet. The assistance sheet provides a list of names of persons who are available to help the inmate prepare for the disciplinary hearing. On June 1, 1992, Correction Officer Hamell advised plaintiff that he had been served with the wrong assistance sheet, and provided plaintiff with a new sheet. The sheet is apparently updated every two weeks, and the plaintiff had been served with the expired sheet. Plaintiff had selected an assistant from the first sheet, but failed to select an assistant from the second sheet.[2]

Pursuant to the misbehavior report, a tier III disciplinary hearing was held on June 2 and 9, 1992.[3] This hearing was recorded, and a transcript of the hearing is included as an exhibit to defendants' motion for summary judgment. Defendant Pico, a civilian hearing officer, conducted the hearing. During the course of the hearing, Pico received signed refusal to testify forms from inmates Paris, Waters, Puryear, and Dougherty, each of whom plaintiff attempted to call as witnesses. Inmates Paris and Waters stated that they knew nothing about the incident at issue, Inmate Puryear stated that he did not know the plaintiff, and Inmate Dougherty stated that he refused to testify because the plaintiff had threatened him.

Two major issues arose at the hearing. First, plaintiff was served with a handwritten misbehavior report on May 29, but at the hearing, Pico had two reports, the handwritten version served on the plaintiff and a typewritten version that the plaintiff did not receive. The contents of the two reports were identical except that the handwritten version states "an inmate (identified in attached memo)" while the typed version states "inmate Joseph Dougherty HB5 D–267." Plaintiff objected to the typed report because he never received it. Defendant Pico explained to the plaintiff that the typed report would not be treated as a separate charge against the plaintiff, but would be admitted into evidence at the hearing.

The second dispute at the hearing was over whether plaintiff had refused an assistant to help him in preparing his case. As noted above, plaintiff was first provided an expired assistant list from which he attempted to choose an assistant. Correction Officer Harrell subsequently provided plaintiff with a new list. At the hearing Harrell testified that plaintiff refused to choose a person from the new list, and insisted on choosing a person from the old list. The plaintiff did not question Harrell on this issue and did not dispute Harrell's testimony.

 **\*4**  The other witnesses who testified at the hearing included Dezayas, Benjamin, and Colon, and inmate Dabney. Dezayas testified that after the officers learned of the flyers they searched plaintiff's cell and found more of the flyers that Dougherty apparently saw plaintiff distributing. Benjamin's testimony centered on the reason for the existence of two misbehavior reports. Plaintiff did not question Benjamin regarding the truth of the allegations in the report. Plaintiff called Colon to support plaintiff's contention that he wanted to leave Sing Sing—this testimony was intended to discredit Dougherty's statement that plaintiff would kill Dougherty if plaintiff were transferred to another facility. Colon testified that plaintiff had requested a transfer to another facility four or five times in the year prior to the incident. The final witness was inmate Dabney. Dabney is a friend of the plaintiff's who was with the plaintiff in D gallery when the alleged threat occurred, and testified that the plaintiff did not threaten Dougherty. In his closing arguments, plaintiff asserted that he had been denied an assistant, that Benjamin and Dezayas were attempting to force plaintiff out of his position as a grievance representative, and that Dougherty had been harassed by the officers and was in fear of them.

At the conclusion of the hearing, Pico found plaintiff guilty of the charge of making threats and sentenced plaintiff

to 60 days of keeplock (12 days already served), loss of packages, commissary and telephone, and precluded plaintiff from holding a position as a representative on the IGRC. In imposing this penalty, defendant Pico noted that this was not plaintiff's first violation of regulation 102.10 (making threats).

Plaintiff appealed defendant Pico's ruling to Commissioner Coughlin, and asserted numerous grounds for reversal. These included: (1) Dezayas and Pico are friends and thus the hearing was biased; (2) Dougherty's statement was not corroborated by any other person; (3) plaintiff was not allowed to cross-examine Dougherty, who refused to testify, and Pico refused to interview Dougherty or verify his refusal to testify; (4) plaintiff was denied assistance; (5) the tape was stopped during the testimony and was not restarted and witnesses that plaintiff requested be called were not called; (6) Pico did not take into account evidence that plaintiff had previously been dealt with harshly in disciplinary hearings; (7) there was insufficient evidence to convict the plaintiff; (8) plaintiff was retaliated against for performing his job as a grievance representative; (9) plaintiff had been told by various inmates that the correction officers were out to get the plaintiff; (10) Benjamin first testified by phone, and only testified in person at the request of the plaintiff; (11) the correction officers falsified Dougherty's refusal to testify form. On July 31, 1992, acting on behalf of the Commissioner, Selsky affirmed the findings and sentence of defendant Pico.

 **\*5**  In addition to appealing Pico's decision to Commissioner Coughlin, plaintiff sent a letter to Superintendent Keane and filed multiple grievances with the Sing Sing staff regarding his removal from the IGRC. Plaintiff's letter to Superintendent Keane was answered on June 23, 1992, by Joseph A. Demskie, the First Deputy Superintendent. Demskie stated that plaintiff's appeal of the hearing findings must go through the Commissioner, and that the IGRC would hold a separate impeachment hearing regarding plaintiff's removal from office.

Plaintiff raised a number of issues in the grievances he filed after the Pico hearing. With regard to plaintiff's removal as an IGRC representative, plaintiff complained that he was not given notice that the hearing could result in his removal as an IGRC representative and Pico did not state a time frame during which the plaintiff would be precluded from holding his position. [4]  In addition to the penalties imposed by Pico, the plaintiff was apparently moved to a different housing unit

within Sing Sing. As a result, plaintiff was precluded from running in the election for which he was campaigning at the time of the incident at issue. Because plaintiff was apparently the only qualified inmate who had run for the position in unit 5, where the plaintiff was originally housed, the prison did not hold elections in that unit. Plaintiff asserts that his move to a new housing unit and the failure to hold elections for the IGRC representative position were discriminatory.

The IGRC responded to plaintiff's grievance by recommending that the plaintiff be provided an impeachment hearing prior to being removed as a grievance representative. For the reasons set forth below, however, no hearing was ever held. At the first appeal stage, to Superintendent Keane, Keane found that (i) plaintiff was moved to another housing unit "for the safety and security of the facility" based on the finding that he had threatened another inmate, [5] (ii) plaintiff would be considered suspended from his position as an IGRC representative during the time he is in keeplock until the end of his term as an IGRC representative, which would end on June 30, 1992, and (iii) plaintiff is free to run in the next IGRC representative election in whatever housing unit plaintiff is in. The CORC affirmed the Superintendent's ruling.

As for plaintiff's complaints regarding the cancellation of the election, Superintendent Keane determined that there had been no discrimination against the plaintiff, that new elections would be held soon to fill the vacancies, that the full IGRC had recommended plaintiff's impeachment on June 30, 1992, and that holding an impeachment hearing at this point would be moot because plaintiff's term had expired. The CORC affirmed the Superintendent's findings and noted that a person who had originally been precluded from running in the unit 5 election was appointed to the position as IGRC representative after providing documentation of his qualifications.

## PLAINTIFF'S COMPLAINT

**\*6** Plaintiff asserts in his complaint that the hearing was held in violation of his due process rights due to violations of sections 250.2(d) and (f), 251–3.1(b) and (c), and 254.5(a) and (c) of the regulations governing disciplinary hearings. The bases of plaintiff's claim that the hearing was unconstitutional are that (i) plaintiff had requested and was denied an assistant, (ii) plaintiff had requested and was denied witnesses, and (iii) the hearing officer refused to interview Dougherty, who had refused to testify at the hearing. Plaintiff's claim against Colon is based on an allegation that Colon recommended

that plaintiff be removed from his position as a grievance representative. In addition, plaintiff asserts that pursuant to Regulation Section 701.5(a), plaintiff had to be given notice and a hearing prior to being removed from his position as a grievance representative. Plaintiff further alleges that the original misbehavior report was issued by Benjamin in retaliation for plaintiff exercising his First Amendment rights, and that he was confined by Dezayas in violation of his "Liberty Rights." Plaintiff's claims against Selsky and Coughlin are based on the denial of his appeal.

As relief for the alleged violations, plaintiff seeks a declaration that the defendants have violated plaintiff's constitutional rights, injunctive relief so that plaintiff's record is cleared of the charge that he threatened Dougherty and he is restored to his original status, and monetary relief of $75,000 for compensatory, punitive, direct, special, actual, consequential, substantial, proximate and nominal damages, and $100,000 for irreparable damages.

In opposition to defendants' motion for summary judgment, plaintiff attempted to add numerous other events and defendants to the action. By Order dated September 13, 1994, Magistrate Judge Grubin denied plaintiff's request that this be treated as an amendment to the complaint. Accordingly, plaintiff's action is based solely on events surrounding from the misbehavior report issued in response to the complaint lodged by inmate Dougherty. Nonetheless, the opposition papers do raise a number of factual disputes that the Court must address in considering this motion.

The bulk of the plaintiff's affidavit and exhibits in opposition are provided to support his claim that the misbehavior report was issued in retaliation for his work as a grievance representative. At the time of the incident at issue in this case, the plaintiff asserts that he was responding to grievances from inmates in D gallery regarding the prison administration's refusal to allow D gallery inmates to have "gallery rec." during inclement weather rather than being forced to go outside for recreation. Plaintiff asserts that Dougherty was opposed to gallery recreation because as a porter Dougherty would have more work in cleaning the gallery. Plaintiff further asserts that Dougherty, Benjamin, Dezayas and other officers had threatened other inmates in D gallery with reprisals if they complained about the recreational restrictions.

**\*7** In addition to the threats just mentioned, the plaintiff sets out two additional events as evidence that Benjamin

was retaliating against the plaintiff. First, plaintiff asserts that in mid-March 1992 Dougherty was written up for allegedly threatening to stab Benjamin. Plaintiff states that Dougherty informed the plaintiff that this was untrue and that the misbehavior report was filed in retaliation for some undisclosed conduct of Dougherty. Second, both Dezayas and Benjamin signed a misbehavior report on May 27, 1992, in which they charged the plaintiff with violating various prison rules including a rule that prohibits inmates from attempting to encourage work stoppages, sit-ins, or other activities that may be detrimental to the order of the facility. This report was based on the flyer mentioned above that plaintiff was allegedly distributing in D gallery. Plaintiff was found not guilty of these charges in a hearing on June 3, 1992, because the papers did not evidence any efforts to organize the inmates in any sort of protest.

Plaintiff also sets forth a number of events that he asserts support his claim that defendant Dezayas filed the misbehavior report in retaliation for plaintiff's actions. On January 10, 1992, January 20, 1992, and March 3, 1992, plaintiff filed misbehavior reports against defendant Dezayas. Each of these grievances, however, was resolved in favor of defendant Dezayas to the extent that he had any involvement in the incidents at issue. Subsequently, on April 29, 1992, Dezayas was the hearing officer at a tier I hearing brought against the plaintiff at which Dezayas sentenced plaintiff to seven days of hard labor. Plaintiff asserts that Dezayas knew at that time that plaintiff was unable to do hard labor due to a back problem. Plaintiff further alleges that Dezayas had another corrections officer write a misbehavior report based on plaintiff's failure to appear to perform the hard labor. This report was dismissed based on plaintiff's medical restriction form. Finally, as mentioned above, Dezayas along with Benjamin issued a misbehavior report based on the flyers distributed in D gallery.

Assuming the truth of plaintiff's assertions regarding the underlying animosity between Dezayas and Benjamin and the plaintiff, there are eight issues that must be addressed in evaluating the defendants' motion for summary judgment. These are: (1) can Benjamin and Dezayas be held liable for writing the misbehavior report based on the threat to Dougherty; (2) can Dezayas be held liable for placing the plaintiff in keeplock in response to the misbehavior report; (3) did Pico violate plaintiff's rights in not interviewing the witnesses who refused to testify; (4) did Pico violate plaintiff's rights in holding the hearing without providing plaintiff with an assistant; (5) did Pico violate plaintiff's rights in precluding

him from holding a position as an IGRC representative; (6) did Selsky violate plaintiff's rights in affirming the decision; (7) did Coughlin violate plaintiff's rights in any manner; and (8) did Keane violate plaintiff's rights in not reinstating plaintiff as an IGRC representative or in not taking any other action in response to plaintiff's complaints.

## SECTION 1983

**\*8** Section 1983 provides for a cause of action against any person who, acting under the color of state law, infringes on a person's rights secured by the Constitution or the laws of the United States. 42 U.S.C. § 1983. In this case, the defendants are all acting under the color of state law in their positions as employees of DOCS. Thus, the only question is whether their actions deprived the plaintiff of his "rights, privileges, or immunities." In this case, plaintiff asserts violations of his First Amendment free speech right and his Fifth and Fourteenth Amendment right to due process.

## QUALIFIED IMMUNITY

Even if a person has potentially violated an individual's federally protected rights, the government official may be protected from suit by qualified immunity. Qualified immunity acts to shield various government officials from liability under Section 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). For the violation of the right to give rise to liability, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

> "A right is 'clearly established' if it meets one of three tests: (1) it is defined with reasonable clarity; or (2) the Supreme Court or this Circuit has affirmed its existence; or (3) a reasonable defendant would understand from existing law that his acts were unlawful."

*Cook v. Sheldon,* 41 F.3d 73, 78 (2d Cir.1994) (quoting *Jeffries v. Harleston,* 21 F.3d 1238, 1248 (2d Cir.), *vacated on other grounds and remanded,* 115 S.Ct. 502 (1994). In

making this determination, only the case law of the Second Circuit and the Supreme Court is relevant. *See Richardson v. Selsky,* 5 F.3d 616, 623 (2d Cir.1993) ("district court decision does not 'clearly establish' the law, even in its own circuit"); *Russell v. Scully,* 15 F.3d 219, 223 (2d Cir.1993) (looking only to case law of the Supreme Court and Second Circuit).

The Second Circuit has articulated three different scenarios in which a defendant may claim qualified immunity.

> A defendant may establish a right to qualified immunity by showing [1] that "it was not clear at the time of the official acts that the interest asserted by the plaintiff was protected by a federal statute or the Constitution;" or [2] that "it was not clear at the time of the acts at issue that an exception did not permit those acts;" or [3] that "it was objectively reasonable for [the officer] to believe that his acts did not violate [plaintiff's] rights."

*Krause v. Bennett,* 887 F.2d 362, 368 (2d Cir.1989) (quoting *Robinson v. Via,* 821 F.2d 913, 920–21 (2d Cir.1987)); *accord Velardi v. Walsh,* 40 F.3d 569, 573 (2d Cir.1994).

Although counsel for the defendants asserts that defendants Selsky and Pico are entitled to absolute immunity—based on the authority of an unreported 1991 Western District of New York opinion, *Pacheco v. Kihl,* No. Civ. 90–549T (W.D.N.Y. Dec. 17, 1991)—in each case in which it has addressed the issue the Second Circuit has provided only qualified immunity to prison officials who conduct or review inmate hearings. In *Young v. Selsky,* 41 F.3d 47 (2d Cir.1994), the Court determined that Selsky, the defendant in this action, is entitled only to qualified immunity. In *Young,* the Second Circuit based its decision to deny Selsky absolute immunity on the lack of procedural safeguards at the hearing, a finding that Selsky has some interaction with the hearing officers, that "Selsky serves at the pleasure of superiors within DOCS," that the hearings and appeals are not truly adversarial in nature, and that the injury caused by an invalid hearing may not be correctable on appeal. *Id.* at 52–54. Each of these factors is equally present in the case of Pico, who conducted the hearing. Accordingly, defendant Pico is also entitled to qualified immunity, not absolute immunity. *Payne v. Axelrod,* No. 90–CV–938, 1995 WL 4303, at *3–4 (N.D.N.Y. Jan. 4, 1995) (Kaplan, J., S.D.N.Y., sitting by designation) (holding, based on *Young,* that hearing officer in Pico's position is entitled to qualified, not absolute immunity).

## CONSTITUTIONALLY PROTECTED INTERESTS

**\*9** Prisoners do not per se have a liberty interest in avoiding restricted confinement. New York state, however, has created such an interest by instituting regulations regarding the imposition of restricted confinement. Accordingly, a prisoner cannot be so confined without procedures that comply with the Fourteenth Amendment's due process requirements. *See Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994).

There are two types of restrictive confinement, administrative and punitive. Administrative confinement is based on a belief by the prison staff that a prisoner is either a threat to other prisoners or that a prisoner is himself in danger. Pursuant to Title 7 of the New York Compilation of Codes, Rules & Regulations, Section 251–1.6(a), a prisoner may be confined administratively only if the corrections officer ordering the confinement "has reasonable grounds to believe that an inmate ... represents an immediate threat to the safety, security or order of the facility or [is] in immediate danger to other persons or to property." Such grounds exist when "an officer reasonably believes that a facility rule has been violated." *Lowrance,* 20 F.3d at 535–36 (quoting *Bowe v. Smith,* 465 N.Y.S.2d 391, 393 (Sup.Ct.1983)). Punitive confinement, on the other hand, is imposed as a result of some violation of prison regulations. In order to impose punitive confinement, the prison must provide a hearing that complies with various procedural rules. These requirements are discussed below.

Although filing false disciplinary charges could result in a prisoner being subject to restrictive confinement, the act of filing false disciplinary charges does not alone violate a prisoner's constitutional rights. *Freeman v. Rideout,* 808 F.2d 949, 951, 953 (2d Cir.1986), *cert. denied,* 485 U.S. 982 (1988). In *Freeman,* where the plaintiff was not placed in restrictive confinement prior to a hearing on the charges, the Second Circuit held that a hearing that meets the minimum due process requirements would cure any false charges and preclude a suit based solely on the charges themselves.

The holding in *Freeman* was limited, however, in *Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988). In *Franco,* the Second Circuit determined that, although a valid hearing could preclude a claim based on a false misbehavior report, when a false report is filed in retaliation for a prisoner's exercise of his First Amendment rights the false report constitutes a violation of the prisoner's *substantive* due process rights, which cannot be cured by a valid hearing. *Id.* at 589; *accord Jones v.*

*Coughlin,* No. 93–2625, 1995 WL 29700, at \*2 (2d Cir. Jan. 23, 1995). Thus, if a corrections officer files a misbehavior report solely in retaliation for a prisoner's exercise of his First Amendment rights, that corrections officer may be subject to a suit under Section 1983 even if the prisoner is afforded a fair hearing. *See Mitchell v. Keane,* No. 93 Civ. 6024 (LBS), 1994 WL 689076, at \*4–6 (S.D.N.Y. Dec. 8, 1994) (dismissing due process claim, but permitting First Amendment claim arising out of filing of false disciplinary charge).

**\*10** If, however, the corrections officer files a misbehavior report "on the basis of both valid and invalid motivations," that action "is not constitutionally tainted by the invalid motivation if the action would in any event have been taken on the constitutionally valid basis." *Sher v. Coughlin,* 739 F.2d 77, 82 (2d Cir.1984). Although in such a mixed motive case it is normally a job for the fact-finder to determine whether the challenged action would have been taken on the basis of the valid reason alone, in *Sher* the Second Circuit determined that it may be possible to make this determination at the summary judgment stage in prisoner cases because of the broad discretion afforded prison officials in the management of their institutions. *Sher,* 739 F.2d at 82.

Whether the plaintiff had a constitutionally protected interest in his position as an inmate grievance representative is not clear. As noted above, the New York prison regulations set forth a specific procedure for removing an inmate from the IGRC. For this procedure to create a constitutionally protected interest in the position, however, the regulations must meet two criteria. First, the regulation "must employ 'language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed.' " *Russell v. Coughlin,* 910 F.2d 75, 77 (2d Cir.1990) (quoting *Hewitt v. Helms,* 459 U.S. 460, 471–72 (1983)). Second, the regulation must provide that the act, for example a removal, "will not occur absent specific substantive predicates," such as "the need for control" or "the threat of a serious disturbance." *Helms,* 459 U.S. at 471–72.

In this case, the provision regarding removal as a grievance representative provides that a hearing "must be held" and that "the notice must indicate" that the charges could lead to removal as an inmate representative. The provision governing the removal of grievance representatives does not, however, provide any "specific substantive predicates" for a removal. In the end, however, the Court need not resolve this issue. Even if the Court were to determine today that an inmate

has a constitutionally protected right to hold a position as a grievance representative, the defendants would have a right to qualified immunity because the right was not clearly established in 1992. *See Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993) (no need to definitively resolve constitutional issue when defendants would nonetheless be protected by qualified immunity).

## PROCEDURAL RIGHTS IN DISCIPLINARY HEARINGS

### 1. General Rights

In *Wolff v. McDonnell,* 418 U.S. 539 (1974), the Supreme Court set forth the basic procedural requirements in prison disciplinary hearings. According to the Supreme Court, a prisoner must be given twenty-four hours notice of the charges against him, a written statement of the evidence relied on by the fact-finder in the hearing, and the reasons for the disciplinary action taken by the hearing officer. *Id.* at 563–65.

**\*11** In addition to these mandatory procedures, the Court in *Wolff* held that the prisoner "should" be allowed to call witnesses on the prisoner's behalf and cross-examine those who are testifying against the prisoner, and should be allowed to present documentary evidence. *Id.* at 566. These latter procedural allowances, however, are not mandatory and may be limited at the discretion of the prison administrator if providing them would "be unduly hazardous to institutional safety or correctional goals." *Id.* at 566.

In *Superintendent v. Hill,* 472 U.S. 445 (1985), the Supreme Court determined that there must be "some evidence" to support the decision of a hearing officer in finding the inmate guilty of the charges levied against him. *Id.* at 455. This standard does not require that the court reweigh the evidence or review the entire record, but merely requires that the court determine "whether there was any evidence in the record that could support the conclusion reached by the prison disciplinary board." *Richardson,* 5 F.3d at 622 (quoting *Hill,* 472 U.S. at 455–56).

### 2. Witnesses

Inmates in disciplinary hearings have "no constitutional right of confrontation," *Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993), and a hearing officer may "refuse to call witnesses that may create a risk of reprisal or undermine authority." *Wolff,* 418 U.S. at 566. Among the reasons for refusing to call

a witness are "irrelevance, lack of necessity, or the hazards presented in individual cases." *Id.* In addition, a hearing officer has no power to force a witness to testify. *Silva,* 992 F.2d at 21–22. Accordingly, when a witness has refused to testify, the hearing officer need not call the witness merely to allow the defendant to cross-examine the witness. *Silva,* 992 F.2d at 22. This limitation on the right to confront witnesses also allows the hearing officer to decline to provide the inmate with the opportunity to confront the victim. *See Freeman,* 808 F.2d at 953–54; *accord Wolff,* 418 U.S. at 568–69 (noting risks of allowing the inmate defendant to cross-examine the inmate accuser).

There was, at least in 1992, no clearly established right that required that the hearing officer make an independent determination of the credibility of the informant or the complainant. In 1993, the Second Circuit in *Richardson v. Selsky,* addressed the issue of whether the hearing officer must make an independent assessment of the credibility of a confidential informant. The court determined that "there must be some evidence in the record of the informant's reliability." 5 F.3d at 624. As the court stated in *Richardson,* prior to that decision there was no clearly established rule regarding the need to evaluate the credibility of a confidential informant. Moreover, there is no case stating that the hearing officer must make an independent investigation into the credibility of a complaining inmate who has refused to testify based on a stated fear of threats from the inmate who is the subject of the hearing.

**3. Assistance**

**\*12** In *Wolff,* 418 U.S. 539, the Supreme Court indicated that in certain circumstances, inmates that are subject to disciplinary charges have the right to assistance in preparing their defense. For instance, assistance must be provided if the inmate is illiterate or "where the complexity of the issue makes it unlikely that the inmate will be able to collect and present evidence necessary for an adequate comprehension of the case." *Id.* at 570. In 1988, the Second Circuit determined that when an inmate is disabled by placement in restrictive confinement, the Fourteenth Amendment requires that the prison provide the inmate with assistance in obtaining evidence and interviewing witnesses. *Eng v. Coughlin,* 858 F.2d 889, 897–98 (2d Cir.1988). Even where a prisoner is entitled to assistance, however, the scope of the assistant's duty to the prisoner is limited. The sole purpose of the assistant is to aid in the collection of evidence and the interviewing of witnesses. The assistant is not intended to act

as counsel to the inmate, and is "not obliged to go beyond the specific instructions of the inmate." *Silva,* 992 F.2d at 22.

**THE DEFENDANTS**

**1. Benjamin and Dezayas**

As stated above, the mere act of filing a false misbehavior report does not equal a constitutional violation. Moreover, it is not the job of a correction office to determine the veracity of an inmate who lodges a complaint. *Sher v. Coughlin,* 739 F.2d at 82 ("[t]he information reported to the prison officials, whether or not true, fully justified their decision"). In this case, however, plaintiff asserts that defendants Benjamin and Dezayas filed the report solely in retaliation for plaintiff's work as an inmate grievance representative—conduct protected by the First Amendment. Plaintiff states in his affidavit:

> This misbehavior report was written in retaliation, and meant solely to harass, and intimidate Plaintiff, because of the complaints he wrote against Defendants, and due to Plaintiff acting according to his duties as an IGRC Rep., and for speaking about the good time bill, and inmate Dougherty [sic] was used as a scape goat, because either he was afraid for his life, and because Dougherty, was getting back at Plaintiff because of him attempting to investigate about D-gallery' rec.

To support his claim that Dougherty conspired with Benjamin and Dezayas, plaintiff asserts in his affidavit that on March 15, 1992, Dougherty told plaintiff that a misbehavior report filed on the previous day by Benjamin was filed in retaliation for a prior grievance filed by Dougherty, and that Dezayas and other officers "were out to get him." Again, on March 16, plaintiff asserts that Dougherty told plaintiff "that he was afraid for his life and well being due to defendants Dezayas and T. Benjamin'[s] threats and harassments against him."

As a result of the misbehavior report filed by Benjamin, plaintiff was placed in keeplock, thereby depriving him of a liberty interest protected by the Constitution. In such a case, even if the plaintiff were afforded a valid hearing, the hearing does not cure the substantive constitutional violation created by filing a retaliatory misbehavior report.

**\*13** Plaintiff's allegations may be difficult to prove in Court, but his affidavit presents more than "bald assertions" that Benjamin and Dezayas violated his rights. Plaintiff provides a motive for each of the parties involved, Dougherty, Benjamin, and Dezayas, to retaliate against the plaintiff by filing a false misbehavior report. Plaintiff asserts that Dougherty was angry at plaintiff for his attempts to obtain gallery recreation for D gallery inmates, and was afraid of the correction officers as a result of allegedly having previously threatened Benjamin. Plaintiff asserts that both Benjamin and Dezayas were angry at plaintiff for his work in pressing inmate grievances and in filing grievances directly against Benjamin and Dezayas. Although plaintiff does not have strong evidence to support each of these motives, he does have some evidence, such that his claims go beyond mere supposition. *See Jones,* 1995 WL 29700, at \*3 (finding allegations of prior threats put forth to support claim of retaliation sufficient to overcome summary judgment even if not set out in complaint). If plaintiff can prove at trial that Benjamin and Dezayas caused Dougherty to lodge the complaint in order to fabricate a reason to file a misbehavior report or that Dougherty in fact never did lodge the complaint, plaintiff may have a cognizable claim against Benjamin and Dezayas.

## 2. Colon

The only claim against the IGRC Supervisor Colon that survives plaintiff's attempted amendment of the complaint is plaintiff's assertion that Colon recommended that Pico remove plaintiff from his position as an IGRC representative. Plaintiff's complaint and opposition papers are not clear on this issue, but appear to assert that Colon made this recommendation in retaliation against plaintiff for his work as an IGRC representative. Although plaintiff sets forth defendant Colon's indirect role in prior grievances as the IGRC Supervisor, plaintiff provides no evidence to rebut Pico's affidavit that he did not speak to Colon regarding any potential penalty to be imposed. In fact, the only action of Colon that is supported by evidence in the record is his testimony in support of plaintiff's claim that the plaintiff had previously requested to be transferred out of Sing Sing. In light of Pico's affidavit and the lack of any evidence in the record to support plaintiff's claim, the action against Colon must be dismissed.

## 3. Pico

Pico is a civil service employee of DOCS and conducts tier III hearings at various DOCS facilities. Plaintiff's claims against Pico are based on (i) his failure to further investigate the reasons for a number of inmates having refused to testify, (ii) his failure to provide plaintiff with an assistant, (iii) his determination that plaintiff was guilty of threatening Dougherty, and (iv) his removal of plaintiff as an IGRC representative. None of Pico's actions regarding these four decisions constitutes a violation of plaintiff's constitutional rights.

**\*14** As stated above, hearing officers have broad discretion in denying an inmate's request for a certain witness. A hearing officer has no power to force an inmate to testify, and when an inmate refuses, the hearing officer need not call the witness. *Silva,* 992 F.2d at 21–22. In this case, the four inmates who Pico did not call each signed a refusal to testify form, three based on a lack of knowledge and one based on the underlying threat. There is no indication in Second Circuit or Supreme Court case law that a hearing officer must make an independent evaluation of the basis for the refusal to testify. To the contrary, in *Ponte v. Real,* 471 U.S. 491 (1985), the Supreme Court determined that the hearing officer need not set forth on the record at the hearing the reason for declining to call the witness. *Id.* at 497. In this case, Pico entered into evidence at the hearing the refusal to testify forms of each witness requested. Accordingly, Pico's decision to not call the four witnesses did not violate plaintiff's due process rights.

Similarly, Pico cannot be held liable for not providing the plaintiff with an assistant. In *Eng v. Coughlin,* the Second Circuit determined that an inmate who is in restrictive confinement has a right to an assistant to aid the individual in the collection of evidence and in interviewing witnesses. 858 F.2d at 897–98. This assistance is, however, limited to what the inmate requests. *Silva,* 992 F.2d at 22. Implicit in this holding is a determination that the an inmate who declines any assistance cannot be heard to complain later.

Plaintiff also cannot state a claim against Pico based on an assertion that plaintiff did not refuse an assistant, but instead requested an assistant not provided on the list. Although not directly addressing the issue in this case, the rule regarding an indigent criminal defendant's right to choose counsel is instructive in considering the scope of an inmate's right to choose an assistant. As a general matter, a criminal defendant does not have an unfettered right to select his counsel. *See United States v. Locascio,* 6 F.3d 924, 931 (2d Cir.1993), *cert. denied,* 114 S.Ct. 1646 (1994). More specifically, "an indigent defendant has no right to choose the particular counsel appointed to represent [him]." *Green v.*

*Abrams*, 984 F.2d 41, 47 (2d Cir.1993). There is no reason to believe that an inmate facing disciplinary charges should have broader rights in choosing an assistant than a criminal defendant has in choosing an attorney. Just as in the criminal appointment system, prison authorities may reasonably value an even distribution of assignments and the convenience of an appointment system that ignores inmate preferences. *See* 2 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 11.4(a) (1984). Finally, even if this Court were to determine that the plaintiff had a right to choose an assistant not on the list provided to him, there was no such rule expressed in either the Second Circuit or the Supreme Court in June 1992. Accordingly, Pico is entitled to qualified immunity for his decision to proceed with the hearing based on plaintiff's refusal to select an assistant from the list provided.

**\*15** In order for the Court to determine that Pico acted appropriately in finding the plaintiff guilty of threatening Dougherty, there need only be "some evidence" of plaintiff's guilt. *Hill*, 472 U.S. at 455. In this case, Pico had (i) Benjamin's testimony that Dougherty told him orally of the threat by the plaintiff, (ii) the signed statement by Dougherty that the plaintiff threatened him, and (iii) Dougherty's signed refusal to testify form, which gave plaintiff's prior threat as the reason for not wanting to testify. On its face, this constitutes "some evidence" of plaintiff's guilt, and is sufficient to justify Pico's finding.

Plaintiff asserts that this evidence is insufficient because Pico failed to make an independent determination of Dougherty's credibility. There is, however, no "clearly established right" to have the hearing officer make an independent determination of the credibility of a complaining inmate who refuses to testify. As noted above, in *Freeman* the Second Circuit determined that a hearing officer need not call an inmate victim who has refused to testify based on fear of reprisal. 808 F.2d at 953–54. In *Freeman*, as in this case, the prison officials determined not to have the inmate victim testify in any manner at the hearing. *Id.* at 950. Although in *Richardson v. Selsky,* the Second Circuit determined that a hearing officer must make some independent evaluation of the credibility of a confidential informant, 5 F.3d at 624, there is no indication that the Second Circuit intended for this rule to apply to a victim who is not confidential, but is instead known to the accused and who has signed a statement regarding the facts alleged. In any event, the rule in *Richardson* was not articulated until September 1993, over one year after the hearing at issue in this case. Accordingly, plaintiff has failed to state a due process claim based on Pico's

failure to interview Dougherty in the course of considering the charges.

Finally, plaintiff asserts that Pico removed plaintiff from his position as an IGRC Representative in violation of plaintiff's due process and First Amendment rights.[6] This issue creates a more difficult problem. There is no dispute that the misbehavior report did not provide the plaintiff with notice that he could be removed as an inmate grievance representative as required by New York State regulations, *see* N.Y.Comp.Codes R. & Regs. tit. 7, 701.5(a) (1994), and that Pico failed to set a time period during which plaintiff would be precluded from holding the position as required by that regulation, *see id.* Thus, the actions of Pico in removing plaintiff from the position were without question in violation of the regulations governing IGRC Representatives.

Even assuming, however, that plaintiff does have a constitutional right to hold this position unless removed pursuant to the procedures set forth above, this right is not "clearly established." In *Wolff,* the Supreme Court required that a prisoner be given notice of the charges against him, a statement of the evidence relied upon in finding the inmate guilty of the infraction, and the reasons for the penalty imposed. *Id.* at 563–64. Neither *Wolff* nor any Second Circuit opinion has set forth any requirement that the inmate be given notice of the potential penalties to be imposed based on the charges in a misbehavior report. In fact, the regulations governing tier III disciplinary hearings provide that among the penalties that may be imposed is removal of an inmate from the IGRC. *See* N.Y.Comp.Codes R. & Regs. tit. 7, § 254.7(a)(1)(viii) (1994). Because there was in 1992 no clearly established constitutional right to receive notice of the specific penalties that may be imposed in response to a misbehavior report, Pico's decision to remove plaintiff is protected by qualified immunity.

**\*16** Plaintiff puts forth no evidence to support his accusation that Pico removed plaintiff from his position as a grievance representative on the basis of a recommendation from defendants Dezayas, Benjamin, or Colon. Defendant Pico has expressly denied any such discussion, and plaintiff has failed to put forth any evidence that such a discussion ever took place. Moreover, unlike the claims against Benjamin and Dezayas, plaintiff has provided no evidence of motive from which this Court could even imply that Pico would have followed such a recommendation. Accordingly, plaintiff's conclusory allegations to the contrary are insufficient to overcome summary judgment on this issue.

**4. Selsky**

As discussed above, Selsky is protected by qualified immunity for his conduct in reviewing disciplinary hearings. *Young,* 41 F.3d at 54. Because there was no constitutional violation at the hearing level sufficient to overcome defendant Pico's qualified immunity, there is no basis for finding defendant Selsky liable for his conduct in reviewing plaintiff's appeal.

**5. Coughlin**

In order for Commissioner Coughlin to be held liable for any constitutional violations related to plaintiff's disciplinary hearings, Coughlin must have been personally involved in the deprivation. Coughlin, in his supervisory position, can be involved in the deprivation of prisoners' rights in several ways. He may have "directly participated in the infraction," he may have "failed to remedy the wrong" after learning of the violation, he may be liable "because [he] created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue," or he could have been "grossly negligent in managing subordinates who caused the unlawful condition or event." *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) (citations omitted) *accord Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)).

In this case, plaintiff's sole basis for including Coughlin in the suit is that Coughlin had constructive knowledge of the unconstitutional actions surrounding the hearing. Plaintiff's basis for asserting constructive knowledge by Coughlin is that "Plaintiff appealed the denial of the Grievances to the Central Office Review Committee," which affirmed Pico's decision, and that the CORC is "in Albany, where Mr. Coughlin'[s] office was located." Plaintiff does not assert that he wrote a letter directly to Coughlin and plaintiff's lengthy exhibits attached to his opposition papers do not evidence any basis for finding that Coughlin had notice of plaintiff's complaints.

Plaintiff also appears to imply that Coughlin condoned a policy of depriving inmates of their constitutional rights. Plaintiff, however, supplies no support for this contention. The procedural requirements for tier III hearings in New York have previously been determined to comply with the constitutional due process requirements set forth in *Wolff. See Walker,* 23 F.3d at 655–56. Moreover, when asserting a claim for a violation of civil rights, the claim must "contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that

shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has failed, even though discovery in this action is closed, to put forth any evidence that Coughlin condoned a policy of violating prisoner's civil rights. Accordingly, plaintiff's complaint against Coughlin is dismissed.

**6. Keane**

 **\*17** The complaint makes no mention of Superintendent Keane beyond the list of defendants. In his memorandum in opposition to defendants' summary judgment motion, however, plaintiff asserts that Keane may be held liable if he created or condoned a policy, custom or practice that caused the violation of plaintiff's rights. The policy or practice that plaintiff asserts Keane condoned was the harassment of inmates and retaliation against inmates for their actions in pursuing inmate grievances. As with plaintiff's claim against Coughlin, plaintiff provides no factual or evidentiary basis for asserting that Keane has condoned such conduct. Without more, plaintiff cannot assert a claim against Keane on this basis.

There is, however, a second means by which Keane may be held liable. Keane could be held liable for the actions of Benjamin or Dezayas if their conduct constituted a violation of plaintiff's constitutional rights, and Keane "learn[ed] of the violation through a report or appeal," and "failed to remedy the wrong." *Williams,* 781 F.2d at 323–24. Although plaintiff does not directly state this in his memorandum of law, he does indicate in his affidavit that he appealed to Keane through his June 10, 1992 letter. Although plaintiff alleges in the letter that he had been harassed and that the hearing was a "set-up," plaintiff does not allege in this letter the one factual basis on which his complaint may succeed—that Dougherty did not make the complaint to Benjamin or that Dougherty made the complaint at the behest of defendants Benjamin and Dezayas. Because Keane had no notice through the letter that plaintiff suffered from any constitutional violation, plaintiff's complaint against Superintendent Keane is dismissed.

**CONCLUSION**

Defendants' motion for summary judgment is granted as to defendants Colon, Pico, Keane and Coughlin. Defendants' motion for summary judgment as to defendants Benjamin and Dezayas is granted as to plaintiff's due process claims, but is denied as to plaintiff's First Amendment claims.

SO ORDERED:

**All Citations**

Not Reported in F.Supp., 1995 WL 60020

Footnotes

1    The flyers stated:

    Dear fellow prisoners/inmates: this is to advise you about the papers we have forwarded to Mr. Flake. I'm awaiting his response. I'm sure our efforts will pay off if we keep up our works. GOOD TIME is imperative for our habilitation. SUDAN.

    Mr. Flake was at the time a United States Congressman from Queens.

2    Although plaintiff alleges in his papers that he was denied an assistant, the hearing record indicates that plaintiff did not dispute officer Hamell's version of the events. Plaintiff asserts, however, that defendant Pico could have received permission from the Superintendent to allow plaintiff to use the assistant on the first sheet.

3    A tier III hearing is the highest level hearing provided for under DOCS regulations, and requires special procedural safeguards. The general procedural requirements in a tier III hearing are described in *Walker v. Bates,* 23 F.3d 652, 655 (2d Cir.1994).

4    Pursuant to IGRC regulations,

    [b]efore an elected inmate representative or an inmate representative who has permanently replaced an elected representative of the IGRC may be removed from his position on the committee or transferred to another facility, a limited due-process hearing must be held. When the inmate is served with notice of the charges, *the notice must indicate that the affirmation of these charges may result in removal from the IGRC*. This hearing may be a disciplinary tier 3 hearing or an IGRC impeachment hearing (procedurally the same as a tier III hearing). *The hearing determines* whether or not the representative should be removed from his representative position and *for how long he should be precluded from holding a representative position....*

    N.Y.Comp.Codes R. & Regs. tit. 7, § 701.5(a) (1994) (emphasis added).

5    Dougherty is housed in a special unit for patients with mental problems, and thus could not be moved to another unit.

6    Although plaintiff is not specific in his definition of the claims, he asserts both that the removal violated the express regulations for removal of IGRC Representatives, and that Pico removed him based on conversations with Colon and Dezayas, apparently in retaliation for his work as an IGRC representative.

---

**End of Document**                                               © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 5231457
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Randy JAMISON, Plaintiff,

v.

Brian FISCHER, et al., Defendants.

No. 11 Civ. 4697(RJS).    |    July 11, 2013.

**Attorneys and Law Firms**

Randy Jamison, pro se.

Eric T. Schneiderman, Attorney General of the State of New York, Julia H. Lee, Of Counsel, Office of the Attorney General of the State of New York, New York, NY, for Defendant.

### *MEMORANDUM AND ORDER*

RICHARD J. SULLIVAN, District Judge.

 **\*1** Randy Jamison ("Plaintiff") brings this *pro se* § 1983 action against Lieutenant Mark Tokarz ("Defendant"), an officer of the New York State Department of Corrections and Community Supervision. Plaintiff asserts that Defendant violated his Eighth and Fourteenth Amendment rights during a prison disciplinary hearing in which Defendant sentenced him to eighteen months in a Special Housing Unit ("SHU"). Before the Court is Defendant's motion for summary judgment as to Plaintiffs Fourteenth Amendment claims only. For the following reasons, the Court grants Defendant's motion for summary judgment as to these claims and directs Plaintiff to file an amended complaint with regard to his Eighth Amendment claim.

### I. BACKGROUND

#### A. Facts

On June 24, 2009, Plaintiff was serving a term of incarceration at Green Haven Correctional Facility in Dutchess County when he received a misbehavior report that charged him with assaulting a corrections officer.[1] (Opp'n

Ex. 1; Decl. of Julia H. Lee, dated Jan. 22, 2013, Doc. No. 37 ("Lee Decl."), Ex. E.) As a result, Plaintiff was summoned to a disciplinary hearing, which took place on June 27 and July 1, 2009. (56.1 Stmt. ¶ 5.) Prior to the hearing, Plaintiff requested and was assigned a case assistant to help him prepare his case. (Opp'n Ex. 2.) Defendant served as the presiding officer during the hearing. (56.1 Stmt. ¶ 5.)

On the first day of the hearing, Plaintiff testified (*id.* ¶ 6) and then requested permission to call witnesses and to review a photograph of the injuries to the officer whom he had allegedly assaulted. (Opp'n Ex. 3.) Defendant indicated he would try to obtain the photograph (*id.*) and then adjourned the hearing so that Plaintiff could call witnesses (Lee Decl. Ex. C).

The hearing resumed on July 1, 2009, at which time Defendant reported that all of Plaintiff's requested witnesses refused to testify. (Lee Decl. Ex. C.) Plaintiff made several additional inmate-witness requests, and, during the hearing, Defendant directed two corrections officers to inquire whether these individuals would be willing to testify. (*Id.*) According to the corrections officers, only one inmate, Inmate Wells, was willing to do so. (*Id* .) Defendant collected Witness Refusal Sheets for all the witnesses who refused to testify. (Lee Decl. Ex. D.)

nmate Wells and three prison officials then testified about the alleged assault. (56.1 Stmt. ¶ 7.) At the end of the second day of the hearing, Defendant asked if Plaintiff wanted to call any additional witnesses. (Lee Decl. Ex. C.) Although Plaintiff declined, he reiterated that he wished to see a photograph of the injury caused by his alleged assault. (*Id.*) Defendant then sentenced Plaintiff to eighteen months in the SHU. (Decl. of Mark Tokarz, dated Jan. 14, 2013, Doc. No. 38, ¶ 3.)

Plaintiff subsequently filed an administrative appeal within the state prison system. Pursuant to that appeal, on September 1, 2009, Norman Bezio, Director of the Special Housing and Inmate Disciplinary Program for the New York State Department of Correctional Services, affirmed Defendant's findings but reduced Plaintiff's sentence in the SHU to twelve months. (Lee Decl. Ex. F.)

 **\*2** Plaintiff then commenced an action in New York State Supreme Court, Albany County, to vacate Defendant's determination, alleging that Defendant had refused to call certain requested witnesses. On March 16, 2010, the court entered judgment for Plaintiff and vacated Defendant's

determination. *See Jamison v. Fischer,* No. 10584–09, 2010 WL 1020088, at \*4 (N.Y.Sup.Ct. Mar. 16, 2010). The New York State Supreme Court Appellate Division, Third Department, affirmed this decision, holding that Defendant should have tried to determine why witnesses had refused to testify. *See Jamison v. Fischer,* 913 N.Y.S.2d 350, 350 (N.Y.App.Div.2010).

**B. Procedural History**

On April 5, 2011, Plaintiff filed the instant Complaint in the United States District Court for the Northern District of New York, alleging constitutional violations of his Eighth and Fourteenth Amendment rights. [2] (Doc. No. 1.) On June 24, 2011, the case was transferred to the Southern District of New York (Doc. No. 4), and it was assigned to my docket on August 11, 2011 (Doc. No. 9). On January 22, 2013, Defendant filed this motion for summary judgment. (Doc. No. 34.) Plaintiff filed his opposition to the motion on February 25, 2013 (Doc. No. 40), and Defendant replied on April 19, 2013 (Doc. No. 41).

Plaintiff alleges three causes of action in the Complaint. First, he alleges that Defendant violated his Fourteenth Amendment due process rights by failing to ensure that Plaintiff's witnesses testified during the disciplinary hearing. (Compl.5.) Next, Plaintiff pleads that the "employee assistance cler [k] failed to interview witnesses prior to the hearing and/ or collect documentary evidence to prepare a defense," which the Court construes as a due process claim against Defendant for failing to procure the photograph that Plaintiff requested during the hearing's first day. [3] (*Id; see* Opp'n 8–9.) Plaintiff also asserts an Eighth Amendment claim based on his period of incarceration in the SHU (Compl.5), but Defendant inexplicably ignores this claim in his moving papers, his memorandum, and his Rule 56.1 Statement. Accordingly, the Court confines its summary judgment inquiry to Plaintiff's due process claims.

**II. LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(a), a court may not grant a motion for summary judgment unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Celotex Corp. v.*

*Catrett, All* U.S. 317, 322–23 (1986). The moving party bears the burden of showing that it is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc., All* U.S. 242, 256 (1986). A court "is not to weigh evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir.2004) (internal quotation marks omitted). As such, "if there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Binder & Binder PC v. Barnhart,* 481 F.3d 141, 148 (2d Cir.2007) (alteration in original) (internal quotation marks omitted).

**III. DISCUSSION**

**\*3** As a preliminary matter, the Court must determine whether Defendant's actions during the disciplinary hearing deprived Plaintiff of a liberty interest that is protected by due process. *See Perry v. McDonald,* 280 F.3d 159, 173 (2d Cir.2001) (holding that the threshold question for a due process claim " 'is always whether the plaintiff has a property or liberty interest protected by the Constitution' " (quoting *Narumanchi v. Bd. of Trs. of the Conn. State Univ.,* 850 F.2d 70, 72 (2d Cir.1988)). Inmates do not maintain liberty interests in disciplinary hearings unless the punishment subjects the inmate to "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). Although the Second Circuit has not established a bright-line rule, a period in a SHU that approaches or exceeds a year clearly rises to the level of an atypical and significant hardship. *Compare Colon v.. Howard,* 215 F.3d 227, 231–32 (2d Cir.2000) (concluding that a 305–day period in a SHU constitutes a deprivation of an inmate's liberty), *with Sealey v. Giltner* 197 F.3d 578, 580 (2d Cir.1999) (holding that a 101–day period of segregation in a SHU did not impair a protected liberty interest). Therefore, Plaintiffs one-year sentence in the SHU at Green Haven Correctional Facility constituted a deprivation of his liberty interest.

**A. Witness**

Testimony Plaintiff claims that his liberty interest was impaired without due process when Defendant failed to

ensure that Plaintiff's witnesses testified at his disciplinary hearing and failed to inquire why all but one of these witnesses refused to testify. An inmate has the right to call witnesses at a disciplinary hearing. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 254.5(a). However, if a requested witness refuses to testify at a disciplinary hearing, the hearing officer is not constitutionally required to compel the witness to testify. *Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993) (per curiam) ("[I]f a witness will not testify if called, it cannot be a 'necessity' to call him. [Therefore,] if a prison official ... reasonably concludes that it would be futile to call a witness to testify, his refusal to do so will not constitute a violation of the prisoner's constitutional rights."); *cf. Dixon v. Goord,* 224 F.Supp.2d 739, 747 (S.D.N.Y.2002) (citation omitted) (holding that prison officials must make a "meaningful effort" to call witnesses). Furthermore, an inmate has no constitutional claim simply because the hearing officer chooses not to inquire into a witness's reasons for refusing to testify. *See e.g., Shell v. Brzezniak,* 365 F.Supp.2d 362, 377 (W.D.N.Y.2005) (determining that the hearing officer "was not required to make any further inquiry" about witnesses who opted not to testify); *Martinez v. Minogue,* No. 9:06–CV–546 (DNH), 2008 WL 4241746, at *5–6 (N.D.N.Y. Sept. 11, 2008) (holding that, although a hearing officer violated state regulations by failing to investigate why two witnesses refused to testify, he did not violate the complaining prisoner's constitutional rights). Here, Defendant attempted to call all of the witnesses that Plaintiff requested by ordering two corrections officers to determine whether these individuals were willing to testify, and he collected Witness Refusal Sheets for those who refused.[4] (Lee Decl. Ex. C.) On this record, the Court discerns no basis for concluding that Defendant failed to seek out the witnesses that Plaintiff requested. Accordingly, the Court finds that Plaintiff was not denied due process.

**\*4** Moreover, even if it could be argued that Defendant violated Plaintiff's constitutional rights, the Court finds that Defendant was protected under the doctrine of qualified immunity. Government officials are "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Luna v. Pico,* 356 F.3d 481, 490 (2d Cir.2004) (citations omitted) (holding that a government official is entitled to receive qualified immunity as long as "he did not violate clearly established law *or* it was objectively reasonable for him to believe that he was not violating clearly

established law"). While conducting the hearing, Defendant reiterated several times that Plaintiff had a right to call witnesses, and he ordered corrections officers to determine if any of Plaintiff's requested witnesses wanted to testify. (Lee Decl. Ex. C.) By taking these steps, Defendant could have reasonably believed that he was not violating Plaintiff's due process rights to call witnesses, so qualified immunity protects him.

### B. Documentary Evidence

Plaintiff also asserts that Defendant violated his due process rights by failing to obtain a photograph of the injuries that Plaintiff allegedly inflicted on a corrections officer. (Opp'n 8.) However, he failed to exhaust this claim when he neglected to raise it during his initial appeal through the prison administrative system.

An inmate may not bring a § 1983 claim regarding any aspect of prison conditions until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). For Plaintiff to raise the issue of the photograph now, he has to have exhausted the entire grievance procedure of the prison administrative system. *See Porter v. Nussle,* 534 U.S. 516, 520 (2002) (holding that the "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences"); *Dixon,* 224 F.Supp.2d at 749 (holding that the exhaustion requirement applies as long as a remedy is available through prison administrative proceedings). Here, Plaintiff failed to raise this claim with prison authorities when he launched his internal appeal. In that appeal, Plaintiff contended that Defendant violated due process by failing to call requested witnesses, to assist Plaintiff with his case, or to provide sound support for Plaintiff's sentence, but Plaintiff did not raise Defendant's failure to obtain the photograph as an additional due process violation. (*See* Decl. of Julia H. Lee, dated April 19, 2013, Doc. No. 42, Ex. A.) Because Plaintiff did not raise this claim through the internal administrative process, it is unexhausted, and Plaintiff cannot raise it now for the first time.

### C. Plaintiff's Eighth Amendment Claim

As noted above, Defendant's summary judgment motion wholly ignores Plaintiff's Eighth Amendment claim. Accordingly, summary judgment is not warranted as to that cause of action. Nevertheless, where a plaintiff is

proceeding *in forma pauperis* and his pleadings fail to state a claim, a court has the authority to dismiss a cause of action *sua sponte. See* 28 U.S.C. § 1915(e) (2)(B) (ii). Here, the Complaint raises an Eighth Amendment claim based on Plaintiff's time in the SHU, where he alleges that he suffered "atypical and significant hardships, torture, loud noise, feces being thrown upon his person" and a corresponding denial of "social stimuli, family day picnics, daily visitation, congregate religious services[,] and meals." (Compl.5.) Although these allegations carry the echo of a claim, they fail to provide a factual basis from which a reasonable fact finder could infer an Eighth Amendment violation by Defendant. [5] Plaintiff has pleaded mistreatment in only conclusory terms, failing to allege when he suffered the purported indignities, how often, and at whose hands. And critically, Plaintiff has failed to plead any facts that give rise to the inference that Defendant was aware that Plaintiff would suffer unconstitutional treatment during his sentence in the SHU. Accordingly, the Court dismisses the third cause of action.

**\*5** However, because Plaintiff is proceeding *pro se,* the Court will permit him to file an amended complaint with respect to his third cause of action, and only with respect to that cause of action. *See Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010). In the amended complaint, Plaintiff must allege specific facts with regard to his experience in the SHU—the who, what, where, when, and how of his cruel

and unusual punishment claim—and he must allege facts that would demonstrate that Defendant is personally liable for this alleged mistreatment in the SHU.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's first and second causes of action. With regard to Plaintiff's third cause of action, the Court dismisses that claim *sua sponte* and without prejudice. IT IS HEREBY ORDERED THAT, by August 23, 2013, Plaintiff shall file an amended complaint with respect to his Eighth Amendment claim *only.* The amended complaint will completely replace the original complaint, so Plaintiff must include all the facts, and only those facts, that relate to his Eighth Amendment claim. Failure to file an amended complaint may result in the permanent dismissal of Plaintiff's third cause of action and the closing of his case. The Clerk of Court is respectfully directed to terminate the motion located at Doc. No. 34.

SO ORDERED.

**All Citations**

Slip Copy, 2013 WL 5231457

---

Footnotes

1    The following facts are taken from Defendant's Local Civil Rule 56.1 Statement ("Rule 56.1 Statement" or "56.1 Stmt."), and Plaintiff's Counter 56.1 Statement ("PL's Counter 56.1 Stmt."). In deciding Defendant's motion for summary judgment, the Court also considered Defendant Tokarz's Memorandum of Law in Support of Motion for Summary Judgment ("Mem."), Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Opp'n"), Defendant Tokarz's Reply Memorandum of Law in Support of the Motion for Summary Judgment ("Reply"), and the declarations and exhibits submitted in connection with the instant motion.

2    Along with his claims against Defendant, Plaintiff brought a claim against Bezio asserting that, while Bezio modified the duration of Plaintiff's incarceration in the SHU, Bezio left the "illegal determination in tact [sic]." (Compl.5.) Plaintiff also asserted claims against Brian Fischer, Commissioner of the New York State Department of Corrections, alleging that Fischer's failure to train and supervise employees led Defendant to commit procedural errors during the hearing. (*Id.* at 5.) On December 2, 2011, Fischer and Bezio filed a joint motion to dismiss (Doc. No. 15), which the Court granted on September 27, 2012 (Doc. No. 27).

3    The Court construes a *pro se* plaintiff's complaint liberally to make the strongest argument it suggests. *See* Kevilly v. New York, 410 F. App'x 371, 374 (2d Cir.2010); *Harris v. Mills,* 572 F.3d 66, 71–72 (2d Cir.2009).

4    Plaintiff contends that Defendant should not have trusted the corrections officers and should have himself investigated why all but one of the Witness Refusal Sheets were unsigned. (Opp'n 9; *see id.* Ex. 5.) However, on every Witness Refusal Form, one of the corrections officers signed a statement explaining that they had "specifically asked [the requested witness] to provide a reason for his/her refusal to testify and he/she refused to provide further information." (Opp'n Ex. 5.) Accordingly, Defendant could have reasonably concluded "that it would be futile to call" them. *Silva,* 992 F.2d at 22.

<span style="color:blue">**5**</span>  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). But plaintiffs must be specific; a complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. If a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id* at 570.

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 3046701
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Andre JOHNSON, Plaintiff,

v.

Richard DOLING, Hearing Officer, Great Meadow
Correctional Facility; Robert Murphy, Acting
Director, Special Housing Unit, Defendants.

Civ. No. 9:05-CV-376 (TJM/
RFT).   |   Oct. 17, 2007.

**Attorneys and Law Firms**

Andre Johnson, Pine City, NY, pro se.

Hon. Andrew Cuomo, Attorney General for the State of New
York, Jeffrey P. Mans, Esq., Assistant Attorney General, of
Counsel, Albany, NY, for Defendants Doling and Murphy.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior United States District Judge.

 **\*1** This *pro se* action brought pursuant to 42 U.S.C. §
1983 was referred to the Hon. Randolph F. Treece, United
States Magistrate Judge, for a Report and Recommendation
pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).
No objections to the Report-Recommendation and Order
dated September 17, 2007 have been filed. Furthermore, after
examining the record, this Court has determined that the
Report-Recommendation and Order is not subject to attack
for plain error or manifest injustice. Accordingly, the Court
adopts the Report-Recommendation and Order for the reasons
stated therein.

It is therefore,

**ORDERED** that Defendants' motion for summary judgment
(Docket No. 34) is **GRANTED** and the complaint is
**DISMISSED** as to all defendants.

**IT IS SO ORDERED.**

**REPORT-RECOMMENDATION and ORDER**

RANDOLPH F. TREECE, United States Magistrate Judge.

*Pro se* Plaintiff Andre Johnson brings this civil action,
pursuant to 42 U.S.C. § 1983, alleging Defendants Doling
and Murphy denied him due process rights in a Disciplinary
Hearing in violation of the Fourteenth Amendment. Dkt. No.
1, Compl., Facts at ¶¶ 1-35 & Cause of Action at ¶¶ 36-47.
Specifically, Plaintiff alleges Defendants violated his due
process rights by denying him the right to present a defense,
call witnesses, be present, receive a written disposition and
statement of the evidence relied upon, and receive a fair and
impartial hearing. Compl. at ¶ 39. Defendants now bring
a Motion for Summary Judgment. Dkt. No. 34. Plaintiff
opposes the Motion. Dkt. No. 35. For the following reasons,
it is recommended that the Motion for Summary Judgment be
**granted.**

**I. FACTS**

During all relevant times pertaining to this action, Plaintiff
was incarcerated at Great Meadow Correctional Facility. Dkt.
No. 34, Defs' 7.1 Statement at ¶ 2.[1] Plaintiff was served
with an Inmate Misbehavior Report, dated March 17, 2002,
in which he was charged with possession of a weapon,
assault, fighting, and threat of violence. *Id.* at ¶ 3. Prior to
the Disciplinary Hearing, Plaintiff was provided an assistant
of his choice with whom he met, received all requested
documents, and requested one inmate witness, Angulo. *Id.* at
¶ 4.

Defendant Officer Doling commenced the Hearing on March
21, 2002, advising Plaintiff of the procedure and his rights. *Id.*
at ¶ 7. Doling then read the Inmate Misbehavior Report into
the record and asked Plaintiff to enter a plea, to which Plaintiff
entered a plea of not guilty. *Id.* at ¶¶ 7-8. During the Hearing,
Plaintiff objected to the evidence tag number identified in
the Misbehavior Report (# 8621), which was not the same
evidence tag number on the physical weapon (# 8629). *Id.* at ¶
9. Doling dismissed the objection, indicating that because the
weapon marked # 8629 had the same physical description as
the weapon in the Misbehavior Report, he believed the mixup
in numbers was the result of a typographical error. Dkt. No.
34, Jeffrey P. Mans, Asst. Att'y Gen., Affirm., dated Jan. 10,
2007, Ex. A-10, Hr'g Tr. at p. 2.

**\*2** Correction Officer Young authored the Misbehavior Report which formed the basis for the charges against Plaintiff. Mans Affirm., No. 34, Ex. A-3, Inmate Misbehavior Report, dated Mar. 17, 2002. In the Report, Young stated he saw Plaintiff swing at and stab another inmate, Angulo, with a weapon about eight inches long and sharpened to a point with a piece of bed sheet wrapped around it as a handle. *Id.* Young also stated he recovered the weapon after Plaintiff threw it away as he was falling to the floor. *Id.* The Misbehavior Report does not mention any other inmate besides Plaintiff and the victim, Angulo. Plaintiff objected that the Misbehavior Report should include other inmates involved in the incident pursuant to Departmental Regulation, codified at N.Y. COMP.CODES R. & REGS. (N.Y.CRR) tit. 7, § 251-3.1(c)(4), which states that "when more than one inmate was involved in an incident, the report should, to the extent practicable under the given circumstances, indicate the specific role played by each inmate." Hr'g Tr. at pp. 3-6. Because Young had not mentioned other inmates in the Report, Doling dismissed Plaintiff's objections to the Report as irrelevant. *Id.* at pp. 3-4.

An Unusual Incident Report (UIR), dated March 17, 2002, indicates that four inmates were involved in the altercation Young observed. Mans Affirm., Ex. A-6 at pp. 1-3, Unusual Incident Rep., dated Mar. 17, 2002 (stating "[O]fficer [Y]oung observed three inmates fighting with inmate Angulo"). Plaintiff attempted to introduce the UIR into evidence in order to call into question the accuracy of the Misbehavior Report, however, Doling denied said introduction for lack of relevancy because the Misbehavior Report alone constituted the formal charge against Plaintiffs under 7 NYCRR § 254.3, and because the UIR was not written by Young. Hr'g Tr. at pp. 3-5 & 10.

At Plaintiff's request, Officer Young and Inmate Ingram testified at the Hearing. Defs.' 7.1 Statement at ¶ 11. Young testified he observed Plaintiff and two other inmates attacking Inmate Angulo, that Plaintiff attempted to stab Angulo with the shank he subsequently threw away as he slipped and fell to the floor, and that after he recovered the weapon he "screwed up" the tag number, creating the aforementioned tag number discrepancy. Hr'g Tr. at pp. 6-10.

Plaintiff then called as witnesses Inmate Angulo and the other inmates named in the UIR, Temple and Ingram. Hr'g Tr. at p. 5. Angulo refused to testify in the case, stating in his refusal form that he didn't know Plaintiff. Mans Affirm., Ex. A-9 at p. 4, Requested Inmate Refusal to Testify Form, dated Mar. 21,

2002. Defendant Doling was satisfied that Angulo's refusal was fair, reasonable and not occasioned by any wrongdoing. Hr'g Tr. at p. 13. Doling called Officer Stemp in order to request Inmate Temple to testify, but Officer Stemp indicated Temple did not want to testify. *Id.* at p. 18. Officer Stemp did not know why Temple refused, nor did he know if Temple had been threatened or promised anything if he didn't testify. *Id.* Based upon that conversation, Doling found that Temple had voluntarily refused to testify. *Id.* at p. 19.

**\*3** Plaintiff also called as a witness Sergeant (Sgt.) Brown, who investigated the incident, and Lieutenant (Lt.) Armstrong, who received an interdepartmental communication from Officer Young indicating that Young recovered a different weapon from the scene of the altercation, a four-and-a-half inch long piece of sharpened metal wrapped with plastic food covering. Hr'g Tr. at pp. 13-17; Mans Affirm., Ex. A-6 at p. 4, Ex. 5, Interdepartmental Commc'n, dated Mar. 17, 2002. Doling refused to call these officers for lack of relevancy. Hr'g Tr. at pp. 13-17. In Sgt. Brown's case, Doling deemed his testimony irrelevant because he did not witness the incident nor write the Misbehavior Report. *Id.* Lt. Armstrong's testimony was deemed irrelevant because Doling saw no inconsistencies between the Interdepartmental Communication and the Misbehavior Report. *Id.*

Doling excluded Plaintiff from the Hearing after Plaintiff allegedly exhibited threatening behavior and, in Doling's opinion, attempted to prolong the Hearing by calling irrelevant witnesses. Hr'g Tr. at pp. 19-20. Officer Doling stated:

> Upon asking Mr. Johnson to step out so I could arrange for further witnesses, Mr. Johnson became threatening and I had him removed from the hearing room because of his clear refusal to um, move this hearing along and his threatening manner. Mr. Johnson has been excluded from this hearing. I have decided to complete this hearing without him. It is clear that Mr. Johnson is making requests for witnesses who are not relevant or material to the issue has become very angry with hearing officer for refusing to uh, subject himself, the hearing officer refusal to subject himself to the_____ of the inmate and have

become argumentative, threatening and otherwise uh, dangerous to the safety and security of the facility. The inmate has requested a number [of] witnesses most of whom have been dealt with by either hearing the testimony of or obtaining the refusal of the witnesses.

Hr'g Tr. at pp. 19-20.

Plaintiff denies exhibiting any threatening or obstructive behavior, and further asserts that Doling stopped the audio recorder while rudely dismissing him.[2] Pl.'s 7.1 Statement at ¶ 7. Doling continued the Hearing without Plaintiff and questioned Inmate Ingram, the final witness Plaintiff had requested prior to his removal. Hr'g Tr. at pp. 20-22. Doling found Plaintiff guilty of the charges and imposed a penalty of 730 days disciplinary confinement in the Special Housing Unit (SHU). *Id.* at p. 22. Doling made a statement of the evidence relied upon, and requested that Officer Catalfamo give copies of the Hearing Disposition along with an appeal form to Plaintiff within twenty-four hours. *Id.* at pp. 22-23. Plaintiff denies ever receiving these documents. Pl.'s 7.1 Statement at ¶ 7; Compl. at p. 2. However, Plaintiff did receive a copy of the audio tape of the Hearing and successfully requested an extension of time to appeal the disposition. Mans. Affirm., Ex. A-11, Letter from Andre Johnson to Glenn S. Goord, dated Apr. 18, 2002 (stating "I received the hearing tape in SHU"); Mans. Aff., Ex A-13, Letter from Deputy Comm'r Lucien J. Leclaire, Jr. to Andre Johnson, dated Apr. 29, 2002 (granting Johnson's request for an extension to supplement his appeal).

**\*4** Plaintiff appealed Doling's Tier III determination. Defs.' 7.1 Statement at ¶ 21. Defendant Robert Murphy, Acting Director of Special Housing and Inmate Discipline, modified the Tier III disciplinary determination by reducing the penalty imposed from 730 days to 540 days in SHU. *Id.* at ¶ 22. Subsequently, by determination dated June 23, 2002, Donald Selsky, Director of Special Housing and Inmate Discipline, administratively reversed the Tier III disciplinary determination, although Plaintiff had already served the entirety of the modified sanction. Defs.' 7.1 Statement at ¶ 26; Pl.'s 7.1 Statement at ¶ 12.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e) ] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.,* 964 F.2d 149, 154 (2d Cir.1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525-26 (2d Cir.1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) and *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."

*Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994). Furthermore, where a party is proceeding *pro se,* the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), *accord, Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

**B. Due Process Claims Against Defendant Doling**

**\*5** In order to state a procedural due process claim pursuant to the Fourteenth Amendment, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker,* 139 F.3d 329, 333 (2d Cir.1998) (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)). Such interests are derived from the Fourteenth Amendment Due Process Clause itself or from state statute or regulations. *Id.*

The Supreme Court has narrowly circumscribed the scope of liberty interests emanating from the Due Process Clause to protect "no more than the 'most basic liberty interests in prisoners.' " *Id.* (quoting *Hewitt v. Helms,* 459 U.S. 460, 467 (1983)). Furthermore, "changes in the conditions of confinement having a substantial adverse impact on the prisoner are not alone sufficient to invoke the protections of the Due Process Clause '[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him.' " *Vitek v. Jones,* 445 U.S. 480, 493 (1980) (quoting *Montanye v. Haymes,* 427 U.S. 236, 242 (1976)).

However, when a prisoner is subjected to conditions that are "unexpected," *Sandin v. Conner,* 515 U.S. 472, 484 (1995), and "qualitatively different from the punishment characteristically suffered by a person convicted of crime," the Due Process Clause itself confers a liberty interest. *Vitek v. Jones,* 445 U.S. at 493 (holding an involuntary transfer to a state mental hospital implicated a liberty interest protected by the Due Process Clause); *see also, Washington v. Harper,* 494 U.S. 210 (1990) (finding the Due Process Clause provides a liberty interest in being protected from the involuntary administration of psychotropic drugs).

In the case at bar, Plaintiff's disciplinary confinement in SHU does not constitute an "unexpected" change in condition, nor

did those conditions exceed the sentence imposed upon him. *See Dawes v. Dibiase,* 1997 WL 376043, at \*4 (N.D.N.Y. July 3, 1997) (citing *Washington v. Harper & Vitek v. Jones* for the proposition that the Due Process Clause will apply by its own force only for deprivations much more severe than solitary confinement for a year). Therefore, Plaintiff does not have a liberty interest in remaining free from SHU confinement emanating from the Due Process Clause itself.

State statutes and regulations may also confer liberty interests to prisoners. *Arce v. Walker,* 139 F.3d at 334 (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. at 460). The Supreme Court held in *Sandin v. Conner* that state created liberty interests shall be limited to those deprivations which subject a prisoner to "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. at 484. Thus, a prisoner asserting a denial of due process as a result of segregated confinement or loss of privileges must (1) make a threshold showing that an atypical and significant hardship was imposed upon him, and (2) establish that the "state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996).

**\*6** While the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard, *Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999), it has made clear that confinement in SHU for a period of one year constitutes atypical and significant restraint on inmates, deserving due process protections, *Sims v. Artuz,* 230 F .3d 14, 23 (2d Cir.2000) (stating that confinement in SHU exceeding 305 days was atypical); *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir.2000) (finding 305 days of SHU confinement atypical).

Thus, while Plaintiff cannot claim a liberty interest emanating from the Due Process Clause itself, he has by virtue of being confined in SHU for over a year passed the *Sandin* threshold for constitutional protection of a state-created liberty interest. Because New York State has created by statute or regulation a liberty interest in remaining free from segregated confinement, Plaintiff has stated a valid due process claim based on a constitutionally protected, state-created liberty interest. *Sher v. Coughlin,* 739 F.2d 77, 81 (2d. Cir.1984); *Alvarez v. Coughlin,* 2001 WL 118598, at \*6 (N.D.N.Y. Feb. 6, 2001) (holding *Sandin* does not affect the validity of prior decisions holding New York State

Regulations create a protected liberty interest in remaining free from disciplinary segregation).

Having made a threshold showing of atypical and significant confinement, we must consider whether Plaintiff, prior to his confinement, was afforded the minimum requirements of due process. *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). A prisoner placed in administrative segregation must be provided (1) advanced written notice of the charges against him at least twenty-four hours prior to the hearing; (2) the opportunity to appear at the hearing, call witnesses, and present rebuttal evidence; and (3) a written statement as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.* at 564-66; *see also Freeman v. Rideout,* 808 F.2d 949, 953 (2d Cir.1986); *Taylor v. Rodriguez,* 238 F.3d 188, 192 (2d Cir.2001) (quoting *Hewitt v. Helms,* 459 U.S. 460, 476 (1983).

### 1. Notice

"Notice" should be something more than a mere formality. *Benitez v. Wolff,* 985 F.2d 662, 665 (2d Cir.1993). "The effect of the notice should be to compel 'the charging officer to be [sufficiently] specific as to the misconduct with which the inmate is charged' to inform the inmate of what he is accused of doing so that he can prepare a defense to those charges and not be made to explain away vague charges set out in a misbehavior report." *Taylor v. Rodriguez,* 238 F.3d at 192-93 (quoting *McKinnon v. Patterson,* 568 F.2d 930, 940 n.11 (2d Cir.1977)) (alteration in original).

In this case, Plaintiff was served with an Inmate Misbehavior Report, dated March 17, 2002, in which he was charged by Officer Young with possession of a weapon, assault, fighting, and threat of violence. Mans Affirm., Ex. A-3, Inmate Misbehavior Rep. Johnson acknowledged receipt of the Misbehavior Report by signing the Hearing Record Sheet and does not contest receipt of such Report. Mas Affirm. Ex. A-9 at p. 2, Hr'g Record Sheet.

**\*7** We find that Plaintiff was provided sufficient notice to fulfill the requirements of due process.

### 2. Hearing

A prisoner must be afforded the opportunity to appear at the Disciplinary Hearing, to call witnesses, and to present rebuttal

evidence. *Wolff v. McDonnell,* 418 U.S. at 556. "Although the hearing requirement for placement in administrative segregation may be met by an 'informal, nonadversary' proceeding, *Hewitt [v. Helms,]* 459 U.S. at 476, it is a bedrock requirement of due process that such hearing be held 'at a meaningful time and in a meaningful manner,' *Matthews v. Eldridge,* 424 U.S. 319, 333 (1976)." *Taylor v. Rodriguez,* 238 F.3d at 193.

Plaintiff was provided an assistant of his choice, received all requested documents, and requested Inmates Angulo and Temple to testify as his only inmate witnesses. At the Hearing presided by Defendant Officer Doling on March 21, 2002, Plaintiff was advised of the procedure and of his rights and was read the charges against him as reflected in the Misbehavior Report. Hr'g Tr. at pp. 1-2. Plaintiff claims Doling violated his due process rights at various times during the course of the Hearing. Compl. at ¶ 39.

### a. Witnesses

First, Plaintiff asserts he was denied the opportunity to call witnesses as part of his defense. *Id.* An inmate's right to call witnesses is not the same as a defendant in a criminal trial, but rather, is qualified by the circumstances of prison life. *Wolff v. McDonnell,* 418 U.S. at 566-67. The Supreme Court has stated that disciplinary hearing officers must have the discretion to deny witnesses, noting that valid bases for the denial of witnesses would include irrelevance, lack of necessity, and other hazards particular to each case. *Id.* (noting that the right to call witnesses must be balanced against legitimate penological interests).

Plaintiff attempted to call as witnesses Inmates Angulo (the victim) and Temple (mentioned in the Unusual Incident Report). Angulo refused to testify, stating in his signed refusal form he didn't know Plaintiff. Mans Affirm., Ex A-9 at p. 4, Requested Inmate Witness Refusal to Testify Form, dated Mar. 21, 2002. Inmate Temple, without offering any reasons, also refused to testify as recounted by Officer Stemp. Hr'g Tr. at p. 18.

A failure to summon the testimony of a witness who has refused to testify, in the absence of evidence that the refusal was linked to intimidation on the part of prison officials, does not violate due process because calling a witness who refuses to speak upon questioning would be futile. *Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993); *see also Rossi v.*

*Goord,* 2006 WL 2811505, at *14 (N.D.N.Y. Sept. 28, 2006). The hearing officer does not have to conduct an independent investigation before accepting an inmates-witness's refusal to testify. *Dumpson v. Rourke,* 1997 WL 610652, at *1 (N.D.N.Y. Sept. 28, 2006) (citing *Greene v. Coughlin,* 1995 WL 60020, at *14 (S.D.N.Y. Feb. 10, 1995). In this case, the record provides no evidence nor intimation that either refusal was made because of intimidation. The fact Temple did not sign a refusal form did not even amount to a violation of any New York State Regulation, let alone a constitutional due process violation. *See,* 7 N.Y. COMP.CODES R. & REGS. tit. 7, § 253 .5. Therefore, Officer Doling's refusal to compel these witnesses' appearance does not constitute a due process violation.

**\*8** Plaintiff also attempted to call as witnesses Sgt. Brown, who investigated the incident, and Lt. Armstrong, who received an interdepartmental communication about the incident from Officer Young. Defendant Officer Doling denied calling them for lack of relevancy. Hr'g Tr. at pp. 13-17. Doling ruled that neither Lt. Armstrong nor Sgt. Brown personally witnessed the incident, and thus could not offer any relevant information. Irrelevancy is a valid grounds for the denial of a witness. *Wolff v. McDonnell,* 418 U.S. at 566-67. Although Plaintiff correctly points out that the Misbehavior Report did not include information pertaining to other inmates who were allegedly involved in the incident, possibly in contravention of the protocol laid out in Departmental Regulation § 251-3.1, such an omission does not change the charges against him nor the evidence relevant to that charge. Violation of state law alone is generally insufficient to establish a constitutional violation. *See Soto v. Walker,* 33 F.3d 169, 173 (2d Cir.1993). Additionally, the UIR, which identified other inmate participants, is congruent with Young's Misbehavior Report in that both state that Young observed Johnson stabbing and slashing Angulo with an eight inch sharpened metal shank with a cloth handle. In determining that their testimony was irrelevant, Doling's refusal to call Brown and Armstrong did not violate due process.

Plaintiff was allowed to call and question Officer Young as a witness. Hr'g Tr. at pp. 6-10. Young affirmed the charges described in his Misbehavior Report. *Id.* Doling also called Inmate Ingram and examined him after Plaintiff was removed from the Hearing . [3] *Id.* at pp. 20-22. For the reasons stated above, it is therefore recommended that summary judgment be **granted** as to this claim.

**b. Ejection from Hearing**

Second, Plaintiff asserts Doling deprived him of due process when he evicted him from the Hearing and continued it in his absence. Compl. at ¶ 39. Defendants argue due process does not entail the right to be physically present at a disciplinary hearing. Dkt. No. 34-24, Defs' Mem. of Law, at p. 17 (citing *Bogle v. Murphy,* 2003 WL 22384792 (W.D.N.Y. Sept. 9, 2003) for the proposition that violations of New York State Regulations do not necessarily constitute constitutional due process violations, and *Francis v. Coughlin,* 891 F.2d 43, 48 (2d Cir.1989) for the Second Circuit's determination that "[p]rison inmates do not possess a constitutional right to be present during the testimony of witnesses during a disciplinary proceeding"). We recently recognized in *Holloway v. Selsky* the existence of conflicting Second Circuit opinions regarding whether prisoners have a right to be present at disciplinary hearings under the Due Process Clause. 2007 WL 433375, at *7 (N.D.N.Y. Feb. 6, 2007). In that case, we noted that in *Francis v. Coughlin,* 891 F.2d 43, 48 (2d Cir.1989), the Second Circuit declared nonexistent the right of an inmate to be present at a disciplinary hearing, while in two subsequent cases, the Second Circuit affirmed a limited right to be present during disciplinary hearings: in *Young v. Hofman,* 970 F.2d 1154 (2d Cir.1992), the Second Circuit stated that "[t]he Due Process Clause provides inmates with several protective procedures that they may expect at disciplinary hearings, *including the opportunity to appear at the hearing* and to call witnesses" (emphasis added) and in *Chavis v.. Zodlow,* 2005 WL 834646, at *3-4 (2d Cir.2005), it stated that prisoners have a "limited right to be present" during disciplinary hearings. In *Holloway,* we declined to address this constitutional issue because the Plaintiff failed to make the threshold showing of a constitutionally protected liberty interest under the atypical and significant standard. *Holloway v. Selsky,* 2007 WL 433375, at *7. In the case at bar, no such roadblock prevents our consideration of this constitutional issue.

**\*9** The Second Circuit has held that the limited right to call witnesses, present evidence, and comment on the charges brought are facially valid constitutional claims. *Sims v. Artuz,* 230 F.3d 14, 24 (2d Cir.2000) (citing *Wolff v. McDonnell,* 418 U.S. at 555-72). We find implicit in the Supreme Court's decision in *Wolff* the limited right to be physically present at disciplinary hearings in order to exercise the aforementioned basic due process rights. *Chavis v. Zodlow,* 2005 WL 834646 at *3-4 (stating that the Supreme Court in *Wolff v. McDonnell*

"acknowledg[ed] an inmate's limited right to be present during his disciplinary hearing"). While this right must necessarily be limited by penological interests, the *per se* denial of such right would undermine the requirement that disciplinary hearings be held "at a meaningful time and in a meaningful manner." *Matthews v. Eldridge,* 424 U.S. 319, 333 (1976); *see also Wolff v. McDonnell,* 418 U.S. at 566 (stating "we must balance the inmate's interest ... against the needs of the prison, and some amount of flexibility and accommodation is required").

However, because we recognize that neither the Supreme Court nor the Second Circuit has clearly articulated the right of prisoners to be present at disciplinary hearings, Defendants are entitled to qualified immunity. *African Trade & Info. Ctr., Inc. v. Abromaitis,* 294 F.3d 355, 359 (2d Cir.2002). Qualified immunity will shield "government officials from liability for civil damages when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id.* at 359 (2d Cir.2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *see also Mollica v. Volker,* 229 F.3d 366, 370 (2d Cir.2000). Violation of a duty under state law does not defeat qualified immunity because there must be a clearly established *federal* right on which the claim for relief is based. *Elder v. Holloway,* 510 U.S. 510, 515-16 (1994) (citing *Davis v. Scherer,* 468 U.S. 183, 197 (1984)). In order for the constitutional right to be clearly established, three elements must be met: "1) ... [that] the right in question [be] defined with reasonable specificity; 2) [that] the decisional law of the Supreme Court and applicable circuit court support the existence of the right in question; and 3) [that] under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Mollica v. Volker,* 229 F.3d at 371 (internal quotation marks and citations omitted) (alterations in original).

Because neither the Supreme Court nor the Second Circuit has clearly established the right of prisoners to be present at a disciplinary hearing, qualified immunity applies and it is recommended that summary judgment on this claim be **granted.**

### c. Right to Present a Defense

Plaintiff asserts Doling denied him the opportunity to present a defense. Compl. at ¶ 39. Specifically, Plaintiff objects to Doling's determination that the discrepancy of the numbered

label on the evidence bag was due to a typographical error, to his refusal to call certain witnesses, and to the Misbehavior Report, which failed to include a description of the participation of three other inmates who were named in the UIR. Pl.'s Mem. of Law at pp. 15-20. These objections are without merit. As discussed above, Doling acted within his authority when he declined to call witnesses for lack of relevancy. *See supra* Part II.B.2.a at pp. 12-14. Further, the charges brought against Plaintiff in the Misbehavior Report are not contradicted by the UIR, and are in fact affirmed by it. *Compare* Inmate Misbehavior Report (stating Plaintiff was "swinging and stabbing inmate Angulo") *with* Unusual Incident Report (stating Plaintiff was "using a metal shank stabbing and slashing at Angulo"). Finally, Doling's determination that a typographical error was the cause of the mislabeled evidence bag, affirmed by Officer Young's testimony, was not unreasonable. Hr'g Tr. at pp. 6-9. And, as previously discussed with respect to Plaintiff's dismissal from the hearing, qualified immunity applies, and it is therefore recommended that summary judgment on this claim be **granted.**

### d. Fair and Impartial Hearing

**\*10** Plaintiff claims he received an unfair and partial hearing before Hearing Officer Doling. Compl. at ¶ 39. An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer who does not prejudge the evidence. *Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996). But, it has been held that "prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Id.* at 259 (citing *Russell v. Selsky,* 35 F.3d 55, 60 (2d Cir.1994) and *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989).

The Hearing Transcript reveals a contentious proceeding characterized by frequent interruptions and heated exchanges between Plaintiff and Doling. *See generally* Hr'g Tr. Notwithstanding, until his dismissal from the proceeding, Plaintiff was provided the opportunity to testify, call and question witnesses, and raise objections on which Doling ruled and explained his reasoning to Plaintiff. *Id.* Disagreement with rulings made by a hearing officer does not constitute bias. *Cf. Dumpson v. Rourke,* 1997 WL 610652, at \*6 (N.D.N.Y. Sept. 26, 1997) (stating "[t]he fact that the hearing officer did not decide in the plaintiff's favor does not make him biased in the constitutional sense"). We find no genuine issues of material fact concerning Doling's

impartiality and therefore it is recommended that summary judgment be **granted** on this claim.

### 3. Written Statement of the Evidence Relied Upon

Plaintiff claims he did not receive a written disposition of the Disciplinary Hearing or statement of the evidence relied upon. Compl. at ¶ 39. Prisoners are entitled to a "written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." *Wolff v. McDonnell,* 418 U.S. at 563. Provision of a written disposition is a mechanism that ensures the inmate protection against "collateral consequences based on a misunderstanding of the nature of the original proceeding.... Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others." *Id.* at 565.

After declaring Plaintiff guilty of the charges brought, Doling imposed a penalty of 730 days in SHU with attendant loss of privileges, annunciated a statement of the evidence which was relied upon, and directed Officer Catalfamo to deliver the Hearing Disposition together with an appeal form to Plaintiff within 24 hours. Hr'g Tr. at p. 22. Defendants provide an Interdepartmental Communication from Officer Catalfamo, dated March 29, 2002, wherein he asserts he delivered a copy of the disposition form to Plaintiff and also informed Plaintiff of his right to appeal the disposition within thirty days. Mans Affirm., Ex. A-9 at p. 6, Interdepartmental Commc'n, dated Mar. 29, 2002. Plaintiff asserts those documents were never delivered to him as Doling directed. Pl.'s Mem. of Law at pp. 20-21. However, Plaintiff did receive a copy of the disposition within a month after the Hearing, and was able to file an appeal on which he eventually prevailed. Mans Affirm ., Ex. A, Dep. of Andre Johnson, dated Sept. 12, 2006, at pp. 47-51 (stating he received them sometime in April 2002); *see also* Mans Affirm. Exs. a-11 & A-12 (letters from Plaintiff requesting extensions of time to file an appeal and noting he received an audio tape of the Hearing along with a cassette player). Any potential constitutional violation was therefore cured because the delay in no way prejudiced Plaintiff, as evidenced by the fact that he filed an appeal and was ultimately successful, and therefore it is recommended that summary judgement be **granted** on this claim.

Footnotes

### C. Due Process Claims Against Defendant Murphy

**\*11** Plaintiff claims Murphy violated his due process rights by failing to remedy the alleged constitutional violations he suffered. Compl. at ¶¶ 40-41. Plaintiff does not allege that Defendant Murphy was personally involved in any wrongdoing, and thus his theory of liability rests solely on Murphy's supervisory status. Because we find that Defendant Doling did not violate any clearly established constitutional rights, Defendant Murphy cannot be held liable on any grounds. *See supra* Part B, Due Process Claims Against Defendant Doling. It is therefore recommended that summary judgment be **granted** as to the claims against Murphy.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that Defendants' Motion for Summary Judgment (Dkt. No. 34) be **GRANTED** and the Complaint (Dkt. No. 1) be **DISMISSED** against all Defendants, and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), & 6(e).

### All Citations

Not Reported in F.Supp.2d, 2007 WL 3046701

1   When the Plaintiff has not objected to a particular statement of fact proffered in the Defendants' 7.1 Statement, we will not cite to both 7.1 Statements, only to the Defendants'. *See* N.D.N.Y.L.R. 7.1(a)(3) (*"Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."*) (emphasis in original).

2   Plaintiff asserts Doling told Officer Catafalmoto to "get this piece of shit out of here." Pl.'s 7.1 Statement at ¶ 7. There does appear to be a break in the transcript before Doling announces he has expelled Plaintiff. Hr'g Tr. at p. 19.

3   We consider Plaintiff's ejection and the continuation of the Hearing in his absence below.

---

**End of Document**                                      © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 4394604
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Edgardo L. LOPEZ, Plaintiff,

v.

N. WHITMORE, et. al., Defendants.

No. 9:13–CV–952 (BKS/
ATB).    |    Signed July 16, 2015.

**Attorneys and Law Firms**

Edgardo L. Lopez, Last Known Address, Syracuse, NY, pro
se.

Hon. Eric T. Schneiderman, New York State Attorney
General, Christopher W. Hall, Assistant Attorney General,
The Capitol, Albany, NY, for Defendants.

**ORDER**

Hon. BRENDA K. SANNES, District Judge.

 *1 Plaintiff Edgardo L. Lopez, a former New York
State inmate, commenced this civil rights action under 42
U.S.C. § 1983 raising federal and state claims against New
York State Department of Correction officials arising out
of plaintiff's confinement at Marcy Correctional Facility.
Dkt. Nos. 1, 32. On October 9, 2014, defendants filed a
motion for summary judgment which was referred to United
States Magistrate Judge Andrew T. Baxter. Dkt. Nos. 69,
83. On May 20, 2015, Judge Baxter issued a Report–
Recommendation, recommending that defendants' motion
for summary judgment be granted, and that plaintiff's First
Amendment and Eighth Amendment claims be dismissed
without prejudice to refiling and that plaintiff's due process
and state law claims be dismissed with prejudice. Dkt. No.
83, p. 24. Judge Baxter advised the parties that:

> Pursuant to 28 U.S.C. § 636(b)(1) and
> Local Rule 72.1(c), the parties have
> fourteen (14) days within which to
> file written objections to the foregoing
> report. Such objections shall be filed
> with the Clerk of the Court. FAILURE
> TO OBJECT TO THIS REPORT
> WITHIN FOURTEEN DAYS WILL

PRECLUDE APPELLATE REVIEW.
Roldan v. Racette, 984 F.2d 85, 89
(2d Cir.1993) (citing Small v. Sec. of
Health & Human Servs., 892 F.2d 15
(2d Cir.1989)); 28 U.S.C. § 636(b)(1);
Fed.R.Civ.P. 6(a), 6(d), 72.

Dkt. No. 83, p. 24. A copy of the Report–Recommendation
was mailed to Lopez's last known address via certified mail.
Dkt. No. 83. Lopez's copy of the Report–Recommendation
was returned to the Court marked "Return to sender, unable
to forward." Dkt. No. 85.

On June 8, 2015, Lopez filed a notice of change of address and
a request for an extension of time to respond to the Report–
Recommendation. Dkt. Nos. 86–87. Lopez noted that he
received the Report–Recommendation that day at the public
counter in the courthouse. Dkt. No. 87. The Court granted
Lopez's request for an extension of time and, in a text order
dated June 8, 2015, extended the due date for filing objections
to June 22, 2015. The text order was mailed to Lopez's last
known address. Lopez's copy of the text order was returned
to the Court marked "Return to sender, not deliverable as
addressed, unable to forward." Dkt. No. 89.

In a Decision and Order on June 29, 2015, the Court reminded
Lopez of his obligation to notify the Court of any change in
address, see Local Rule 10.1(c)(2), and provided Lopez an
additional fourteen days to file his current address and any
objections to the Report and Recommendation. Dkt. No. 90,
pp. 2–4. The Court advised Lopez that if he failed to comply
with the Decision and Order, the Court would "consider the
Report and Recommendation as unopposed and review for
clear error only." Dkt. No. 90, p. 4. The Decision and Order
was served on Lopez via certified mail at his last known
address. Dkt. No. 90. On July 8, 2015, the Court received an
executed return receipt of delivery. Dkt. 91. Lopez has not, to
date, filed any objections to the Report–Recommendation.

 *2 Accordingly, as no objections to the Report–
Recommendation have been filed and the time for filing
objections has expired, the Court reviews the Report–
Recommendation for clear error. See Glaspie v. N.Y.C. Dep't
of Corr., No. 10 CV 00188(GBD)(JCF), 2010 WL 4967844,
at *1, 2010 U.S. Dist. LEXIS 131629, at *2–3 (S.D.N.Y.
Nov. 30, 2010) (explaining that when no objections to report
and recommendation are made, "the Court may adopt [it]
if there is 'no clear error on the face of the record.' ")
(quoting Adee Motor Cars, LLC v. Amato, 388 F.Supp.2d
250, 253 (S.D.N.Y.2005)). Having reviewed the Report and

Recommendation in its entirety and having found no clear error, it is hereby:

**ORDERED** that the Report–Recommendation (Dkt. No. 83) is **ADOPTED in its entirety** for the reasons stated therein; and it is further

**ORDERED** that the defendants' motion for summary judgment (Dkt. No. 69) is **GRANTED;** and it is further

**ORDERED** that plaintiff's due process and state law claims are **DISMISSED with prejudice;** and it is further

**ORDERED** that plaintiff's remaining claims under 42 U.S.C. § 1983 relating to assault and retaliation are **DISMISSED without prejudice to refiling;** and it is further

**ORDERED** that the Clerk of the Court shall close this case; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Order as well as the Report–Recommendation (Dkt. No. 83) upon all parties in accordance with the local rules.

**IT IS SO ORDERED.**

### REPORT–RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge.

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N .Y. 72.3(c) by the Honorable Brenda K. Sannes, United States District Judge.

In this civil rights action, plaintiff claims that in May 2013, several correctional officers assaulted him during his confinement at the Marcy Correctional Facility ("Marcy") in retaliation for filing a grievance, and then issued several false disciplinary charges against plaintiff to cover up their actions. (Amended Compl ., Dkt. No. 32, ¶¶ 26–55). Plaintiff amended his complaint in November 2013 to further allege that the disciplinary hearing related to these charges violated his due process rights. (*Id.* ¶¶ 60–74). Plaintiff also raises several state law tort claims in connection with the alleged assault. (*Id.* ¶ 77, 80, 82).

Presently before the court is the defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56 (Dkt. No. 69). Plaintiff has opposed the motion. (Dkt. No. 73) [1]. Defendants did not submit a reply.

For the reasons set forth below, this court recommends that defendants' summary judgment motion be granted. Plaintiff's claims should be dismissed because no rational fact finder could conclude that he exhausted his administrative remedies as to the assault and retaliation claims as required before filing an action under 42 U.S.C. § 1983, or that plaintiff failed to receive all the process that he was due during his disciplinary hearing. Plaintiff's state law claims, raised pursuant to the court's supplemental jurisdiction, should also be dismissed.

### *DISCUSSION*

### I. Summary Judgment

 **\*3** Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord,* 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States*

*v. Diebold, Inc. .,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Salahuddin,* 467 F.3d at 272.

To be sufficient to create a "factual issue," in the context of a summary judgment motion, an allegation in an affidavit or verified complaint must not be conclusory or overly general. *Smith v. Woods,* 9:03–CV–480 (DNH/GHL), 2006 WL 1133247, at *3 & n. 10 (N.D.N .Y. Apr. 24, 2006). Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.' " *Id.,* 2006 WL 1133247, at *3 & n. 11 (quoting *Jeffreys v. City of New York,* 426 F.3d 549, 554–55 (2d Cir.2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' ... and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.")).

## II. Exhaustion of Administrative Remedies

  **\*4**  Plaintiff has alleged that he was the victim of two separate assaults by Marcy Correctional Officers on the morning of May 7, 2013. (Amended. Compl., Dkt No. 32, ¶¶ 31–38, 43). Plaintiff further alleges that the assaults were in retaliation for a prior grievance which he had submitted against one or more of the defendants, and that the defendants then issued him disciplinary tickets for failing to obey orders and possessing a weapon in order to cover up their actions [2]. (*Id.* ¶ 55). Based on the record discussed below, the court concludes that no reasonable fact finder could conclude that the plaintiff had completed the administrative grievance process for these claims prior to commencing this federal proceeding. Accordingly, this court recommends that plaintiff's First Amendment retaliation claims and Eighth Amendment cruel and unusual punishment claims be dismissed for failure to exhaust administrative remedies.

### A. Legal Standards

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord,* 380 F.3d 670, 675–76 (2d Cir.2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (exhaustion requirement applies, *inter alia,* to excessive force claims)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Testman,* 380 F.3d 691, 695 (2d Cir.2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint,* 660 F.Supp.2d 518, 523 (S.D.N.Y.2009) (citations omitted).

The Supreme Court held that, in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock,* 549 U.S. at 218–19 (citing *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). In *Woodford,* the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90–103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp.Codes R. & Regs. tit. 7, §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the superintendent of the relevant facility. *Id.* § 701.5(c). Adverse decisions at the superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

  **\*5**  At the same time that the Second Circuit decided *Giano,* it also decided four related cases, clarifying the

law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused. [3] Based on these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom,* 446 F.3d 305, 311–12 (2d Cir.2006) (citing *Hemphill,* 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.* Whether the *Hemphill* test survives following the Supreme Court's decision in *Woodford,* has been a matter of some discussion. [4] Although the Second Circuit has not explicitly held that *Hemphill* remains good law, it has applied the three-part inquiry in post-*Woodford* cases. *See, e.g., Messa v. Goord,* 652 F.3d 305, 309 (2d Cir.2011); *Davis v. State of New York,* 311 F. App'x 397, 399 (2d Cir.2009).

**B. Application**

Plaintiff filed a grievance on June 17, 2013, after being transferred to Downstate Correctional Facility ("Downstate"), alleging that on May 7, 2013, certain Marcy Correctional Officers verbally and physically abused him following a pat-down frisk while plaintiff was en route from the Marcy housing unit to the facility's infirmary. (Def. Statement of Material Facts, Dkt. No. 69–1, ¶ 4; Pl's Resp. to Def. Statement of Material Facts, Dkt. No. 73, 4). This grievance was acknowledged and forwarded for investigation by IGRC on June 19, 2013. (Dkt. No. 73–2, Pl's Ex. 3(B)). On September 17, 2013, the Downstate Superintendent denied plaintiff's grievance. (Hall Aff, Dkt. No. 69–3, Ex. 3; Dkt No. 73–2, Pl's Ex. 3(C)). On September 23, 2013, Plaintiff appealed this determination to the Central Office Review Committee. *Id.* On June 11, 2014, CORC issued its decision denying the grievance, the final step in the administrative process. (Dkt. No. 73–2, Pl's Ex. 3(D)).

While the administrative grievance process was ongoing, Plaintiff commenced this litigation on August 12, 2013, alleging essentially the same facts as his grievance. (Dkt. No. 1, Compl.). Plaintiff later submitted an Amended Complaint dated November 3, 2013 which restated the assault and retaliation claims and added a due process claim arising out of the related disciplinary hearing. (Dkt. No. 32, Amended Compl.)

In their motion for summary judgment, defendants argue that plaintiff failed to exhaust his administrative remedies relating to his assault and retaliation claims prior to commencing this federal litigation [5]. Plaintiff argues that his administrative remedies were exhausted upon filing his grievance on June 17, 2013, and that "[i]t is common knowledge that one not need to wait on the CORC decision in order to file a civil action against New York State Department of Corrections and Community Supervision (N.Y.SDOCCS) employees for committing such brutally physical body harm upon plaintiff." (Pl's Mem. of Law, Dkt. No. 73–1, at 7). Plaintiff also asserts that his administrative grievance was not resolved within a reasonable time, as it took three months to receive the Downstate Superintendent's determination, and another ten months before the CORC determination was issued. (*Id.* at 8).

**\*6** "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532. Plaintiff did not complete the state administrative grievance process for the assault and retaliation claims before commencing this litigation, and therefore failed to exhaust his administrative remedies in accordance with the PLRA. The only excuse offered by plaintiff, that the administrative grievance process took an unreasonably long time, is unavailing. (Pl's Mem. of Law, Dkt. No. 73–1, at 8). If the superintendent failed to timely respond to plaintiff's grievance, Plaintiff needed to appeal that failure to the CORC before commencing this litigation. "If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA." *Croswell v. McCoy,* 01–CV–0547, 2003 WL 962534, at *4 (N.D.N.Y. Mar.11, 2003) (Sharpe, M.J.). [6]

In applying the Second Circuit's three-party inquiry, plaintiff has offered no evidence to suggest that the grievance process was unavailable to him, that the defendants are estopped from asserting the defense of failure to exhaust, or that there are any other special circumstances under *Hemphill* and its progeny that would excuse plaintiff's failure to exhaust his administrative remedies.

In support of defendants' motion, Jeffrey Hale, the DOCCS Assistant Director of the Inmate Grievance Program ("IGP") and the custodian of records for CORC, which maintains files of grievance appeals by inmates, submitted a declaration based upon his review of those records. (Dkt. No. 69–2). Ass't

Dir. Hale certified that CORC records contained five separate grievances filed by plaintiff for the period between September 2012 and May 2014. (Hale Decl., Dkt. No. 69–2, ¶¶ 6–7, 10, and Ex. B.).

During his August 26, 2014 deposition, plaintiff acknowledged that he was familiar with the DOCCS grievance process and understood that CORC is the final administrative step for deciding an inmate grievance. (Hall Aff, Dkt No. 69–3, Ex. 1 at 18). While plaintiff asserts that he was discouraged from reporting the alleged assaults immediately afterwards by threats from one or more of the defendants, plaintiff not only filed a detailed administrative grievance, but also raised the assault and retaliation allegations during his disciplinary hearing. *See, e.g., Black v. Fischer,* No. 12 Civ. 2341, 2013 WL 1314940, at *8–9 (S.D.N.Y. Mar. 28, 2013) (the plaintiff's claim that he was deterred from pursuing grievances by threats from a defendant was overcome by the fact that plaintiff filed other grievances and complaints during the relevant time period).

It is true that under certain circumstances, an inmate may exhaust his administrative remedies by raising his claim during a related disciplinary proceeding. *Giano,* 380 F.3d at 678–79; *Johnson,* 380 F.3d at 697. However, such exhaustion is essentially limited to instances in which (1) the inmate reasonably believed that his "only available remedy" was to raise his claim as part of a tier disciplinary hearing, and (2) the inmate articulated and pursued his claim in the disciplinary proceeding in a manner that afforded prison officials the time and opportunity to thoroughly investigate that claim. *Murray,* No. 9:03–CV–1010 (GTS/GHL), 2010 WL 1235591, at *3 (collecting cases). Here, where plaintiff filed a grievance eleven days after the hearing, there is no indication that he reasonably believed that the disciplinary hearing was his only available remedy. In addition, the disciplinary hearing officer, defendant Cavaleri, informed plaintiff that his testimony regarding the assault was "not credible," and plaintiff declined to call any witnesses or question any witnesses. (Hall Aff., Dkt. No. 69–3, Ex. 4). No rational fact-finder could conclude that plaintiff had articulated or pursued his claim in a manner that afforded prison officials an opportunity to investigate his claim.

**\*7** During the pendency of this litigation, plaintiff received a decision by the CORC, dated June 11, 2014, upholding the Superintendent's denial of the grievance. (Dkt. No. 73–2, Pl's Ex. 3(C)). While it is true that this decision means that plaintiff has now exhausted his administrative remedies,

the Second Circuit has held that a plaintiff must exhaust his remedies *before* filing his federal action, and that the court must dismiss plaintiff's complaint notwithstanding his subsequent exhaustion. *Neal v. Goord,* 267 F.3d 116, 122–23 (2d Cir.2001).

Because plaintiff failed to exhaust his administrative remedies by failing to wait for the CORC's decision, this court is constrained to recommend dismissing this complaint without prejudice. Plaintiff may immediately re-file his action on the First and Eighth Amendment claims because he has now exhausted his remedies. As in *Neal,* plaintiff may find that requiring him to initiate a new law suit is "judicially inefficient." *Id.,* 267 F.3d at 123. However, the Second Circuit specifically rejected such an argument, finding that "if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court will have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset." *Id.*

## II. Due Process–Disciplinary Hearing

### A. Plaintiffs Request for Voluntary Dismissal

Plaintiff amended his complaint in November 2013 to add a due process cause of action alleging deficiencies in the disciplinary hearing arising out of the incidents at Marcy. (Dkt. No. 32). The Amended Complaint was filed after plaintiff's administrative appeal was denied, and therefore plaintiff has exhausted his administrative remedies as to the due process issue. *See Chavis v. Goord,* No. 9:00–CV–1418 (LEK/DEP), 2007 WL 2903950 (N.D.N.Y.2007) (citing *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). Defendants seek summary judgment on the merits of this claim, arguing that plaintiff was afforded all process that was due.

In response, plaintiff has requested that the court dismiss his due process claim, in order to focus on the alleged assault. However, since plaintiff's request for dismissal comes after the defendants have answered (Dkt. No. 37) and moved for summary judgment (Dkt. No. 69), and the parties have not stipulated to dismissal, plaintiff has no right to a voluntary dismissal. Fed.R.Civ.P. 41(a)(1). Instead, dismissal lies in the discretion of the court. *See* Fed.R.Civ.P. 41(a)(2) ("Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."); *see also Lebewohl v. Heart Attack Grill LLC,* 890 F.Supp.2d 278, 304 (S.D.N.Y.2012) ("A trial court

has great discretion in considering whether to grant a motion for voluntary dismissal under the rule.").

The circumstances of this case weigh heavily in favor of denying plaintiff's motion for voluntary dismissal and deciding defendants' motion for summary judgment on the due process claim. These claims have been pending since 2013, and the parties have engaged in discovery, including the deposition of plaintiff. (Hall Aff., Dkt. No. 69–3, Ex. 1). Defendants filed a summary judgment motion, fully supported by numerous affidavits and exhibits, to dismiss plaintiff's claims with prejudice, in October 2014. (Dkt. No. 69). Plaintiff, who requested permission in November 2013 specifically to add the due process claims, provides no justification for withdrawing these claims, other than stating that his "complaint is not about the Tier Hearing nor Due Process regarding the tier hearing, but the factual facts that the defendants physically assaulted plaintiff...." (Pl.'s Mem. of Law, Dkt. 73–1, at 3).

**\*8** At this stage of the proceedings, it would be unfair and unduly prejudicial to the defendants to allow plaintiff to withdraw his due process claim, particularly given the potential that plaintiff may re-file this litigation in order to raise the now administratively exhausted assault claims. *See, e.g., Murray v. Fischer,* No. 9:11–CV–225 (GLS/ATB), 2015 WL 457693, at \*2–3) (denying prisoner's motion to dismiss certain claims without prejudice and granting defendants' motion for summary judgment instead); *Emory v. New York,* No. 11–CV–1774, 2013 WL 1881009, at \*3 (E.D.N.Y. May 6, 2013) (denying plaintiffs' motion to dismiss action without prejudice where plaintiffs failed to proffer reasons why their "voluntary" dismissal came so late in the litigation, and only after the defendants marshaled strong arguments in favor of dismissal in substantive motions, both because it reflects plaintiffs' lack of diligence and because it may subject defendants to the burden of relitigating these same claims); *Krivchenko v. Clintondale Aviation, Inc.,* No. 1:13–CV–820 (TJM), 2014 WL 4684808, at \*4 (N.D.N.Y. Sept.18, 2014) (denying voluntary motion to dismiss action, filed without adequate explanation after defendant filed a motion for summary judgment motion, because it indicates an "an undue vexatiousness" and could potentially subject the defendants to the burden of unnecessary relitigation). The court will now address the merits of plaintiff's due process claims.

## B. Legal Standards
In order to begin a due process analysis, the court first determines whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges and then determines whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001); *Bedoya v. Coughlin,* 91 F.3d 349, 351 (2d Cir.1996). In *Sandin v. Conner,* the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ...., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483–84.

The Second Circuit has explicitly avoided a bright line rule that a certain period of confinement in a segregated housing unit automatically gives rise to due process protection. *See Sims v. Artuz,* 230 F.3d 14, 23 (2d Cir.2000); *Colon v. Howard,* 215 F.3d 227, 234 (2d Cir.2000). Instead, cases in this circuit have created guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed. *Palmer v. Richards,* 364 F.3d 60, 64–66 (2d Cir.2004). A confinement longer than an intermediate one, and under "normal SHU conditions" is "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin." Colon,* 215 F.3d at 231 (finding that a prisoner's liberty interest was infringed by 305–day confinement). Shorter confinements under normal SHU conditions may not implicate a prisoner's liberty interest.

**\*9** The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004) (citing, *inter alia, Wolff v. McDonnell,* 418 U.S. 539, 563–67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). The hearing officer's findings must be supported by "some reliable evidence." *Id.* (citing, *inter alia, Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)).

In certain cases, an inmate has a limited right to assistance with his disciplinary hearing. *Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993). An assistant has been held to be constitutionally necessary in cases in which a plaintiff is

confined in SHU, illiterate, or unable to grasp the complexity of the issues, and therefore, unable to marshal evidence and present a defense. *Id.* (citation omitted). In those cases, the assistant must do what the plaintiff would have done if he were able, but need not go beyond the inmate's instructions. *Id.*

## C. Application

Since the disciplinary hearing resulted in a one year sentence to the special housing unit ("SHU"), plaintiff is considered to have a liberty interest subject to due process protection. Plaintiff alleges that defendants issued him fabricated disciplinary tickets to cover up the alleged retaliatory assault, leading to procedural due process and privacy violations. It is well established that fabricated or false disciplinary charges do not violate an inmate's due process rights, so long as an inmate received a proper disciplinary hearing, with a determination based upon "some evidence." *See Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). Therefore, the analysis focuses on the disciplinary hearing itself, and this court recommends that defendants' motion for summary judgment be granted.

### 1. Adequacy of Assistance at the Hearing

Because he was transferred to the SHU after disciplinary charges relating to the threatening notes were filed against him, plaintiff was entitled to assistance in preparing for his hearing. *Ayers v. Ryan,* 152 F.3d 77, 81 (2d Cir.1998) (citing *Eng v. Coughlin,* 858 F.2d 889, 898 (2d Cir.1988)). Plaintiff alleges that he requested assistance, but that the employee assistant, who is not named as a defendant, refused to help plaintiff locate relevant documents and threatened physical violence. (Amended Compl., Dkt. No. 32, ¶ 68).

At the beginning of the disciplinary hearing, defendant Cavaleri inquired about the pre-hearing assistance, and asked whether plaintiff wanted to identify any witnesses or make any other requests before the hearing commenced. (Hall Aff., Dkt. No. 69–3, Ex. 4 at 4). At the close of the hearing, plaintiff was also given an opportunity to raise any issues on the record. (*Id.* at 36). Plaintiff declined to raise any issues before or after the hearing about the quality or conduct of his pre-hearing assistant. Plaintiff's bare allegations in the Amended Complaint, which do not identify the offending officer, are not sufficient to overcome defendants' motion for summary judgment. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case"). Moreover, even assuming for purposes of this motion that plaintiff's allegations are accurate, plaintiff waived any objection to inadequate assistance when he failed to raise the issue during the disciplinary hearing. *Jackson v. Johnson,* 30 F.Supp.2d 613, 619 (S.D.N.Y.1998) (plaintiff waived right to object to allegedly inadequate assistance when he did not raise the issue when questioned by hearing officer); *Hailey v. Provost,* No. 94–CV–1616 (RSP/DS), 1997 WF 627547 at *2 & n. 3 (N.D.N.Y., Oct. 9, 1997) (inmate waived right to effective employee assistance by specifically answering "no sir" after hearing officer asked if he needed any additional assistance).

### 2. Use of OMH Information

**\*10** Plaintiff alleges that defendant Cavaleri's consideration of testimony from State Office of Mental Health ("OMH") staff regarding plaintiff's psychiatric and medical history violated his due process right to privacy. (Amended Compl., Dkt. No. 32, 71). Defendant Cavaleri advised plaintiff during the hearing that such testimony was admitted and would be considered, but did not disclose the contents of that evidence. Following policy, the OMH testimony was heard without the plaintiff present. (Hall Aff., Dkt. No. 69–3, Ex. 4 at 36).

In the United States Constitution, there exists a right to privacy, protecting an individual's interest in avoiding the disclosure of personal matters. *Doe v. City of New York,* 15 F.3d 264, 267 (2d Cir.1994) (citing *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)). This right is protected by the Due Process Clause. *O'Connor v. Pierson,* 426 F.3d 187, 201 (2d Cir.2005) (citing *Whalen,* 429 U.S. at 598–600). The right to privacy has also been "characterized as a right to 'confidentiality,' which 'includes the right to protection regarding information about the state of one's health.' " *Matson v. Bd. of Ed. of City School Dist. of New York,* 631 F.3d 57, 64 (2d Cir.2011) (quoting inter alia *Doe,* 15 F.3d at 267).

With respect to the "disclosure" of medical information, an inmate's privacy right varies with the inmate's condition, with a greater interest in preventing the disclosure of highly sensitive conditions. *Id.* (citations omitted). Prison officials may impinge upon the inmate's privacy right only to the extent that their actions are "reasonably related to legitimate penological interests." *Powell v. Schriver,* 175 F.3d 107, 112 (2d Cir.1999).

The Second Circuit has concluded that the OMH policy of offering such testimony outside the patient's presence during a prison disciplinary proceeding is constitutionally valid and does not violate any due process right. *See Powell v. Coughlin,* 953 F.2d 744, 749 (2d Cir.1991). As the disclosure of unfavorable mental health evaluations in an inmate's presence will likely impair the inmate-clinician relationship, and the disclosure of favorable evaluations may encourage inmates to "act out" in order to obtain such findings, the policy of hearing mental health testimony outside the inmate's presence, followed in this case, is reasonably related to legitimate penological interests and is an appropriate measure. *Id.*

### 3. "Some" Evidence Standard

Plaintiff alleges that defendant Cavaleri was biased, that plaintiff's guilt was not based upon reliable evidence, and that Cavaleri failed to consider plaintiff's testimony, particularly about injuries following the alleged assault. (Amended Compl., Dkt. No. 32, 74). Defendants argue that the disciplinary hearing transcript shows that defendant Cavaleri explained plaintiff his rights, read him the charges and took his not guilty plea. (Def. Mem. of Law at 10–12). Plaintiff was allowed to offer testimony, and given the opportunity to call and question witnesses. (Hall Aff., Dkt. No. 69–3, Ex. 4 at 8–22). Plaintiff declined to propose questions for any witness. (*Id.*). When the witness testimony was concluded, plaintiff was given an opportunity to rebut their statements. (*Id.* at 26–30). After plaintiff raised the issue of injuries suffered in the alleged assault, defendant Cavaleri reviewed plaintiff's medical records with the assistance of a physician's assistant. (*Id.* at 35). When issuing his disposition, defendant Cavaleri noted the consistent testimony of seven witnesses, and the lack of any evidence that would support plaintiff's testimony (*Id.* at 39).

**\*11** As the hearing officer, Defendant Cavaleri was authorized to make credibility determinations. *See Lewis v. Johnson,* No. 9:08–CV–482 (TJM/ATB), 2010 WL 3785771, at \*11 n. 25 (N.D.N.Y. Aug.5, 2010) ("the Second Circuit has required that a hearing examiner make an independent assessment of the credibility of certain sources of evidence at a prison disciplinary hearing"), *Rep't. Rec. adopted,* 2010 WL 3762016, at \*1 (N.D.N.Y. Sept.20, 2010). It is well settled, however, "that prison disciplinary officers are not held to the same standard of neutrality as adjudicators in other contexts." *Alien v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996). "The degree of impartiality required of prison officials does not rise to the level of that required of judges generally." *Id.*

An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact. *Francis v. Coughlin,* 891 F.2d 43, 47 (2d Cir.1989); *Clyde v. Schoellkopf,* 714 F.Supp.2d 432, 437–38 (W.D.N.Y.2010).

The constitutional standard for sufficiency of evidence in a prison disciplinary hearing is whether there is "some" or "a modicum" of evidence to support the hearing officer's determination. *Sira v. Morton,* 380 F.3d 57, 76 (2d Cir.2004) (citing *Superintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)). In this case, there was sufficient evidence supporting the hearing officer's determination. Defendant Cavaleri specifically noted the consistent testimony of seven witnesses, and the lack of evidence to support plaintiff's testimony, which was deemed not credible.

The record evidence supports the conclusion that plaintiff's due process rights were satisfied in his disciplinary hearing. Accordingly, this court recommends that defendants' motion for summary judgment as to plaintiff's due process claims against defendant Cavaleri be granted. Because his only involvement in plaintiff's claims was to affirm the results of a disciplinary hearing that this court has found comported with due process, summary judgment should also be granted with respect to defendant Prack [7].

### III. State Law Claims

Plaintiff asserts a number of tort claims including assault and battery, invasion of privacy, sexual harassment, infliction of mental, emotional and physical distress and negligence in connection with the incidents at Marcy, all arising out of New York State statutory and common law. (Am. Compl., Dkt No. 32, 77, 79, 80, 82). Defendants have moved for summary judgment dismissing these claims, arguing that pursuit of such tort claims in this action is statutorily precluded pursuant to New York Corrections Law § 24. (Def. Mem. of Law, Dkt. No. 69–4, at 12–13). Plaintiff counters that the United States Supreme Court ruled Corrections Law § 24 unconstitutional, and that, in any case, state law immunity does not extend to excessive force claims, which fall outside the ordinary scope of a correctional officer's employment duties. (Pl.'s Mem. of Law, Dkt. No. 73–1, at 9–12).

**\*12** New York Corrections Law § 24 precludes "the assertion of claims against corrections officers in any court, including the federal courts," by designating the New York State Court of Claims as the only available venue to bring

a claim for damages arising out of the acts committed by corrections officers within the scope of their employment." *Baker v. Coughlin,* 77 F.3d 12, 15 (2d Cir.1996).

In *Haywood v. Drown,* 556 U.S. 729, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009), cited by plaintiff in his response (Pl's Mem. of Law, Dkt. No. 73–1, at 11), the Supreme Court held that New York Corrections Law § 24 was unconstitutional to the extent that it precludes inmates from pursuing § 1983 actions in state or federal court. However, plaintiff overstates the scope of *Haywood* as it pertains to this litigation.

Although the *Haywood* decision found New York Corrections Law § 24 to be in violation of the Supremacy Clause, it did so only with respect to claims brought under federal law, such as § 1983. In applying supplemental jurisdiction, federal courts are bound to apply state substantive law to claims brought pursuant to state statute or common law. *Baker,* 77 F.3d at 15. The courts of this district have unanimously held that the *Haywood* decision does not affect the question of the district court's jurisdiction to hear pendent state law claims against DOCCS officials. *See, e.g., Rucano v. Koenigsmann,* No. 9:12–CV–35 (MAD/ RFT), 2014 WL 1292281, *16 (N.D.N.Y., Mar.31, 2014); *Rounds v. Thompson,* No. 9:12–CV–953, 2013 WL 3187074 at *4 (N.D.N.Y.2013) (collecting cases). If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court must not allow that claim to be appended to a federal law claim in federal court. *Baker,* 77 F.3d at 15.

Plaintiff alleges that he was assaulted during a pat-down by correctional officers as he traversed a prison walkway, and then again while being transported and questioned about the incident. (Amended Compl. Dkt No. 32, ¶ 24–43). Transporting an inmate and subduing that individual, should a disciplinary issue arise, is 'common conduct by a DOCCS officer or sergeant.' " *Crosby v. Russell,* No. 9:10–CV–595, 2014 WL 3809129, *5 (N.D.N.Y.2014) (quoting *Johnson v. N.Y. State Dep't of Corr. Servs. & Cmty. Supervision,* No. 11–CV–0079, 2013 WL 5347468, at *3 (W.D.N.Y. Sept. 23, 2013)). Ultimately, "an employee will be considered within the scope of his employment so long as he is discharging his duties, 'no matter how irregularly, or with what disregard of

instructions.' " *Id.,* 2014 WL 3809129, *6 (quoting *Cepeda v. Coughlin,* 128 A.D.2d 995, 996, 513 N.Y.S.2d 528 (3d Dep't 1987)). Therefore, based upon the allegations in the amended complaint, this court recommends that defendants' motion for summary judgment as to plaintiff's state law claims be granted, without leave to amend.

Even if New York Corrections Law § 24 did not apply, this court would still recommend dismissal of plaintiff's state law claims in light of the recommendations of dismissal of all federal causes of action in plaintiff's amended complaint. *See* 28 U.S.C. § 1367(c)(3) (the district court may decline to exercise supplemental jurisdiction over a claim if all other claims over which the court has original jurisdiction have been dismissed); *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 172, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); *Pitchell v. Callan,* 13 F.3d 545, 549 (2d Cir.1994).

**\*13 WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion for summary judgment (Dkt. No. 69) be **GRANTED,** and that plaintiff's First Amendment and Eighth Amendment Claims be **DISMISSED WITHOUT PREJUDICE TO REFILING,** and that plaintiff's due process and state law claims be **DISMISSED WITH PREJUDICE.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

Filed May 20, 2015

**All Citations**

Slip Copy, 2015 WL 4394604

---

Footnotes

1    Plaintiff requested oral argument on defendant's motion. That request is denied, and this court will make its report and recommendation based upon the parties' papers and the record.

2    Defendants assert that plaintiff has failed to state a claim in connection with the misbehavior reports, since plaintiff's allegations of retaliation are conclusory and defendant was found guilty based upon the evidence at his disciplinary

hearing. (Def. Mem. of Law, Dkt. No. 69–4, at 8–10). In his response, plaintiff has requested that the court dismiss the claim for retaliatory misbehavior reports in order to focus on the assault claim. (Pl.'s Mem of Law, Dkt. No. 73–1, at 9). Because I am recommending that defendants be granted summary judgment on the retaliation claim due to plaintiff's failure to exhaust administrative remedies, I do not need to address whether summary judgment should be granted on the merits on this claim.

3    *See Hemphill v. State of New York,* 380 F.3d 680 (2d Cir.2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman,* 380 F.3d 691 (2d Cir.2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride,* 380 F.3d 649 (2d Cir.2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

4    See, e.g., *Newman v. Duncan,* 04–CV–395 (TJM/DRH), 2007 WL 2847304, at * 2 n. 4 (N.D.N.Y. Sept. 26, 2007); *Shariff v. Coombe,* 655 F.Supp.2d 274, 285–86 n. 7 (S.D.N.Y.2009).

5    Defendants had previously raised the failure to exhaust administrative remedies as an affirmative defense in their answer to the Amended Complaint. (Dkt. No. 37, Def.Answer, 12).

6    The New York regulations specifically state that if a grievance is not decided within the time limits provided, the inmate may appeal to the next step. 7 N.Y.C.R.R. § 701.6(g)(ii)(2). In *Pacheco v. Drown,* 9:06–CV–20, 2010 WL 144400, at *19 & n. 21 (N.D.N.Y. Jan.11, 2010), U.S. District Judge Glenn Suddaby held that the failure by the IGRC or the Superintendent to timely respond to a grievance or first level appeal may be appealed to the next level, including the CORC, in order to properly complete the grievance process. *Accord, Murray v. Palmer,* 9:03–CV–1010 (GTS/GHL), 2010 WL 1235591, *2 & nn. 4, 6 (N.D.N.Y. March 31, 2010).

7    The court notes that if plaintiff had stated a valid due process claim, the fact that defendant Prack affirmed the disciplinary finding could constitute sufficient personal involvement. *See Thomas v. Calero,* No. 09–CV–5209, at *11–18 (S .D.N.Y. Mar. 17, 2011) (Rep't.-Rec.) (lengthy discussion of personal involvement as it relates to the affirmance of a disciplinary hearing and determination that such a claim would survive a motion to dismiss); *Rodriguez v. Selsky,* No. 9:07–CV–432, 2011 WL 1086001, at *4–7 (N.D.N.Y. Jan.25, 2011) (Rep't–Rec.), *adopted,* 2011 WL 830639 (N.D.N.Y., Mar.3, 2011).

---

    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext' © 2015 Thomson Reuters. No claim to original U.S. Government Works.    10

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))



Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.
Troy GARRETT, Plaintiff,
v.
Edward REYNOLDS, Superintendent, Mohawk Corr.
Facility; James A. Mance, Deputy Superintendent of
Programs; John O'Reilly,[FN1] Deputy Superintendent; J.
Burge, First Deputy; M. Maher, DSS; R. Centore,
Correctional Officer, Defendants.

> FN1. In this case, the defendants maintain and
> the docket confirms that defendant John O'Reilly
> has never been served. Service must be made
> upon a defendant within 120 days of filing the
> complaint or any claims against that defendant
> will be dismissed. See Fed.R.Civ.P. 4(m). The
> original complaint, which named O'Reilly, was
> filed on November 26, 1999, and the amended
> complaint was filed on July 13, 2001. However,
> O'Reilly was never served. Since this defendant
> has never been served, this court lacks
> jurisdiction over him, and this court recommends
> the dismissal of this defendant.

No. Civ.9:99CV2065NAMGLS.

Oct. 7, 2003.

Troy Garrett, Peekskill, NY, Plaintiff, pro se.

Hon. Eliot Spitzer, Attorney General State of New York,
Syracuse, NY, for the Defendants.

Maria Moran, Asst. Attorney General, of counsel.

*REPORT-RECOMMENDATION*

SHARPE, Magistrate J.

I. *Introduction* [FN2]

> FN2. This matter was referred to the undersigned
> for a Report-Recommendation by the Hon.

Norman A. Mordue, United States District
Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and
Local Rule 72.3(c).

**\*1** Plaintiff, *pro se* Troy Garrett filed an action under
42 U.S.C. § 1983 claiming that the defendants violated his
civil rights when they retaliated against him for his
activities as an IGRC representative by subjecting him to
verbal harassment, physical abuse and subsequently, a
transfer. Garrett also claims that the supervisory
defendants failed to properly investigate his complaints
and failed to train/supervise their employees. This court
recommends denying the motion for summary judgment in
part and granting it in part.

II. *Procedural History*

On July 13, 2001, Garrett filed an amended complaint
against the defendants claiming that they violated his civil
rights under the First, Sixth Eighth, and Fourteenth
Amendments.[FN3] On September 28, 2001, the defendants
filed a motion for summary judgment. On January 18,
2002, this court issued an order informing Garrett of his
obligation to file a response and extended his time to
respond for thirty days. On April 24, 2002, this court
granted an additional sixty days to respond to the
defendants' motion. Despite having been given multiple
opportunities to respond, Garrett has failed to file a
response.

> FN3. Although Garrett claims to be raising
> violations under the Sixth, Eighth, and
> Fourteenth Amendments, the only viable claim
> based on this court's interpretation of the
> complaint is under the First Amendment for
> retaliation.

III. *Facts* [FN4]

> FN4. The facts are taken from the defendants'
> statement of undisputed material facts since
> Garrett failed to file a response.

On June 17, 1999, Garrett filed a grievance against

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Officer Kelley for verbal harassment.[FN5] This grievance was denied by the Central Office Review Committee (CORC) on July 21, 1999. On March 19, 2000, Garrett filed a grievance claiming that defendant Burge used intimidation tactics. Defendant Reynolds investigated the grievance and it was denied based on a finding that no harassment occurred. Garrett appealed to the CORC and they denied the grievance on April 5, 2000. On April 10, 2000, defendant Centore wrote a misbehavior report against Garrett for creating a disturbance and employee harassment. On April 12, 2000, Lieutenant Manell presided over Garrett's Tier 2 disciplinary hearing and he was found guilty of both charges. He was given a 21 day recreation penalty, and loss of packages and commissary. However, his recreation penalty was suspended and deferred. Garrett appealed the determination and it was affirmed on April 19, 2000.

FN5. Not a party in this suit.

On April 17, 2000, Garrett filed a grievance against Centore for harassment. Burge denied his grievance on May 4, 2000, and subsequently, the CORC denied it. On May 12, 2000, Garrett sent a letter to Burge concerning further harassment by Centore. On May 16, 2000, Garrett filed another grievance against Centore for harassment. His grievance was denied on May 26, 2000. After Garrett appealed, his grievance was again denied by the CORC. On June 22, 2000, the Superintendent's Office received a letter from Garrett alleging that Centore threw a piece of paper with a picture of a plunger and the words "always gets the job done" into his cell. He wrote a grievance against Centore for harassment due to the paper that he threw into his cell. Burge forwarded the grievance to the CORC on August 10, 2000. The CORC accepted the grievance on August 30, 2000, in order to investigate.

*2 On June 23, 2000, the Inspector General's Office interviewed Garrett at the Mohawk Correctional Facility regarding his complaints of Centore. That same day, Captain Naughton filed an administrative segregation recommendation. On June 29, 2000, an administrative segregation hearing was held. On July 14, 2000, Garrett was transferred [FN6] to the Mid-State Correctional Facility.

FN6. The defendants suggest that Garrett has

failed to exhaust his administrative remedies concerning his transfer. They claim that he agreed to the transfer and participated in the administrative hearing which resulted in his transfer. The issue of transfer will not be addressed in this Report-Recommendation because the court has insufficient information to determine whether he exhausted his remedies.

Finally, Garrett filed a claim alleging that his property was lost or damaged on October 8, 1999. However, he was paid $75.00 for this claim and he signed a release on December 13, 1999.

IV. *Discussion*

A. *Legal Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999). "When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the ... pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e) ], must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir.2000). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexford Holdings, Inc. v. Biderman,* 21 F.3d 522, 525 (2d Cir.1994)(alternation in original) (citation omitted). However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999).

Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U .S. 519, 520 (1972); *see Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)(a court is to read a *pro se* party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990); *see LaFond v. General Physics Serv. Corp.,* 50 F.3d 165, 171 (2d Cir.1995).

**\*3** This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond,* 00 CIV. 3725, 2001 WL 527484, at \*2 (S.D.N.Y. May 16, 2001). More specifically, Local Rule 7.1(a)(3) of this court specifically provides that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Local Rule 7.1(a)(3) further requires that the "non-movant shall file a Statement of Material Fact which mirrors the movant's statement in matching numbered paragraphs and which set forth a specific reference to the record where the material fact is alleged to arise." The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot,* 00-CV-1178, 2002 WL 368534, at \*2 (N.D.N.Y. March 1, 2002)(interalia citing *Bundy Am. Corp. v. K-Z Rental Leasing, Inc.,* 00-CV-260, 2001 WL 237218, at \*1 (N.D.N.Y. March 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty America v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002). As long as the local rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. *Id.* at 470-71.

In this case, Garrett did not file a response to the motion for summary judgment. Consequently, this court will accept the properly supported facts contained in the defendants' 7.1 Statement (*Dkt. No. 49* ) as true for purposes of this motion.[FN7] With this standard in mind, the court now turns to the sufficiency of Garrett's claims.

> FN7. The court notes that this does not apply to the various conclusions of law contained in the defendants' 7.1 Statement.

B. *Eleventh Amendment*

In Garrett's complaint, he raises claims against the defendants in their official and individual capacities. The Eleventh Amendment provides that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Although the Amendment does not specifically prohibit suits against a state by its own citizens, the Supreme Court has consistently applied that immunity to such cases. *See Burnette v. Carothers,* 192 F.3d 52, 57 (2d Cir.1999)(citing *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974)). Moreover, it is well established that Eleventh Amendment immunity applies not only when a state is a named defendant, but when liability must be paid from state coffers. *See New York City Health & Hosp. Corp. v. Perales,* 50 F.3d 129, 134 (2d Cir.1995)(citing *Edelman,* 415 U .S. at 665); *Dawkins v. State of New York,* 93-CV-1298, 1996 WL 156764, at \*2 (N.D.N.Y. Mar. 28, 1996).

**\*4** In this case, Garrett raises claims against the defendants in their official and individual capacities. Since the Eleventh Amendment bars official capacity claims against these state officers, this court recommends dismissal of Garrett's claims against the defendants in their official capacity.

C. *Retaliation*

In this case, Garrett claims that during the course of his appointment as an IGRC representative, he has been subjected to repeated acts of harassment, both verbal and

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

physical, threatened with physical assaults, placed into disciplinary confinement in the SHU, and transferred.[FN8] The Second Circuit has held that retaliation against a prisoner for pursuing a grievance is actionable under § 1983. *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996). Moreover, the Second Circuit has recognized both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated. Thus, prisoners' claims of retaliation are examined with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10 (2d Cir.1983).

> FN8. This case turns on the interpretation of the complaint. Garret's complaint is not a model of clarity and as noted, he has failed to file a response to the motion for summary judgment. Nonetheless, a careful reading of Garrett's opening paragraph under the title "Facts" compels this court to interpret this complaint as one claiming retaliation for his activities and status as an IGRC representative.

In order for a plaintiff to prevail on a First Amendment retaliation claim, a plaintiff must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and, (3) that there was a causal connection between the protected speech and the adverse action. *See Dawes v. Walker,*[FN9] 239 F.3d 489, 492 (2d Cir.2001) (citation omitted) *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002). If Garrett makes these showings, DOCS may evade liability if it demonstrates that it would have disciplined or transferred him " 'even in the absence of the protected conduct." ' *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted).

> FN9. Dawes' complaint was dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

An inmate has a constitutional right to be protected from retaliation based upon his activities as an IGRC representative. *Alnutt v. Cleary,* 913 F.Supp. 160, 170 (W.D.N.Y.1996). However, a claim brought under "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley,* 261 F.Supp.2d 113, 129

(N.D.N.Y.2003)(citing *Alnutt,* 913 F.Supp at 165-66)). Ordinarily, a claim for verbal harassment is not actionable under 42 U.S.C. § 1983. *Aziz Zarif Shabazz v. Picco,* 994 F.Supp. 460, 474 (S.D.N.Y.1998). Moreover, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Aziz Zarif Shabazz,* 994 F.Supp. at 474.

In this case, Garrett claims that defendant Centore harassed him for his activities as an IGRC representative. Garrett also claims that he was removed as an IGRC representative when he was transferred. In addition, Garrett claims that defendants Reynolds, Mance, Burger and Maher failed to properly investigate his allegations against Centore. Garrett claims that these defendants failed to properly investigate his claims in retaliation for his activities as an IGRC representative.

**\*5** More specifically, Garrett claims that Reynolds and Mance recalled IGRC passes for one day in order to interfere with an investigation inquiry into a correctional officer's conduct involving inmates who were left in the yard during inclement weather. Finally, Garrett claims that his property was destroyed while he was in the SHU.[FN10] Garrett filed grievances against Centore in April, May, and June of 2000. One of his complaints involved Centore throwing a folded piece of paper into his cell which had a picture of a plunger with the words "always gets the job done" on it. On June 23, 2000, he was placed in administrative segregation in the SHU. Three weeks later he was transferred.[FN11]

> FN10. However, the defendants provide the court with documents which show that he was paid $75.00 in settlement of this claim.

> FN11. The defendants maintain that Garrett failed to exhaust this claim. At this juncture, it is unclear whether or not he exhausted this claim. As such, this court cannot, as a matter of law, recommend dismissal because the court has insufficient information to determine this issue.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Viewing the facts in the light most favorable to Garrett, the non-moving party, this court cannot, as a matter of law, find that Garrett fails to state a claim for which relief can be granted. He claims that he was retaliated against for his activities as an IGRC representative. As noted, verbal harassment alone will not constitute a violation of a prisoner's constitutional rights but in this case, it appears that he was transferred for his activities as an IGRC representative. The defendants rely on numerous grievances which were denied by the CORC to show that their actions were proper. They also claim that Garrett has failed to show injury, however, at this juncture of the litigation with virtually no discovery in this case, this court cannot recommend dismissal as a matter of law.

D. *Personal Involvement*

It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)(*citation omitted* ). Since there is no respondeat superior liability, the defendant must be shown to have personal involvement in the alleged violation of rights. *Al- Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). Supervisory officials cannot be held liable under § 1983 solely for the acts of their subordinates. *See Monell v. Department of Social Serv.,* 436 U.S. 658, 690-695 (2d Cir.1978). However, a supervisory official can be held liable for constitutional violations if he or she: (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)).

Garrett contends that defendants Reynolds and Mance allowed staff members under their supervision to violate his rights. More specifically, Mance refused to properly investigate Garrett's complaints. Garrett also claims that defendant Burge refused to grant his request for redress against defendant Centore. Finally, Garrett claims that the defendants collectively failed to properly train and supervise their employees.

**\*6** The defendants contend that the claims against the supervisory defendants should be dismissed for lack of personal involvement. However, this court finds this contention without merit since it appears that all of the defendants were involved in the investigation process of Garrett's complaint and he accuses all of them of continuing the alleged constitutional violation by failing to properly investigate the grievances he filed. Accordingly, this court recommends denying the defendants' motion for summary judgment based on the lack of personal involvement.

WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED, that Garrett's claims against the defendants in their official capacity under the Eleventh Amendment should be dismissed since these claims are barred; and it is further

RECOMMENDED, that defendant O'Reilly be dismissed since he was never served; and it is further

RECOMMENDED, that the defendants' motion for summary judgment be denied in all other respects; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties by regular mail.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2003.

Garrett v. Reynolds
Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

▷

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
George LUNNEY, Plaintiff,
v.
Lieutenant BRURETON, et al., Defendants.
**No. 04 Civ. 2438(LAK)(GWG).**

May 29, 2007.

George Lunney, Elmira, NY, pro se.

Benjamin Lee, Assistant Attorney General, New York, NY, for
Defendants.

### *REPORT AND RECOMMENDATION*

GABRIEL W. GORENSTEIN, United States Magistrate
Judge.

*TABLE OF CONTENTS*

| | | | |
|---|---|---|---|
| I. | *BACKGROUND* .................... | | 2 |
| | A. | *Facts* ..................... | 2 |
| | B. | *Procedural History* ............... | 5 |
| II. | *APPLICABLE LAW* ............... | | 8 |
| | A. | *Standard of Review on Summary Judgment Motions* ................ | 8 |
| | B. | *Exhaustion* ................ | 10 |
| | | 1. | *PLRA* ............... | 10 |
| | | 2. | New York's Inmate Grievance Program% i .......... | 11 |

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

| III. | | *DISCUSSION* .................. | 12 |
| | A. | *Eighth Amendment Claim Relating to Food in the SHU* ............... | 12 |
| | B. | *Eighth Amendment Claim of Excessive Force* ........ | 16 |
| | | 1. | *Exhaustion* .................. | 16 |
| | | 2. | *Merits* .................... | 21 |
| | C. | *Eighth Amendment Claims Based on Lack of Laundry Services and Personal Hygiene Items* ..................... | 26 |
| | | 1. | *Laundry Services* ............... | 2 7 |
| | | 2. | *Plumbing Problems and Failure to Provide Personal Hygiene Items* ..... | 28 |
| | | 3. | *Personal Involvement* .................. | 30 |
| | D. | *First Amendment Retaliation Claims* .............. | 30 |
| | | 1. | *Law Governing First Amendment Retaliation* ............ | 31 |
| | | 2. | *Claims against Fischer* ............... | 32 |
| | | 3. | *Claims against Blot* ............... | 34 |
| | | | a. | Exhaustion of Claims Against Blot% i .......... | 34 |
| | | | b. | *The Merits of Lunney's Allegation that Blot Denied Him Showers, Meals, and Recreation* ........... | 37 |
| | | | | i. | Adverse Action. | 38 |
| | | | | ii. | Causal Connection. | 40 |
| | | | c. | *The Merits of Lunney's Allegation that Blot Filed a False Misbehavior Report* ............... | 41 |
| | | | d. | *The Merits of Lunney's Allegation that Blot Threatened Physical Violence* .............. | 43 |
| | | | e. | *The Merits of Lunney's Allegation of Retaliatory Assault* ..... | 45 |
| | | 4. | *First Amendment Claim Against Frazier* .......... | 47 |
| | | 5. | *First Amendment Claim Against Brereton* ........ | 47 |
| | E. | *Unfiled Grievances* ............... | 4 8 |
| | F. | *Fourteenth Amendment Due Process Claims* .......... | 50 |
| | | 1. | *Law Governing Disciplinary Proceedings* .......... | 50 |
| | | 2. | *Written Disposition of Disciplinary Hearing* .......... | 51 |
| Conclusion ......................... | | | 55 |

**\*1** George Lunney, currently an inmate at the Elmira Correctional Facility, has brought this suit *pro se* under 42 U.S.C. § 1983 against employees of the Sing Sing Correctional Facility ("Sing Sing"), where Lunney was previously housed. Lunney alleges that certain defendants violated his due process rights by improperly conducting a disciplinary hearing that resulted in his confinement in the Special Housing Unit ("SHU") of Sing Sing. He further alleges that various defendants were deliberately indifferent to inhumane conditions of confinement in the SHU in violation of his Eighth Amendment rights, that he was the victim of an assault, and that he was retaliated against for filing grievances with respect to conditions in the SHU in violation of his rights under the First Amendment.

Defendants now move for summary judgment. As described below, the defendants' motion should be granted, with the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

exception of the portion of their motion concerning Lunney's claim of (1) excessive force against Correction Officers Blot and Frazier and (2) his First Amendment retaliation claims (a) against defendant Officer Blot based on the allegedly retaliatory assault, threats, and deprivation of recreation and showers and (b) against Officer Frazier for his participation in the retaliatory assault.

I. *BACKGROUND*

The facts described below and later in this Report are drawn largely from Lunney's affidavit. *See* Plaintiff's Affidavit, filed June 13, 2006 (Docket # 88) ("Lunney Aff."). In many places, Lunney's affidavit cites to allegations contained in his amended complaint. *See* Amended Complaint, filed Mar. 24, 2005 (Docket # 34) ("Am.Compl."). That is, the affidavit cites the allegations of the amended complaint without repeating the substance of the incorporated matters under oath or penalty of perjury. Because defendants have not objected to this approach, we proceed as if any such incorporated matters in the Amended Complaint were admissible under Fed.R.Civ.P. 56(e).

A. *Facts*

On May 21, 2002, Lunney returned to his cell following a "medical shower" to find Correction Officer Hadzovic leaving the cell. *See* Lunney Aff. ¶ 1 (incorporating Am. Compl. at 3 ¶ 1). Hadzovic informed Lunney that he had just searched his cell. *Id.* After conducting a pat frisk on Lunney, Hadzovic reentered the cell and came out with a box of spaghetti. *Id.* Hadzovic announced that he would confiscate the box, which appeared to be altered, and locked Lunney in his cell. *Id.*

Approximately 45 minutes after Hadzovic left, Correction Sergeant Guadagno came to Lunney's cell with two other correction officers. *Id.* (incorporating Am. Compl. ¶ 2). Guadagno informed Lunney that a "shank type weapon" was discovered in the confiscated spaghetti box. *Id.* Lunney asserted that the weapon was not his and that he had merely purchased the spaghetti from the commissary. *Id.* Nonetheless, he was escorted to the SHU to await disciplinary action. *Id.*

**\*2** Lunney received a "Tier III" misbehavior report on May 22,

2002. *Id.* (incorporating Am. Compl. ¶ 3); Inmate Misbehavior Report (reproduced as Ex. A to Notice of Motion to Dismiss, filed June 10, 2004 (Docket # 15) ("Motion to Dismiss")). Following a disciplinary hearing on June 13, 2002, Lunney was found guilty of possession of a weapon and sentenced to nine months' confinement in the SHU. Lunney Aff. ¶ 2 (incorporating Am. Compl. ¶ 4). Lunney filed an administrative appeal with Donald Selsky, the Director of Special Housing/Inmate Disciplinary Program for the New York State Department of Correctional Services, who affirmed the disposition on August 22, 2002. Lunney Aff. ¶ 2; Am. Compl. at 2.

Lunney then filed a petition pursuant to Article 78 of the New York Civil Practice Law and Rules in the New York State Supreme Court, Albany County. Lunney Aff. ¶ 2. On September 16, 2002, Justice Thomas J. McNamara issued an order to show cause directing Selsky to respond to the petition. *Id.* ¶ 4. On October 3, 2002, Selsky rescinded the disciplinary determination and ordered a rehearing on the ground that Lunney had not been given adequate assistance in preparing his defense. *Id.* ¶ 5. Lunney subsequently withdrew his Article 78 petition. *Id.* ¶ 9.

The rehearing commenced on October 15, 2002. *Id.* ¶ 11; Disciplinary Hearing Transcript (reproduced as Ex. B to Motion to Dismiss) ("Transcript"). During the hearing, a dispute arose between the hearing officer, Lieutenant Brereton, FN1 and Lunney. Lunney Aff. ¶ 11 (incorporating Am. Compl. ¶ 7); Transcript at 29-37. Lunney requested permission to leave the hearing, Brereton granted him permission to do so, and Lunney was escorted out. Lunney Aff. ¶ 11 (incorporating Am. Compl. ¶ 7); Transcript at 34-37. Lunney was again found guilty of possessing a weapon and sentenced to nine months in the SHU with a corresponding loss of all privileges. Lunney Aff. ¶ 11 (incorporating Am. Compl. ¶ 7); Transcript at 59.

FN1. This officer is identified as Lieutenant "Brereton" in the complaint.

Lunney subsequently filed a request for discretionary review with Brian Fischer, at that time the Superintendent of Sing Sing. Lunney Aff. ¶ 13; Am. Compl. at 2. The disciplinary disposition was affirmed by First Deputy Superintendent Paul Kikendall. Lunney Aff. ¶ 13; Am. Compl. at 2. In an appeal to the Commissioner of the New York State Department of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

Correctional Services, Lunney argued that he had not been provided with a copy of the hearing disposition and that Selsky had no authority to order a new disciplinary hearing once the action in state court had been filed. Lunney Aff. ¶ 14 (incorporating Am. Compl. ¶ 10). The Acting Director of Special Housing rejected the appeal on November 7, 2002, although he reduced Lunney's sentence from nine to six months in the SHU. *Id.;* Review of Superintendent's Hearing (reproduced as Ex. D to Motion to Dismiss) ("Hearing Review").

Lunney filed a second Article 78 petition on November 19, 2002, with respect to the rehearing. *See* Article 78 Petition (reproduced as Ex. E to Motion to Dismiss); Lunney Aff. ¶ 15. On August 13, 2003, Justice Edward Sheridan of the Albany County Supreme Court dismissed the misbehavior report and ordered the Department of Correctional Services ("DOCS") to expunge all references to the incident from Lunney's institutional record. *See* Decision, Order and Judgment, dated Aug. 13, 2003 (reproduced as Ex. D to Combined Affirmation and Memorandum of Law in Opposition to Defendants' Motion for Dismissal, filed July 6, 2004 (Docket # 18) ("Pl. Opp. to Mot. to Dismiss")). Justice Sheridan concluded that the failure to provide Lunney with a copy of the hearing disposition was a violation of due process and that Selsky had no authority to order the rehearing once Lunney filed an Article 78 petition in state court. *Id.* at 3.

**\*3** Lunney was confined to the SHU for 180 days, Lunney Aff. ¶ 17, from May 21, 2002, to November 21, 2002. As is described in greater detail below, during this period Lunney asserts that he was served with cold, spoiled, or poorly prepared food, given inadequate laundry services, and denied hygiene items, showers, meals, and recreation by SHU staff. *Id.* ¶¶ 18, 21-23, 29 (incorporating Am. Compl. ¶ 15(a)-(d), (g)). Lunney also asserts that he was criticized and threatened by SHU staff for filing grievances related to prison conditions, and threatened with transfer by Superintendent Fischer. *Id.* ¶¶ 28, 30, 31 (incorporating Am. Compl. ¶ 15(f)-(h)). Lunney asserts that, on one occasion, he was physically assaulted by prison guards in retaliation for complaining about conditions in his cell. Lunney Aff. ¶¶ 24-25 (incorporating Am. Compl. ¶ 15(e)(1)-(2)).

B. *Procedural History*

The original complaint in this action was filed on March 29, 2004. *See* Complaint (Docket # 2) ("Compl."). It alleged the following claims: (1) violation of due process when Selsky convened a new disciplinary hearing while the Article 78 review of the first hearing was pending, Compl. at 7 (¶ 1); (2) violation of due process based on the failure to provide Lunney with a timely written disposition of the second hearing, Compl. ¶ 8; (3) that in violation of the Eighth Amendment, Lunney was subject to "overall poor" conditions of confinement in the Sing Sing SHU, *see id.* at 7 (¶ 3), including the service of cold, spoiled, and improperly prepared food; inadequate laundry services; inadequate law library services; and inadequate reading material, Compl. ¶ 16; and (4) that he was retaliated against for filing grievances with respect to conditions in the SHU, *id.* ¶¶ 17, 19; *id.* at 7 (¶ 2), in violation of his rights under the First Amendment. Lunney sought $10 million in punitive and/or compensatory damages. *Id.* at 8.

Defendants filed a motion to dismiss. *See* Defendants' Memorandum of Law in Support of Their Motion to Dismiss, filed June 10, 2004 (Docket # 16). On February 23, 2005, this Court dismissed all of Lunney's claims except for: (1) his Eighth Amendment claim against Fischer with regard to improperly prepared food; (2) his First Amendment claim against Fischer alleging that he was threatened with physical retaliation for filing grievances; and (3) his due process claim against Brereton regarding the failure to receive a written disposition of his disciplinary hearing. *See Lunney v. Brureton,* 2005 WL 121720, at *16 (S.D.N.Y. Jan.21, 2005) (" *Lunney I"* ), adopted by, 2005 WL 433285, at *1 (S.D.N.Y. Feb.23, 2005). Lunney was given the opportunity to replead his claims. *Lunney I,* 2005 WL 121720, at *16.

Lunney then filed an amended complaint, which restated most of the allegations included in his original complaint. *See Id.* ¶¶ 15. It also contained new claims. Significantly, Lunney amended his original complaint to include as defendants Officers Michael Blot and Parrish Frazier. *See* Am. Compl. ¶ 16(h), (i). The claims in the amended complaint are as follows: (1) Selsky deprived Lunney of his First and Fourteenth Amendment rights by ordering a new disciplinary hearing and "depriving [him] of his right to challenge the original hearing in a court of law," *see id.* ¶ 16(a); (2) Brereton violated Lunney's due process rights by failing to provide him with a written copy of the disposition for the hearing on October 17, 2002, *id.* ¶ 16(f); (3) Robert Murphy, Fischer, and Kikendall violated Lunney's due process rights by failing to remedy Lieutenant Brereton's failure to provide a copy of the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

disposition, *id.* ¶¶ 16(b)-(d); (4) Fischer violated Lunney's First Amendment rights by threatening to transfer him in retaliation for filing grievances, *id.* ¶ 16(c); (5) Fischer failed to remedy the "numerous sub-standard conditions of confinement in the S.H.U.," and subjected him to "forced labor without pay," *id.;* (6) Sean Kober violated Lunney's First and Eighth Amendment rights by failing "to operate the Sing Sing I.G.R.C. in accordance with D.O.C.S. policy and thus[ ] deprived plaintiff of his means to petition the government for the redress of grievances," *id.* ¶ 16(e); (7) Anthony Chu violated Lunney's Eighth Amendment rights by failing to remedy "the many problems that existed with the S.H.U. food service program and for failing to provide plaintiff with wholesome, nutritious and properly prepared meals," *id.* ¶ 16(g); (8) Blot violated Lunney's First, Eighth, and Fourteenth Amendment rights by (a) assaulting him, threatening and harassing him, and depriving him of showers, meals and recreation, all in retaliation for Lunney's filing of grievances; (b) by co-signing a misbehavior report against Lunney for an incident in which Blot was not involved; (c) by threatening Lunney for making complaints against other staff members; (d) by depriving Lunney of access to clean clothing and/or failing to ensure that the clothing was laundered; (e) by failing to provide Lunney with basic hygiene items; and (f) by failing to remedy the plumbing problems in Lunney's SHU cell, *id.* ¶ 16(h); and (9) Frazier violated Lunney's First and Eighth Amendment rights by assisting Blot in the aforementioned violations. *Id.* ¶ 16(i).

**\*4** On April 24, 2006, defendants moved for summary judgment on all claims. [FN2] On June 13, 2006, Lunney filed opposition papers. *See* Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Docket # 87) ("Pl.Mem."); Lunney Aff. Lunney's papers did not include a statement made in response to the Defendants' 56.1 Statement as required by Local Civil Rule 56.1. Defendants subsequently filed reply papers. *See* Defendants' Reply Memorandum of Law in Support of Their Motion for Summary Judgment, filed July 28, 2006 (Docket # 91) ("Def. Reply Mem."); Lee Reply Declaration, filed July 28, 2006 (Docket # 92) ("Lee Reply Decl."). Lunney then submitted a sur-reply memorandum with an additional affidavit. Plaintiff's Sur-Reply Memorandum, filed Sept. 12, 2006 (Docket # 96) ("Pl.Sur-Reply"); Affidavit, dated Sept. 7, 2006 (Docket # 97) ("Sur-Reply Aff.").

FN2. *See* Notice of Motion for Summary Judgment, filed Apr. 24, 2006 (Docket # 72); Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, filed Apr. 24, 2006 (Docket #

73) ("Def.Mem."); Defendants' Rule 56.2 Statement, filed Apr. 24, 2006 (Docket # 74); Declaration of Brian Fischer, filed Apr. 24, 2006 (Docket # 75) ("Fischer Decl."); Declaration of Paul Kikendall, filed Apr. 24, 2006 (Docket # 76); Declaration of Robert Murphy, filed Apr. 24, 2006 (Docket # 77); Declaration of Michael Blot, filed Apr. 24, 2006 (Docket # 78) ("Blot Decl."); Declaration of Parrish Frazier, filed Apr. 24, 2006 (Docket # 79) ("Frazier Decl."); Declaration of Sean Kober, filed Apr. 24, 2006 (Docket # 80); Rule 56.1 Statement, filed Apr. 24, 2006 (Docket # 81) ("Def.56.1"); Chu Declaration in Support of Defendants' Motion for Summary Judgment, filed Apr. 24, 2006 (Docket # 82); Declaration of Thomas G. Eagen, filed Apr. 24, 2006 (Docket # 83) ("Eagen Decl."); Declaration of Donald Selsky, filed Apr. 24, 2005 (Docket # 84) ("Selsky Decl."); Declaration of Benjamin Lee, filed Apr. 24, 2006 (Docket # 85) ("Lee Decl.").

## II. *APPLICABLE LAW*

### A. *Standard of Review on Summary Judgment Motions*

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed" and the court must draw "all justifiable inferences" in favor of the non-moving party. *Id.* at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

genuine issue for trial,' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993) (quoting *Celotex,* 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo,* 100 F.3d 253, 258 (2d Cir.1996) (citing *Anderson,* 477 U.S. at 247-48).

B. *Exhaustion*

1. *PLRA*

**\*5** The Prison Litigation Reform Act ("PLRA") provides in relevant part:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Accordingly, "[c]omplete exhaustion of ... administrative remedies through the highest level for each claim is required." *Veloz v. New York,* 339 F.Supp.2d 505, 514 (S.D.N.Y.), *aff'd,* 178 Fed. Appx. 39 (2d Cir.2004); *see also Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) ("All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.' ") (citations omitted). In addition, the exhaustion must be "proper"-that is, "compl[y] with an agency's deadlines and other critical procedural rules because no adjudicative system can function

effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* --- U.S. ----, ---- - ----, 126 S.Ct. 2378, 2386-87, 165 L.Ed.2d 368 (2006) (internal citation and quotation omitted). Further, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532. The exhaustion requirement applies even when a plaintiff seeks relief not available in prison administrative proceedings, such as monetary damages. *See Booth v. Churner,* 532 U.S. 731, 740-41, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Nonetheless, an inmate is not required to use this process where it "was reasonable for the inmate to conclude that his administrative remedies had been exhausted by [a] positive disposition" of some informal complaint. *Braham v. Clancy,* 425 F.3d 177, 183 (2d Cir.2005); *accord Dixon v. Goord,* 224 F.Supp.2d 739, 749 (S.D.N.Y.2002) ("The exhaustion requirement is satisfied by resolution of the matter, i.e., an inmate is not required to continue to complain after his grievances have been addressed."); *Perez v. Blot,* 195 F.Supp.2d 539, 546 (S.D.N.Y.2002).

In this Circuit, when a plaintiff advances a plausible explanation for his failure to exhaust, a court engages in a three-part analysis:

First, the court must ask: whether administrative remedies were in fact "available" to the prisoner. [Second], [t]he court should also inquire ... whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. [Third], [i]f the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether *special circumstances* have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements.

**\*6** *Brownell v. Krom,* 446 F.3d 305, 311-12 (2d Cir.2006) (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)) (emphasis and alterations in original); *accord Curry v. Mazzuca,* 2006 WL 250487, at \*6 (S.D.N.Y. Feb.2, 2006).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

Finally, in *Jones v. Bock,* --- U.S. ----, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), the Supreme Court held that courts must consider claims in a § 1983 complaint that have been exhausted despite the presence of unexhausted claims. 127 S.Ct. at 923-26.

2. *New York's Inmate Grievance Program*

In New York, formal exhaustion for state prisoners generally requires complying with the three-step grievance and appeal procedure outlined in the Inmate Grievance Program. *See* N.Y. Comp.Codes R. & Regs. tit 7 ("7 N.Y.C.R.R."), § 701.5. In brief, an inmate must first file a complaint with the Inmate Grievance Resolution Committee ("IGRC"). 7 N.Y.C.R.R. § 701.5(a). Next, after receiving a response from the IGRC, the inmate may appeal to the superintendent of the facility. *Id.* § 701.5(b). Finally, after receiving a response from the superintendent, the prisoner may seek any review of the superintendent's decision with the Central Office Review Committee ("CORC"). *Id.* § 701.5(c). *See Hemphill,* 380 F.3d at 682. Generally, "[a] prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure." *Hairston v. LaMarche,* 2006 WL 2309592, at *7 (S.D.N.Y. Aug.10, 2006) (citing cases).

III. *DISCUSSION*

In his opposition papers, Lunney did not submit a statement in response to the defendants' statement under Local Civil Rule 56.1. In light of Lunney's *pro se* status, and in light of the fact that he submitted an affidavit setting forth his disagreements with the defendants' version of the facts, *see* Lunney Aff., the Court will exercise its discretion not to penalize Lunney for this failure. *See, e.g., Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.,* 422 F.3d 72, 75 (2d Cir.2005) ("district court has inherent authority to determine when to overlook or excuse a departure from its own local rules").

We now address the claims made in Lunney's amended complaint.

A. *Eighth Amendment Claim Relating to Food in the SHU*

Lunney maintains his Eighth Amendment rights were compromised when he was served food that was "cold, spoiled and poorly prepared" on "a near daily basis" during his detention in the SHU. *See* Lunney Aff. ¶ 18; Affirmation of A. Franco, DIN # 01-A-5104, undated (reproduced in Ex. E to Lunney Aff.), ¶ 3(a) (milk often spoiled, fruits and vegetables rotten, appearance and quality of meals poor and unpalatable, inmates forced to refuse meals on numerous occasions); Affirmation of Johnny Casaigne, DIN # 04-A-2867, undated (reproduced in Ex. E to Lunney Aff.), ¶ 3(a) (same); Deposition of Johnny E. Casaigne, dated June 24, 2005 (reproduced as Ex. F to Lunney Aff.), at 27 ("I rarely ate the food because when it did come it was ... either spoiled, ice cold or wasn't even cooked right."); Deposition of Alisjandro Franco, dated June 24, 2005 (reproduced as Ex. G to Lunney Aff.), at 19 (refused meals "a few times"). Lunney states that he and other inmates "were often forced to refuse meals due to the poor quality of the food." *See* Lunney Aff. ¶ 18. Lunney also states that complaints and grievances about these problems were ignored, and that inmates "had to resort to refusing entire meals so as to get the attention of" defendants. *See id.* ¶ 19 (incorporating Am. Compl. ¶ 15(a)(1)). Finally, Lunney alleges that he suffered "[w]eight loss and muscle atrophy as a result of not receiving adequate meals." *See Id.* ¶ 18 (incorporating Am. Compl. at 18 (¶ 2)), and that on one occasion he and other inmates "became ill after eating," *see id.* ¶ 18. He states that the illness consisted of "stomach cramping, nausea, slight fever, chills and diarrhea," and that the inmates received antacid tablets for their discomfort. *See id.* (incorporating Am. Compl. at 18 (¶ 2)); Ambulatory Health Record, dated Aug. 20, 2002 (reproduced as Ex. H to Lunney Aff.) (medical records reflecting a doctor's assessment of "upset stomach," for which Lunney was given antacid tablets). Defendants note that Lunney "acknowledged that other than one alleged incident involving a dinner of rice and beans, [he] was never treated for food poisoning or spoiled food and that he did not know other inmates in the S.H.U. who were treated for food poisoning or spoiled food." *See* Def. 56.1 ¶ 20 (citing Deposition of George Lunney, dated June 23, 2005 (reproduced as Ex. A to Lee Decl.) ("Lunney Dep."), at 123).

**\*7** Defendants argue that Lunney has failed to exhaust his claim that the food in the SHU posed a threat to him and the other SHU inmates. *See* Def. Mem. at 11. With respect to this claim, Lunney does not argue that the grievance process was unavailable to him, that there is a basis for estopping defendants from relying on the exhaustion doctrine, or that there are other special circumstances excusing his failure to exhaust, *see* Pl. Mem. at 9-10-though, as described further

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

below, he does make such an argument with respect to the excessive force and other retaliation claims. *See id.* at 6-7, 12-13. Rather, to support his contention that the food claim is exhausted, Lunney cites to grievances SS-35888-02 and SS-36314-02, as well as to "a grievance dated Sept. 29, 2002 and the letters sent to D.O.C.S. officials." *See id.* at 9 (citing Ex. K to Lunney Aff.). Grievance SS-35888-02, however, complains only that SHU inmates "received only one cup of milk" and that the inmates "do not get what we're supposed to" in terms of "healthy food items." *See* Grievance SS-35888-02, dated July 20, 2002 (reproduced in Ex. K to Lunney Aff.). It mentions nothing about spoiled food or that posed an immediate health risk to the inmates. Grievance SS-36314-02 mainly states that Lunney received Rice Krispies for breakfast even though the menu called for Bran Flakes, and thus that he was not receiving the proper amount of fiber in his diet. *See* Grievance SS-36314-02, dated Sept. 24, 2002 (reproduced in Ex. K to Lunney Aff.). It then also makes a brief reference to his food being "ice cold." *Id.* Thus, neither of these grievances support the broad claims now being made in the complaint.

Lunney also provides a copy of a purported grievance dated September 29, 2002. *See* Grievance (reproduced in Ex. K to Lunney Aff.). This grievance-which defendants contend was considered as part of SS-36314-02, *see* Def. Reply Mem. at 8 n. 2-contains a fleeting reference to "spoiled or rotten food" but gives no specifics on when the serving of such food occurred. This generic and unexplained reference to "spoiled or rotten food"-included at the end of a grievance that focuses largely on whether the fiber content of the food met dietary guidelines-was not sufficient to alert the prison officials as to the claims now being made in this complaint. While inmates are held only to a standard of "notice pleading" in grievances, *see Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004), Lunney's grievance statement was far too vague to provide the defendants with notice of when such spoiled food was served, in what manner, and with what frequency. It is thus insufficient to have exhausted this claim.

In any event, Lunney has not met his burden of showing he made the required appeals of even this grievance or that he should be excused from having done so. Although he asserts that this grievance was denied and appealed to the Superintendent, he concedes that he did not appeal it to the CORC, stating only that, based on the Superintendent's reply, "an appeal to the C.O.R.C. was unnecessary." Pl. Sur-Reply at 14. Lunney's general allegations that his grievances "proved ineffective in correcting the problems with the food" and that

he made additional verbal complaints, *see* Lunney Aff. ¶ 19, do not excuse his failure to exhaust. *See, e.g., Curry v. Fischer,* 2004 WL 766433, at *6 (S.D.N.Y. Apr.12, 2004) ("Since informal channels did not lead to the resolution of his complaints, Curry cannot be deemed to have informally exhausted his remedies.") (citing *Hernandez v. Coffey,* 2003 WL 22241431, at *3 n. 4 (S.D.N.Y. Sept.29, 2003) (informal exhaustion cannot be found where no resolution is reached)); *see also Williams v. City of New York,* 2005 WL 2862007, at *10 (S.D.N.Y. Nov.1, 2005) ("It is well settled that complaint letters to DOCS or prison officials do not satisfy the PLRA's exhaustion requirements.").

**\*8** Lunney makes general claims about the alleged mismanagement of the grievance process, *see* Pl. Mem. at 71-75, which are discussed further in section III.E below. However, there is no reason why these alleged failures should have excused his obligation to exhaust his claims regarding food. Nor has he shown that he was otherwise prevented from filing grievances on food-a fact most obviously demonstrated by the fact that he filed various food-related grievances as has just been noted. Notably, Lunney asserts that between February 2002 and March 2004 he filed "more than 100 grievances and more than a dozen complaints with outside agencies and D.O.C.S. officials regarding nearly every aspect of his confinement." Pl. Sur-Reply at 19.

In sum, Lunney's claim that his Eighth Amendment rights were violated by the failure of the prison system to provide him with safe food, *see* Am. Compl. ¶ 16(g), is unexhausted and must be dismissed.

B. *Eighth Amendment Claim of Excessive Force*

Lunney claims that he was assaulted by Officers Blot and Frazier "[d]uring his first week in the S.H.U." after he attempted to notify another officer that his sink and toilet were broken and he was missing certain personal hygiene items. *See* Lunney Aff. ¶ 24. He states that as a result of this assault, he suffered a "[s]mall cut to lip and another to left side of jaw with bruises and contusions to face and body." *See id.* ¶ 25 (incorporating Am. Compl. at 18 (¶ 1)). The defendants argue that this claim is unexhausted and that it fails on the merits. *See* Def. Mem. at 10-11, 30-32.[FN3]

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

FN3. Lunney has also asserted that the assault occurred in retaliation for complaints he has made. The retaliation claim with respect to the assault is discussed separately below in sections III.D.3.e (with respect to Blot) and III.D.4 (with respect to Frazier).

1. *Exhaustion*

Lunney states that he did not file a grievance against Blot and Frazier for this assault until after he was transferred to Cayuga Correctional Facility nearly two years later, because Blot threatened him with retaliation if he did so, stating that "he would receive a misbehavior report for assault on staff if he ... filed a complaint and claimed any injuries." *See* Lunney Aff. ¶ 25 (incorporating Am. Compl. ¶ 15(e)(2)). Blot also told him that if he did file a grievance, "his time in S.H.U. would be longer and harsher." *See id.* Lunney argues that under cases such as *Ziemba v. Wezner, 366 F.3d 161 (2d Cir.2004)*, his failure to file a timely grievance was "justifiable." *See* Pl. Mem. at 5-7.

Defendants argue that Lunney's failure to exhaust the excessive force complaint in a timely fashion should not be excused for several reasons: (1) the grievances and appeals Lunney filed in 2004 at Cayuga were untimely, and regardless, made no reference to any excessive force by Officers Blot and Frazier, but only to the Tier III hearing and "conditions of confinement" in the SHU, *see* Def. Reply Mem. at 6; (2) Lunney never mentioned any excessive force by Officers Blot and Frazier until he filed his amended complaint, *id.* at 7; and (3) the Second Circuit excuses failures to exhaust based on threats or retaliation only where "the record contain[s] documented proof of an inmate's prior complaints about the misconduct in a form other than a grievance along with allegations that an inmate was prevented from making these same complaints in the form of a grievance." *See id.* at 6 (citing *Ziemba* and *Hemphill* ).

**\*9** The first question is whether administrative remedies were in fact "available" to Lunney. *Brownell, 446 F.3d at 311* (citing *Hemphill, 380 F.3d at 686).* To be available, an administrative remedy must "afford the possibility of some relief for the action complained of." *Booth, 532 U.S. at 738; accord Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir.2004).* There is no dispute that the prison "provided grievance procedures that inmates claiming excessive force could utilize," *see Hemphill,*

*380 F.3d at 686*-specifically, the three-step process outlined in *7 N.Y.C.R.R. § 701.5.* Nor is there any dispute that Lunney used these procedures frequently both before and after the alleged incident with Blot and Frazier. *See* Eagen Decl., Exs. A & B. Indeed, Lunney concedes that he "has an extensive history of prosecuting grievances." *See* Pl. Sur-Reply at 4.

The availability inquiry does not end here, however. In *Hemphill,* the Second Circuit held that the test for deciding whether ordinary grievance procedures were "available" is an "objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *380 F.3d at 688* (citing *Davis v. Goord, 320 F.3d 346, 353 (2d Cir.2003)*). The court went on to note that "threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts." *See Hemphill, 380 F.3d at 688.*

Lunney's affidavit suggests that he failed to file a grievance regarding the assault by Officers Blot and Frazier until 2004 because Blot threatened him with retaliation if he did so. *See* Lunney Aff. ¶ 25 (incorporating Am. Compl. ¶ 15(e)(2)). Specifically, Lunney has asserted that Blot told him if he filed a grievance about the assault, "he would receive a misbehavior report for assault on staff" and that "his time in S.H.U. would be longer and harsher." *See id.* Lunney states that this threat led him to avoid seeking medical attention or filing a complaint regarding the assault by Blot and Frazier until nearly two years later, when he was transferred to Cayuga Correctional Facility. *See id.* Because on this motion for summary judgment, we accept as true the admissible evidence of Lunney, we must assume that Blot did in fact threaten Lunney in the manner Lunney has claimed.

Applying the "ordinary firmness" standard, it is certainly plausible that a reasonable factfinder could conclude that a prisoner in Lunney's situation would be deterred from complaining about an assault that had just occurred. Here, Lunney alleged that he was beaten and that the beating was followed immediately by specific threats, some impliedly physical, if he filed a grievance. *See Hemphill, e.g., 380 F.3d at 688-89* (remanding for determination of availability of remedies where officer told plaintiff he had "better drop" his complaint regarding injuries sustained in a beating and not seek any medical attention or the officer would "make your life a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

living hell"); *McCullough v. Burroughs,* 2005 WL 3164248, at *4 (E.D.N.Y. Nov.29, 2005) (plaintiff excused from failing to exhaust remedies after he was assaulted by officers in retaliation for prior grievances and during the assault, officer expressly threatened that he would "get [him]") (alteration in original); *accord Hepworth v. Suffolk,* 2006 WL 2844408, at *4-7 (E.D.N.Y. Sept.29, 2006) (exhaustion excused where inmate was threatened for filing a grievance); *Larry v. Byno,* 2006 WL 1313344, at *4 (N.D.N.Y. May 11, 2006) (inmate subject to physical assault and threats of violence excused from filing grievance); *cf. Benjamin v. Comm'r New York State Dep't of Corr. Servs.,* 2006 WL 783380, at *4 (S.D.N.Y. Mar.28, 2006) (suggesting in dictum that administrative remedies would be rendered unavailable where "the complaint specifically recounted threatening statements made by correctional officers and plaintiff's 'acquiescence' to those threats") (citing *Hemphill,* 380 F.3d at 683-84, 687). Thus, Lunney has established a genuine issue of material fact with regard to the availability of administrative remedies for his claim of excessive force.

**\*10** Defendants contend that because Lunney "has no corroborated documentation of previously complaining about unconstitutional conduct in some form," this Court should not excuse his failure to exhaust this claim. *See* Def. Reply Mem. at 7. They argue that *Hemphill* and *Ziemba* "require[ ]" this result. *See id.* at 6-7. However, neither *Hemphill* nor *Ziemba* held that a plaintiff alleging threats or retaliation in relation to an excessive-force claim is required to have "corroborated documentation of previously complaining" about such force. Each merely noted that there had been some such documentation. For example, in *Hemphill,* the plaintiff alleged that he failed to exhaust his administrative remedies with regard to an excessive-force claim because an officer had told him, "I'll make your life a living hell throughout this penal system because I have friends all over." *See* 380 F.3d at 684. The Second Circuit held that the district court was required to consider whether "some seemingly available remedies were rendered unavailable by the threats Hemphill received" or alternatively, whether the defendants' exhaustion defense was estopped by the threats the officer had allegedly made to the plaintiff. *See id.* at 688-89. While the court noted that the plaintiff had written a letter to the superintendent of the prison, *see id.* at 688, the court's holding with respect to these questions did not rely on this fact, *see id.* at 688-89, and specifically noted that his letter to the superintendent did not necessarily mean that administrative remedies were "available" to him. *Id.*

Nor does it help defendants' argument that Lunney waited until his transfer to another facility, nearly two years later, to submit a grievance of any kind. First, such a delay is consistent with the actions of someone in fear of retaliation by Blot. Second, if Lunney was justified in not filing a grievance at all, he should not be penalized for filing an untimely one.

In sum, construing the record in the light most favorable to Lunney, a factfinder could conclude that administrative remedies were not "available" to Lunney with respect to his claim of excessive force. Accordingly, summary judgment cannot be granted on this question.[FN4]

FN4. Defendants assert that "in the event that the Court finds that there is a genuine dispute of material fact concerning exhaustion, and that plaintiff's claims cannot otherwise be dismissed, the proper procedure would be to hold an evidentiary hearing," Def. Reply Mem. at 10, rather than "proceed directly to trial." *Id.* There is certainly case law that supports the view that exhaustion should be determined by the Court rather than by a jury. *See, e.g., Wyatt v. Terhune,* 315 F.3d 1108, 1119-20 (9th Cir.) (in motion to dismiss for failure to exhaust administrative remedies under PLRA, court may "decide disputed issues of fact"), *cert. denied,* 540 U.S. 810 (2003); *Priester v. Rich,* 457 F.Supp.2d 1369, 1377 (S.D.Ga.2006) (same); *see also Dukes v. Doe,* 2006 WL 1628487, at *6 (S.D.N.Y. June 12, 2006) (ordering without discussion an "evidentiary hearing" on the question of exhaustion under the PLRA); *cf. Pauling v. Sec'y of Dep't of Interior,* 71 F.Supp.2d 231, 232-33 (S.D.N.Y.1999) (issues of fact with respect to equitable tolling of statute of limitations to be decided by the court). As the Supreme Court has recently affirmed, however, exhaustion is an "affirmative defense," much like a statute of limitations defense. *See Jones v. Bock,* --- U.S. ----, ---- - ----, 127 S.Ct. 910, 919-921, 166 L.Ed.2d 798 (2007). Where there are disputed factual questions regarding an affirmative defense such as a statute of limitations defense, the Second Circuit has stated that "issues of fact as to the application of that defense must be submitted to a jury." *Katz v. Goodyear Tire & Rubber Co.,* 737 F.2d 238, 243 n. 2 (2d Cir.1984). Thus, it is not clear that factual disputes regarding the exhaustion defense should ultimately be decided by the Court.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

2. *Merits*

Lunney asserts that after he attempted to notify another officer about his plumbing problems and lack of personal hygiene items, Officer Blot approached his cell and told him to "shut the fuck up or we are coming in there and you will not like the results." Lunney Aff. ¶ 24 (incorporating Am. Compl. ¶ 15(e)(1)). After further discussion between Lunney and Officers Blot and Frazier, Blot called for Lunney's cell door to be opened, and then "rushed into [his] cell and began punching [him] in the head and body." *Id.* Frazier then entered the cell "and placed [Lunney] in a choke hold for several minutes." *See id.* Lunney adds that he sustained "some bruises" from the attack, specifically that his "throat was bruised" where Frazier had grabbed" him and that he had a "couple [of] black and blues on my side," and that "about a week later bruises, you know, swelling went down." *See id.* ¶¶ 24-25 (citing Lunney Dep. at 171-74); *see also id.* (citing Lunney Dep. at 180-81 ("I could have used [medical attention], yeah. I had some bruises. I was pretty banged up.")).

**\*11** Defendants argue that any injuries Lunney sustained were *de minimis* and thus not actionable under the Eighth Amendment. *See* Def. Mem. at 30-32; Def. Reply Mem. at 26-27.

To establish an Eighth Amendment violation based on a claim of excessive force, "an inmate must meet both an objective and a subjective requirement." *Griffin v. Crippen,* 193 F.3d 89, 91 (2d Cir.1999). To meet the objective requirement, "the alleged violation must be 'sufficiently serious' by objective standards." *See id.* (citing *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). The objective component is "context specific, turning upon 'contemporary standards of decency.' " *See Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir.1999) (quoting *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). To meet the subjective requirement, the inmate must show that the prison officials involved "had a 'wanton' state of mind when they were engaging in the alleged misconduct." *See Davidson v. Flynn,* 32 F.3d 27, 30 (2d Cir.1994). "[T]he 'wantonness' inquiry turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *See Blyden,* 186 F.3d at 262 (quoting *Hudson,* 503 U.S. at 7). "Thus, [t]he key inquiry

under *Hudson* and its precedents is whether the alleged conduct involved unnecessary and wanton infliction of pain." *Sims v. Artuz,* 230 F.3d 14, 21 (2d Cir.2000) (citing *Davidson,* 32 F.3d at 30) (internal quotation marks omitted).

"However, the malicious use of force to cause harm constitutes an 'Eighth Amendment violation[ ] per se ... whether or not significant injury is evident.' " *Griffin,* 193 F.3d at 91 (quoting *Blyden,* 186 F.3d at 263). This result follows because " '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.' " *Blyden,* 186 F.3d at 263 (quoting *Hudson,* 503 U.S. at 9). Nevertheless, "a *de minimis* use of force will rarely suffice to state a constitutional claim." *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993). " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.' " *Id.* (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)).

Furthermore, courts in this circuit have held that "although the subjective component is 'inherently an inquiry into [the] defendant's state of mind, plaintiff need not offer particular evidence of defendant's mental state. For purposes of opposing defendants' summary judgment motion, plaintiff has satisfied his burden on this element by merely pleading a scenario in which the use of force could not have been in good faith.' " *See Watson v. Delgado,* 2006 WL 1716869, at \*5 (S.D.N.Y. June 20, 2006) (quoting *Santiago v. Campisi,* 91 F.Supp.2d 665, 673 (S.D.N.Y.2000)); *see also Boddie v. Schnieder,* 105 F.3d 857, 861 (2d Cir.1997) ("Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind.").

**\*12** In this case, Lunney states that Blot and Frazier first threatened him and then entered his cell and attacked him without provocation. *See* Lunney Aff. ¶¶ 24-25 (incorporating Am. Compl. ¶ 15(e)(1)). Because under Lunney's version of the facts, the officers' alleged use of force could not have been in good faith, he has provided sufficient evidence of the subjective component of an Eighth Amendment violation. *See, e.g., United States v. Walsh,* 194 F.3d 37, 50 (2d Cir.1999) ("the subjective element is satisfied in this case as there was absolutely no reasonably perceived need for the application of force"); *Santiago,* 91 F.Supp.2d at 673 ("Assuming plaintiff's story to be true, defendant's alleged conduct is clearly unrelated to any 'good-faith effort to maintain or restore discipline.' ")

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

(citation omitted).

With regard to the objective component, Lunney has alleged that as a result of the assault by Blot and Frazier, he sustained "some bruises," specifically, his "throat was bruised where Frazier had grabbed" him and he had a "couple black and blues on my side," and that "about a week later bruises, you know, swelling went down." See Lunney Aff. ¶¶ 24-25 (citing Lunney Dep. at 171-74); see also id. (citing Lunney Dep. at 180-81 ("I could have used [medical attention], yeah. I had some bruises. I was pretty banged up.")). While defendants argue that any injuries Lunney suffered were de minimis and not documented by medical records, see Def. Mem. at 30-32, they point to no case where alleged injuries of this kind were considered outside the protection or the Eighth Amendment. Indeed, Griffin held that an inmate's Eighth Amendment claim survived summary judgment where "the only injuries he suffered were a bruised shin and swelling over his left knee," and "the only evidence he intended to offer in support of his claims was his own testimony." See Griffin, 193 F.3d at 91. The court explained that although the inmate's claim of excessive force was "weak and his evidence extremely thin, dismissal of the excessive-force claim was inappropriate because there are genuine issues of material fact concerning what transpired after appellant was handcuffed and whether the guards maliciously used force against him." See id. Thus, one court has concluded that "bruising or equivalent injuries may be found by a reasonable fact-finder to constitute minor rather than de minimis harm." See Watson, 2006 WL 1716869, at *7 (citing McCrory v. Belden, 2003 WL 22271192, at *6 (S.D.N.Y. Mar.22, 2004)) (internal quotation omitted).

Lunney's alleged injuries-involving bruising and contusions-are quite different from the claim of the prisoner in Boddie, who had alleged only that he had been "bumped, grabbed, elbowed, and pushed." See Boddie, 105 F.3d at 862. In dismissing the claim, Boddie noted that the plaintiff "does not maintain that he experienced any pain or injury as a result of the physical contact," and that he did not "allege facts that show that the defendants used force 'maliciously and sadistically to cause harm,' rather than 'in a good-faith effort to maintain or restore discipline.' " See id. Both these circumstances are present in Lunney's case, however.

*13 In Espinal v. Goord, 2001 WL 476070 (S.D.N.Y. May 7, 2001), the court found the plaintiff's injuries to be de minimis where he was hit in the face two or three times, making his face

turn red. 2001 WL 476070, at *13. However, the plaintiff in that case described these injuries as "really nothing." Id. In Perkins v. Brown, 285 F.Supp.2d 279 (E.D.N.Y.2003), a prisoner was not permitted to base an excessive force claim on allegations of a "broken lip," swollen nose, eye, fingers, and wrists, jaw pain, chest bruising, and "stress disorder" resulting from being struck, where the only evidence was the plaintiff's testimony and it was contradicted by prior statements of the plaintiff and medical evidence Id. at 284. The district court also pointed to a number of factors reflecting that such injuries were in fact de minimis, including the plaintiff's assertion that his pain was "nothing major" or "nothing serious." Id. In contrast, Lunney has stated that his throat was bruised from being put in choke hold, that he had bruises on his side as well, and that the swelling from these injuries did not subside for about a week.

To the extent the defendants argue that the lack of medical records showing treatment is grounds for dismissing Lunney's claim, the Court rejects this argument inasmuch as there is no requirement that the claim of injury be substantiated in contemporaneous medical records. See Griffin, 193 F.3d at 91 (Eighth Amendment claim permitted to proceed to trial even though only evidence supporting it was plaintiff's testimony). Thus, cases have frequently denied summary judgment for excessive-force violations while noting the absence of corroborating medical records. See, e.g., Atkins v. County of Orange, 372 F.Supp.2d 377, 399 (S.D.N.Y.2005); Davis v. Patrick, 2000 WL 1154065, at *1 (S.D.N.Y. Aug.14, 2000); Baskerville v. Goord, 2000 WL 897153, at *1-2 (S.D.N.Y. July 6, 2000).

Finally, Blot and Frazier are not protected by qualified immunity on this claim. Qualified immunity attaches where (1) a constitutional right would have been violated on the facts alleged; but (2) it would have been objectively reasonable for the defendant to have believed that his actions did not violate clearly established law. See Saucier v. Katz, 533 U.S. 194, 200-201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Lunney has a constitutional right to be free from a correction officer's use of excessive force, and it could not be objectively reasonable for Officer Blot or Officer Frazier to have believed that the use of excessive force is allowed under the law. See Calamia v. City of New York, 879 F.2d 1025, 1036 (2d Cir.1989) ("The right of an individual not to be subjected to excessive force has long been clearly established."); Johnson v. City of New York, 2006 WL 2354815, at *5 (S.D.N.Y. Aug.14, 2006) (citing cases).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

C. *Eighth Amendment Claims Based on Lack of Laundry Services and Personal Hygiene Items*

**\*14** Lunney claims that prison officials violated his Eighth Amendment rights based on the existence of inadequate laundry services, plumbing problems, and the deprivation of personal hygiene items. *See* Lunney Aff. ¶¶ 20-23. While the defendants argue that these claims are unexhausted, *see* Def. Mem. at 11, it is unnecessary to reach this question because the claims fail on the merits.

The Supreme Court has held that "[t]he Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)* (quoting *Rhodes v. Chapman, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)*). The Eighth Amendment imposes an obligation on prison officials to provide "humane conditions of confinement" including "adequate food, clothing, shelter, and medical care." *Id.* To establish a violation of the Eighth Amendment on the basis of inhumane prison conditions, a plaintiff must show that the deprivation is sufficiently serious as to result in a denial of "'the minimal civilized measure of life's necessities,'" *Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)* (quoting *Rhodes, 452 U.S. at 347)*, and that the prison officials acted with "a sufficiently culpable state of mind." *Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir.1996)* (citation omitted). In the context of conditions of confinement, the requisite mental state for the prison officials is "deliberate indifference." *Wilson, 501 U.S. at 302-03.*

1. *Laundry Services*

Lunney re-alleges the claim from his original complaint that the laundry services in the SHU were inadequate. *See* Lunney Aff. ¶¶ 20-21. In rejecting this claim on the motion to dismiss, this Court held that there "is no Eighth Amendment violation ... in instances where inmates are provided the opportunity and the supplies to wash their own clothes." *See Lunney I, 2005 WL 121720, at *8* (citing *Green v. Ferrell, 801 F.2d 765, 771 (5th Cir.1986)* (no constitutional violation where inmates were permitted to wash their clothes in sinks and were provided with laundry detergent)); *Benjamin v. Fraser, 161 F.Supp.2d 151, 178-79 (S.D.N.Y.2001)* (availability of sinks and laundry

detergent or bar soap sufficient under the Eighth Amendment), *aff'd in relevant part and vacated in part,* 343 F.3d 35 (2d Cir.2003). The Court thus concluded that "Lunney's mere allegation that his clothes were returned to him without being cleaned on various occasions does not state an Eighth Amendment claim as to inadequate laundry services." *See Lunney I,* 2005 WL 121720, at *8*. Lunney asserts that his sink was small and that he was not given soap specifically for laundry purposes. Lunney Dep. at 167. But he has not submitted evidence that would allow a reasonable to jury to conclude that he could not achieve some level of cleanliness with the materials he had. *See generally Benjamin,* 161 F.Supp.2d at 178-79. That Lunney asserts he was without soap for eight days and had a clogged sink for five, as described in the next section, shows at most that he lacked the means to clean his own clothing for a relatively brief period. As such, there was no Eighth Amendment violation.

2. *Plumbing Problems and Failure to Provide Personal Hygiene Items*

**\*15** Lunney alleges that he "was placed in a cell where the sink was clogged and there was no running water." *See* Lunney Aff. ¶ 22. He states that he made "verbal complaints" and that the sink was repaired "on about plaintiff's fifth day in S.H.U." *See id.* (incorporating Am. Compl. ¶ 15(c)). He also states that he did not receive "soap, toothpaste, a toothbrush, and other hygiene items." *See Id.* ¶ 23. While he states that his verbal complaints were ignored, he adds that the problem "was informally resolved on May 29, 2002 when C.O. Lebron of the I.G.R.C. corrected the problem." *See id*

With regard to toiletries and hygiene items, Lunney fails to show that such a denial rose to the level of deliberate indifference to his health or safety. Courts have typically held that temporary deprivations of toiletries do not violate the Eighth Amendment. *See Trammell v. Keane, 338 F.3d 155, 165 (2d Cir.2003)* (deprivation of "toiletries for approximately two weeks-while perhaps uncomfortable-does not pose such an obvious risk to an inmate's health or safety to suggest that the defendants were 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [that they also drew] the inference'") (quoting *Farmer, 511 U.S. at 837)* (alterations in original); *Fernandez v. Armstrong, 2005 WL 733664, at *5-6 (D.Conn. Mar.30, 2005)* (up to 16-day deprivation of toothbrush, toothpaste, soap, and shampoo did not violate the Constitution).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

With regard to Lunney's claim of no running water, defendants have pointed to evidence that Lunney filed a grievance on May 23, 2002, regarding the plumbing problems in his cell, Grievance SS-35563-02, dated May 23, 2002 (reproduced as Ex. J to Lunney Aff.), and that it was repaired the next day. *See* SHU Activity Log, dated May 24, 2002 (reproduced as Ex. D to Lee Reply Decl.). Even if Lunney's cell sink lacked running water for five days, as he claims, he does not show an Eighth Amendment violation given that there is no evidence that he was deprived of water entirely during this period. The "[l]ack of access to running water, by itself, does not constitute the denial of the minimal civilized measure of life's necessities." *James v. Monroe County Jail,* 2005 WL 2030730, at *3 (W.D.N.Y. Aug.23, 2005) (no constitutional violation where inmates claimed they lacked running water from cell sinks for several hours every night for over four months); *see also Johnson v. Comm'r of Corr. Servs.,* 699 F.Supp. 1071, 1074 (S.D.N.Y.1988) (plaintiff confined for one week in a cell with an inoperable sink did not suffer a constitutional violation because he was provided drinks with meals); *Castro v. Chesney,* 1998 WL 767467, at *4 (E.D.Pa. Nov.3, 1996) (no constitutional violation where plaintiff placed in a "dry cell" without running water for several days, given water "sometimes" when he asked for it and water was turned on every other day so he could wash his face and brush his teeth).

### 3. *Personal Involvement*

**\*16** In any event, even if some constitutional deprivation had been shown, Lunney's submission does not provide facts that would show that any particular defendant sued here was personally involved in committing the violation. As the Second Circuit has noted, "[a]n individual cannot be held liable for damages under § 1983 'merely because he held a high position of authority.' " *Back v. Hastings On Hudson Union Free Sch. Dist.,* 365 F.3d 107, 127 (2d Cir.2004) (quoting *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996)). He can only be held liable if he was "personally involved in the alleged deprivation." *Id.* While there are number of ways in which such involvement can be shown, *see, e.g., Back,* 365 F.3d at 127 (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)), Lunney has not provided evidence (as opposed to speculation) as to any of them.

In sum, defendants are entitled to summary judgment on Lunney's claims of a temporary lack of running water, plumbing problems, and denial of personal hygiene items.

### D. *First Amendment Retaliation Claims*

Lunney asserts that he was assaulted by Blot and Frazier because he made verbal complaints about SHU conditions, *see* Lunney Aff. ¶ 24; that Blot threatened him with physical violence on several occasions for his writing of grievances, *see id.* ¶¶ 30-31; that Blot denied him recreation, meals, and showers because of his complaints, *see id.* ¶ 29; and that Fischer threatened to transfer him to Attica for writing grievances, *see id.* ¶ 28 (incorporating Am. Compl. ¶ 15(f)). He also asserts in his amended complaint that Brereton fired him from his position as a porter "as a means of retaliation." Am. Compl. at ¶ 15(g)(2). The defendants argue that these claims are unexhausted and fail on the merits. *See* Def. Mem at 9-12, 12-17; Def. Reply Mem. at 9-10, 11-15.

In its prior ruling, the Court dismissed Lunney's general allegations of threats and harassment because "comments that are merely 'insulting' or 'disrespectful' do not give rise to a constitutional violation." *See Lunney I,* 2005 WL 121720, at *11 (citations omitted). The Court also dismissed Lunney's claim that Fischer threatened to transfer him to another facility for writing grievances because, *inter alia,* Lunney did not allege that he was transferred because he filed grievances against prison officials. *See id.* However, the Court did not dismiss Lunney's claim that he was threatened with physical violence for filing grievances. *See id.* (citing *Hernandez v. Goord,* 312 F.Supp.2d 537, 545 (S.D.N.Y.2004) (threatened bodily injury and threats to inmate's life sufficient to state a claim)). Lunney's retaliation claims re-appeared in somewhat different form in his amended complaint, *see* Am. Compl. ¶ 16(c), which also contains new retaliation claims against Blot, Frazier and Brereton. *See id.* ¶¶ 15(g)(2), 16(h), (i).

### 1. *Law Governing First Amendment Retaliation*

**\*17** The First Amendment protects prisoners from retaliation for engaging in protected speech, including submitting grievances regarding prison conditions. *See Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996) ("[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

by the First and Fourteenth Amendments and is actionable under § 1983.") (citing *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988)). "[I]ntentional obstruction of a prisoner's right to seek redress of grievances 'is precisely the sort of oppression that ... section 1983[is] intended to remedy.' " *Id.,* 89 F.3d at 80 (quoting *Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987)) (alterations in original). A prisoner asserting a retaliation claim must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (citation omitted).

Moreover, in the prison context, the Second Circuit has recognized "the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated." *Colon,* 58 F.3d at 872 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)). Thus, courts "examine prisoners' claims of retaliation with skepticism and particular care." *Colon,* 58 F.3d at 872.

2. *Claims against Fischer*

In his affidavit, Lunney alleges that Fischer "repeatedly threatened" him "in retaliation for his filing of grievances and complaints regarding S.H.U. conditions." *See* Lunney Aff. ¶ 28 (incorporating Am. Compl. ¶ 15(f)) (Lunney "subjected to threats of being transferred to Attica" by Fischer, who "made it quite clear to plaintiff that he did not like the fact that plaintiff was writing grievances and complaints to outside agencies."). He further states that his prison records reflect that Fischer attempted to transfer him "under the reason that plaintiff's behavior in Sing Sing was unsuitable." *See* Lunney Aff. ¶ 28 (incorporating Am. Compl. ¶ 15(f)). While defendants argue that Lunney's claim should be dismissed because he did not properly exhaust the claim in accordance with the PLRA, it is not necessary to reach this question because the claim fails on the merits.

Lunney's First Amendment claim against Fischer is based on his claim that Fischer "threaten[ed]" him in response to his grievance writing. Am. Compl. ¶ 16(c); Lunney Aff. ¶ 28. But Lunney's only specific allegation on this point is that Fischer "did ... *try* to transfer plaintiff but D.O.C.S. officials in Albany,

New York cancelled the transfer." Lunney Aff. ¶ 28 (emphasis added); *see also* Pl. Mem. at 14-17.

This allegation cannot meet the requirement that the plaintiff experience an "adverse action." *Pidlypchak,* 389 F.3d at 380. While "the scope of conduct that can constitute actionable retaliation in the prison setting is broad, it is not true that every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim." *Dawes v. Walker,* 239 F.3d 489, 492-93 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Only retaliatory conduct which would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights" may support such a claim. *Id.* at 493. The Second Circuit has "made clear that this objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Pidlypchak,* 389 F.3d at 381 (citing *Davis v. Goord,* 320 F.3d 346 (2d Cir.2003)).

**\*18** The allegation in the complaint regarding the threats of transfer cannot be objectively viewed as deterring a person of ordinary firmness from exercising First Amendment rights. This is particularly true where Lunney's allegations are devoid of any dates or descriptions of the manner in which Fischer made the alleged threats. Moreover, the lack of dates also makes it impossible to determine whether there was a causal connection between the filing of grievances and the adverse action. Accordingly, summary judgment on this claim should be granted. It is, therefore, unnecessary to reach the question of qualified immunity. *See* Def. Mem. at 34; Def. Reply Mem. at 25. [FN5]

> FN5. Lunney was transferred some time later, in 2004, to Cayuga Correctional Facility, long after the grievances and alleged threats by Fischer were made. *See* Lunney Aff. ¶ 26. Lunney has not alleged any facts regarding this transfer and also has not provided evidence that Fischer caused this transfer. Notably, there is an affidavit from Fischer stating that he was not involved in Lunney's transfer. *See* Fischer Decl. ¶¶ 5-7; *see generally Davidson v. Donnelly,* 2004 WL 1941349, at \*3 (W.D.N.Y. Aug.29, 2004) (no claim for retaliatory transfer where plaintiff provided no evidence on reason for transfer and prison officials gave reasons).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

### 3. *Claims against Blot*

Lunney asserts that (1) Officer Blot denied him showers, meals, and recreation in retaliation for his grievances, *see* Lunney Aff. ¶ 29; (2) that Blot co-signed a misbehavior report against him stemming from an incident to which Blot was not a party; and that Blot subsequently told Lunney, "If I ever hear about you complaining about another officer you'll be sorry. You won't be so lucky next time," *see id.* ¶ 31 (incorporating Am. Compl. ¶ 15(h)); (3) that Blot threatened to harm Lunney physically if Lunney refused Blot's offer of a bribe to stop writing grievances, *see id.* ¶ 30; and (4) Blot assaulted him in retaliation for verbal complaints about the conditions in the SHU. *See id.* ¶ ¶ 24-25.

Defendants contend that each of these claims should be dismissed because Lunney failed to exhaust them and also dismissed on the merits. *See* Def. Reply Mem. at 5-7, 10. Defendants further contend that Blot is entitled to qualified immunity "from plaintiff's retaliation claim involving an alleged false misbehavior report ...." Def. Mem. at 34; Def. Reply Mem. at 29-30.

#### a. *Exhaustion of Claims Against Blot*

As to the four claims with respect to which the exhaustion defense has been raised, we have already discussed why Lunney should be excused from having failed to grieve the assault claim, *see* section III.B.1, and the same reasons that excuse the failure to grieve the assault apply equally to the claim that the motive for the assault was to retaliate for protected activity. Accordingly, there is no need to discuss exhaustion with respect to this aspect of the retaliation claim against Blot.

In addition, we conclude, for the reasons discussed in section III.D.3.c below, that Lunney's claim with respect to the false misbehavior report would fail on the merits. Accordingly, our discussion of exhaustion relates only to claims (1) and (3): that is, the claim regarding the denial of showers, meals, and recreation and the claim regarding the threat of physical violence.

Lunney alleges that Blot said: "If I ever hear about you

complaining about another officer you'll be sorry. You won't be so lucky next time." Am. Compl. ¶ 15(h). He also states that "[Blot] would come in and threaten guys and tell guys 'listen, I'm going to write you up and you will get a new charge,' " Lunney Aff. ¶ 30 (citing Lunney Dep. at 190); and generally, that Blot "threaten[ed] [Lunney] with misbehavior reports, physical beatings and deprivations of privileges if he ... continued to write grievances." Am. Compl. ¶ 15(g). More specifically, in his deposition, Lunney states that Blot became "offended and upset about my writing grievances and he said he didn't like people that wrote grievances"; that he "would complain that he didn't like people writing grievances" and would "criticiz[e]" him for it. Lunney Dep. at 187. Lunney recounts one conversation as follows:

> **\*19** [H]e came to me one day and said "listen, I want you to stop writing grievances." And I said "listen, you guys are doing a lot of things wrong down here." He said "listen, if you don't stop writing grievances I'm going to break your fuckin' neck." He said "you're going to have a hard time in the SHU."

*Id.*

As already discussed in the context of Lunney's excessive-force claim, *see* section III.B the Second Circuit has held that "seemingly available remedies [may be] rendered unavailable by threats," *Hemphill,* 380 F.3d at 688, if a "similarly situated individual of ordinary firmness" would not have "deemed them available." *Id.* (citations and quotations omitted). Likewise, the Second Circuit has held that threats by prison authorities may provide grounds for estoppel if defendants "took affirmative action to prevent [the prisoner] from availing himself of grievance procedures." *Ruggiero v. County of Orange,* 467 F.3d 170, 178 (2d Cir.2006) (citing cases).[FN6]

> **FN6.** The Second Circuit has recognized that "the case law on the PLRA's exhaustion requirement does not always distinguish clearly between (a) cases in which defendants are estopped from asserting non-exhaustion as an affirmative defense, (b) situations in which administrative remedies are not 'available' to the plaintiff ...." *Giano v. Goord,* 380 F.3d 670, 677 n. 6 (2d Cir.2004).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Liberally construed, Lunney's argument can be read as asserting both that (1) his failure to follow the formal exhaustion process should be excused because Blot's threats rendered the formal grievance process effectively unavailable to him and (2) that Blot's exhaustion defense was estopped by Blot's alleged threats.

Lunney's general assertions regarding threats-without the specific of dates or content of threats-might not be sufficient permit a finding on these points. But his assertion that Blot stated "if you don't stop writing grievances I'm going to break your fuckin' neck," Lunney Dep. at 187, coupled with the allegation that Blot had actually assaulted him previously, would be sufficient to allow a factfinder to conclude that a "similarly situated individual of ordinary firmness" would not have deemed the inmate grievance process available with respect to grievances that involve conduct by Blot. *See, e.g., Hepworth v. Suffolk County,* 2006 WL 2844408, at *4-7 (E.D.N.Y. Sept.29, 2006) (inmate beaten and threatened with further violence after testifying against correction officers); *Larry v. Byno,* 2006 WL 1313344, at *4 (N.D.N.Y. May 11, 2006) (physical assault coupled with threat to kill inmate after inmate mailed a complaint); *McCullough,* 2005 WL 3164248, at *3-4 (assault with threat to "get [him]" if he filed another grievance). It also raises questions regarding estoppel as to any claim against Blot. Thus, a genuine issue of material fact exists as to (1) whether administrative remedies, though nominally "available," were functionally available to Lunney to grieve these claims-the deprivation of meals, showers and recreation and the threat of physical violence by Blot-against Blot and/or (2) whether Blot's alleged threats estop defendants from raising exhaustion as an affirmative defense.

We now address the merits of the four claims against Blot.

b. *The Merits of Lunney's Allegation that Blot Denied Him Showers, Meals, and Recreation*

**\*20** Lunney states that he was deprived of showers "at least twice a week." Lunney Dep. at 182. He asserts that this occurred "[b]ecause of problems I was having with Blot and my being vocal about the problems, the conditions of SHU." *Id.* at 183. He asserts that he was supposed to get three showers a week. *See* Pl. Mem. at 22. As to recreation, Lunney states that at least "three or four times a week [ ] Blot would come ... by with the list. He'd ask guys if they want recreation. We'd be

brought down for breakfast. He'd tell me 'you're staying here.' " *Id.* (citing Lunney Dep. at 185-86). Lunney makes no specific statements as to Blot's depriving him of meals. While Blot denies ever depriving Lunney of meals, showers or recreation, *see* Blot Decl. ¶ 4, we accept Lunney's assertions as true for purposes of this motion.

Defendants challenge whether Lunney has established the second and third prongs of a prima facie case of retaliation: namely, whether (1) the deprivations constitute "adverse action," and (2) there is a causal connection between these deprivations and his grievance writing. Def. Mem. at 15.

*i. Adverse Action.* As an initial matter, defendants argue that Lunney's claim lacks sufficient specificity. Def. Reply Mem. at 13. As is true in response to any motion for summary judgment, Lunney was required to provide evidence sufficient to allow a jury to find in his favor. Thus, "[c]onclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998). Lunney's allegations regarding denial of meals are completely lacking in any such specifics. His allegations regarding the denials of showers and recreation, however, are sufficiently detailed to allow a trier of fact to conclude that such denials occurred. Accordingly, we limit our discussion to the issue of whether the denial of showers and recreation constitute "adverse action."

As noted, the Second Circuit has held that while "the scope of conduct that can constitute actionable retaliation in the prison setting is broad, it is not true that every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim." *Dawes,* 239 F.3d at 492-93. Only retaliatory conduct which would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights" may support such a claim. *Id.* at 493. Thus, the conduct must be "specifically directed at plaintiff[ ] and substantial enough to deter legitimate grievances against prison officers." *Salahuddin v. Mead,* 2002 WL 1968329, at *5 (S.D.N.Y. Aug.26, 2002). Conduct that is *de minimis* does not provide this deterrent effect and does not give rise to actionable retaliation. *Dawes,* 239 F.3d at 493; *see also Davidson v. Chestnut,* 193 F.3d 144, 150 (2d Cir.1999) (citing *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir.1982) ("[S]ince there is no justification for harassing people for exercising their constitutional rights [, harassment] need not be great in order to be actionable. Yet, ... [i]t would trivialize the First Amendment to hold that harassment for

exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise ....")) (alterations in original). What is *de minimis* varies according to context. *See* *Dawes,* 239 F.3d at 493 ("[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a[ retaliatory] action taken against them is considered adverse") (alteration in original) (citing *Thaddeus-X v. Blatter,* 175 F.3d 378, 398 (6th Cir.1999)). Thus, in the prison context, not all harms constitute legally sufficient grounds for retaliation claims. *See* *Salahuddin,* 2002 WL 1968329, at *4-5 (citing cases).

**\*21** Case law suggests that the isolated or sporadic denial of privileges do not suffice to state a claim of actionable retaliation. *Chestnut,* 193 F.3d at 150 (remanding to district court on interlocutory appeal where "there [was] a serious question as to whether ... [plaintiff's] asserted one-day denial of an opportunity to exercise, w[as] more than *de minimis"* ); *Snyder v. McGinnis,* 2004 WL 1949472, at *11 (W.D.N.Y. Sept.2, 2004)* (deprivation of meal on two occasions is *de minimis* and does not state a claim for retaliation); *Lyons v. Wall,* 2006 WL 2945256, at *5 (D.R.I. Oct.13, 2006) (sporadic cold showers are *de minimis* ). Here, however, Lunney alleges a routine denial of showers and recreation such that he regularly had one shower a week instead of two, and three to four hours of recreation a week instead of the normal seven. Pl. Mem. at 22 (citing Lee Decl. Ex. J §§ 304.2, 304.3, 304.5; Lunney Aff. Ex. M at 140-142); *see also* *Ortiz v. McBride,* 380 F.3d 649, 655 (2d Cir.2004) (discussing normal conditions of the SHU as two showers a week and one hour of recreation a day). Defendants have pointed to no case where a constant denial of showers and recreation, in the proportions alleged here, was deemed to be *de minimis* as a matter of law.[FN7]

> FN7. While defendants argue that "the alleged denial of meals, recreation and showers did not deter the exercise of plaintiff's rights as evidenced by his many grievances," Def. Mem. at 15, as noted, the test for adverse action is an "objective test [which] applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Pidlypchak,* 389 F.3d at 381 (citing *Davis,* 320 F.3d at 353).

In sum, defendants are not entitled to summary judgment on this point.

*ii. Causal Connection.* Lunney must also show that there was "a causal connection between the protected speech and the adverse action." *Pidlypchak,* 389 F.3d at 380. *Colon* discusses a number of factors relevant to whether a causal connection exists, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation. 58 F.3d at 872-73; *accord Sloane v. Mazzuca,* 2006 WL 3096031, at *14 (S.D.N.Y. Oct.31, 2006); *Baskerville v. Blot,* 224 F.Supp.2d 723, 732 (S.D.N.Y.2002).

Here, a reasonable factfinder might view Blot's decision to deny Lunney recreation and shower privileges as being prompted by Lunney's grievance writing. Lunney states that upon arrival to the SHU, he immediately complained about the conditions of his cell, both verbally and through the filing of written grievances. Lunney Aff. ¶ 24 (incorporating Am. Compl. ¶ 15(c)-(e)). On his third day in the SHU, Officers Blot and Frazier assaulted him, and Blot warned him that he would suffer consequences if he filed a grievance. *Id.* (incorporating Am. Compl. ¶ 15(e)(1)-(2)). Nonetheless, Lunney continued to file grievances in the SHU. *See, e.g.,* Ex. K to Lunney Aff. Blot stated to him that he "didn't like people that wrote grievances" and told him "listen, I want you to stop writing grievances" and that "if you don't stop writing grievances I'm going to break your fuckin' neck" and that "you're going to have a hard time in SHU." Lunney Dep. at 187. At the same time, Lunney states that he was routinely denied showers and recreation. Lunney Aff. ¶ 29. Thus, the evidence for causation centers on (1) the fact that there is no explanation provided for the denial of showers and recreation and (2) the evidence that Blot complained to Lunney about his writing grievances and specifically threatened Lunney about them during the same time period that the denial of showers and recreation was taking place. Lunney Dep. at 186-87. While it may also be reasonable to infer, as defendants argue, that the deprivations, if they did occur, were a result Lunney's "extensive disciplinary history," Def. Mem. at 15, on a motion for summary judgment, the Court must draw "all justifiable inferences" in favor of the non-moving party. *Anderson,* 477 U.S. at 255. Thus, Lunney has raised a genuine issue of material fact as to whether Blot denied showers and recreation in retaliation for Lunney's grievances.[FN8]

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

**FN8.** Defendants have made only a conclusory argument as to qualified immunity on this point, *see* Def. Mem. at 33-34, and thus we do not consider it here.

c. *The Merits of Lunney's Allegation that Blot Filed a False Misbehavior Report*

**\*22** The filing of a false misbehavior report in response to constitutionally protected activity can constitute actionable retaliation. *See Graham,* 89 F.3d. at 79-81 (allegation that defendants filed false misbehavior reports against plaintiff in retaliation for his leadership in filing a grievance to protest the removal of workshop showers); *Jones v. Coughlin,* 45 F.3d 677-78, 680 (2d Cir.1995) (per curiam) (allegation that defendants, in retaliation for plaintiff's filing administrative complaint, filed a false misbehavior report that led to 120 days of punitive segregation).

Lunney asserts that a misbehavior report dated June 22, 2003-approximately six months after he left the SHU-"stemmed from plaintiff having sent letters to several facility staff members"-not including Blot-"complaining about being harassed by another staff member, C.O. Davis." *See* Am. Compl. ¶ 15(h); *see also* Misbehavior Report (reproduced in Ex. G. of Lee Decl.). Officer Gary, one of the officers to whom Lunney had sent the letter, wrote the misbehavior report because Lunney's letters violated facility correspondence rules that prohibit "correspond[ence] with dep[artment] employees [without] the express permission of the superintendent." *See* Lee Decl. Ex. G (citing DOCS Directive 4422). Blot "endorsed" the misbehavior report. *See* Def. 56.1 ¶ 22. Lunney was subsequently found guilty of this charge based on "[his] admissions that [he] willfully wrote to a total of 15 officers including officer Gary," *see* Lee Decl. Ex. G, and sentenced to 30 days' keeplock, loss of packages, loss of commissary, and loss of phone privileges.[FN9] *See id.* Defendants argue that Lunney has not met the elements of a retaliation claim. Def. Mem. at 16-17; Def. Reply Mem. at 14.

**FN9.** This finding of guilt was "apparently overturned," or at least "modified" on appeal, though to what extent and the reason for such action is not clear from the record. *See* Def. Mem. at 16 (citing Lee Decl. Ex. I).

Lunney's claim is simply disposed of based on the evidence that the misbehavior report had a legitimate justification. The Second Circuit has held that, "[r]egardless of the presence of retaliatory motive, ... a defendant may be entitled to summary judgment if he can show dual motivation, *i.e.,* that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin,* 344 F.3d 282, 287-88 (2d Cir.2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). Thus, where a plaintiff has met his "initial burden of showing that an improper motive played a substantial part in defendant's action," the defendant may still obtain summary judgment if the defendant can "show it would have taken exactly the same action absent the improper motive." *Id.; see also Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994) (affirming dismissal on summary judgment because correction officer's actions were of mixed motives and "would have been issued on proper grounds alone."); *see also Sher v. Coughlin,* 739 F.2d 77, 81-82 (2d Cir.1984) (affirming summary judgment dismissal of prisoner's retaliation claim where dual motivation existed for prisoner's transfer to another facility).

**\*23** Assuming without deciding that Lunney had met his initial burden of showing that an improper motive played a substantial part in the decision to discipline him, Lunney concedes that the misbehavior report "stemmed from" a letter he wrote to Officer Gary. Am. Compl. ¶ 15(h). It is undisputed that writing letters to prison guards violates DOCS's policy. *See* DOCS Directive 4422. Lunney has provided no evidence of instances in which prisoners wrote letters to prison guards without receiving disciplinary action. Based on the evidence in the record, it would be purely speculative for a factfinder to conclude that the prison would not have taken the same action against Lunney regardless of any motive it had to punish him for writing grievances. Accordingly, defendants are entitled to summary judgment on this claim.

d. *The Merits of Lunney's Allegation that Blot Threatened Physical Violence*

Lunney states that Blot threatened him physically, both generally in response to his continued filing of grievances, *see* Lunney Aff. ¶¶ 29-30, and specifically in response to his complaint about another officer. *See id.* ¶ 31. Lunney's most specific allegations consist of two statements: (1) "If I ever hear about you complaining about another officer you'll be sorry. You won't be so lucky next time," Am. Compl. ¶ 15(h),

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

and (2) "[I]f you don't stop writing grievances I'm going to break your fuckin' neck." Lunney Aff. ¶ 30 (citing Lunney Dep. at 186-87). He also states more generally that Blot "threaten[ed] [Lunney] with misbehavior reports, physical beatings and deprivations of privileges if he [ ] continued to write grievances." Am. Compl. ¶ 15(g). Defendants do not address this claim in their papers, although they argue that Blot is entitled to qualified immunity on it. *See* Def. Reply Mem. at 30.

Case law reflects that verbal threats may constitute adverse action, though whether they constitute adverse action seems to depend on their specificity and the context in which they are uttered. *Compare Hepworth,* 2006 WL 2844408, at *8-9 (denying summary judgment where "continued verbal threats" that inmate "would receive another beating or be killed" was sufficient "evidence ... such that a reasonable jury could find that the officers unconstitutionally retaliated against [inmate] ... for exercising his First Amendment"); *Brown v. Coughlin,* 965 F.Supp. 401 (W.D.N.Y.1997) (threat to inmate that when officers were "done with him" he would not want to "file any more complaints" sufficient for First Amendment retaliation claim); *Thaddeus-X,* 175 F.3d at 396, 398 ("In the prison context ... [h]arassment, physical threats" would "certainly be adverse" action), *with Bartley v. Collins,* 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (threats such as "we going to get you, you better drop the suit," do not rise to the level of adverse action); *Alicea v. Howell,* 387 F.Supp.2d 227, 237 (W.D.N.Y.2005) ("[Defendant's] alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance against [defendant] do not give rise to a First Amendment retaliation claim," especially considering the fact that the threat was never carried out); *Cruz v. Hillman,* 2002 WL 31045864, at *7 (S.D.N.Y. May 16, 2002) (allegation that correction counselor expressed his dislike for inmates who file civil lawsuits, and later came to plaintiff's cell and said "Green Haven is an open battlefield, so be careful," insufficient to state a retaliation claim). Given the directness and specificity of the alleged threats here, a factfinder could permissibly decide that the threats were such that it would deter an inmate of "ordinary firmness" from engaging in protected activity.

**\*24** Nor should Blot be entitled to qualified immunity. It would not have been "objectively reasonable" for Blot to have believed that it did not violate "clearly established" law regarding retaliation to tell Lunney that he would "break [his] fuckin' neck" if Lunney continued to write grievances. In other words, the contours of the right to be free from First Amendment retaliation were "sufficiently clear that [Blot] would [have] underst[ood] that what he [was] doing violate[d] that right." *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

e. *The Merits of Lunney's Allegation of Retaliatory Assault*

We have already discussed Lunney's claim that the assault by Blot and Frazier constituted an Eighth Amendment violation. *See* section III.B above. In addition, Lunney asserts that this same assault occurred "because of a verbal complaint he made to another officer regarding his not having hygiene items and the problems with his sink and toilet." Lunney Aff. ¶ 24 (incorporating Am. Compl. ¶¶ 15(e)(1)-(2)). In his amended complaint, Lunney specifically pleads this as a First Amendment claim as well. *See* Am. Compl. at ¶ 16(h).

Defendants do not make any arguments regarding this claim specifically. Nonetheless, because they moved for summary judgment as to "plaintiff's First Amendment retaliation claim" generally on the ground that there is no "causal relationship between protected activity and adverse action," Def. Mem. at 2, Lunney was obligated to "come forward with admissible evidence supporting [his] claim" on this point. *Feurtado v. City of New York,* 337 F.Supp.2d 593, 599 (S.D.N.Y.2004) (citing cases) (internal quotation marks omitted).[FN10]

FN10. Because defendants' motion does not contend that verbal complaints cannot constitute constitutionally protected activity, it is unnecessary to reach this question. The Court notes that some case law indicates that a prisoner's oral complaints to prison guards may provide the basis for a retaliation claim under § 1983. *See Smith v. Woods,* 2006 WL 11312347, at *10 (N.D.N.Y. Apr. 24, 2006), *aff'd,* 2007 WL 756410, at *1 (2d Cir. Mar.12, 2007); *Gill v. Riddick,* 2005 WL 755745, at *10 (N.D.N.Y. Mar.31, 2005) (citing cases); *Gaston v. Coughlin,* 81 F.Supp.2d 381, 386 (N.D.N.Y.1999); *Malik'El v. New York State Dept. of Corr. Servs.,* 1998 WL 187459, at *4 (N.D.N.Y. Apr.8, 1998); *but see Garrido v. Coughlin,* 716 F.Supp. 98, 101 (S.D.N.Y.1989) ("verbal confrontation" not protected activity).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

Lunney details that after "attempting to inform another officer, who was confined to a control room at least 45 feet away from plaintiff's cell," *see* Am. Compl. ¶ 15(e), that he lacked certain hygiene items,

> [d]efendants Blot and Frazier approached plaintiff's cell and began to state that plaintiff had better "shut the fuck up or we are coming in there and you will not like the results." After attempting to explain his problems to [them] Officer Frazier appeared to become calm and attempted to resolve plaintiff's complaints. However, defendant Blot stated "I don't give a shit about your fucking problems. File a fucking grievance." Defendant Blot then proceeded to yell to the officer in the control booth to have plaintiff's cell opened.

Lunney Aff. ¶ 24 (incorporating Am. Compl. ¶¶ 15(e)(1)-(2)). According to Lunney, Blot then entered Lunney's cell and assaulted him, *id.,* though Blot denies that this assault ever took place. Blot Decl. ¶ 3.

Here, the sequence of events-a complaint followed by an immediate assault, accompanied by remarks referring to his complaint-would be sufficient for a jury to find that there was a causal connection between Lunney's complaints and the assault. Accordingly, summary judgment cannot be granted to defendants on this claim.[FN11]

FN11. Defendants make no arguments with respect to qualified immunity on this claim or with respect to the First Amendment claim against Frazier (discussed in the next section), and thus we do not consider the doctrine's applicability with respect to these claims.

### 4. *First Amendment Claim Against Frazier*

**\*25** Lunney alleges that Frazier assisted Blot "in assaulting plaintiff in retaliation for plaintiff making complaints." Am. Compl. ¶ 16(i). Once again, defendants argue only generally that plaintiff's First Amendment retaliation claim should be dismissed for failure to establish a causal relationship. Def. Mem. at 2. As to Frazier's particular actions, Lunney claims that he "entered the cell and placed [Lunney] in a choke hold

for several minutes." Am. Compl. ¶ 15(e)(1). Frazier, like Blot, denies Lunney's allegations of unnecessary physical force. Frazier Decl. ¶ 3. For the same reasons just stated, Lunney's allegations are sufficient to allege a causal connection between his complaints and the assault. Thus, defendants must be denied summary judgment as to the claim against Frazier.

### 5. *First Amendment Claim Against Brereton*

Lunney's amended complaint states that he "filed a formal grievance complaint with the I.G.R.C. arguing that he had been fired [from his job as a porter] as a means of retaliation by defendant Brureton." Am. Compl. ¶ 15(g)(2). No further information is provided on this issue. While Lunney makes reference to it in his memorandum of law, Pl. Mem. at 30, he does not address it in his affidavit. Given the conclusory reference in the amended complaint, there is no admissible evidence before the Court that would allow a jury to conclude that Lunney had made out each of the elements of a retaliation claim.

Accordingly, this claim must be dismissed.

### E. *Unfiled Grievances*

Lunney claims that defendant Kober violated his First and Eighth Amendment rights by denying him "access to an effective Inmate Grievance Program," *see* Lunney Aff. ¶ 32, and thus that Kober "deprived plaintiff of his means to petition the government for the redress of grievances." *See* Am. Compl. ¶ 16(e). Specifically, he alleges that "[g]rievances were not timely filed or they were completely ignored," and that Kober stated they "were never received by his office." *See* Lunney Aff. ¶ 32 (incorporating Am. Compl. ¶ 15(i)). He adds that the Sing Sing IGRC "was not operating in accordance with policy," that grievances "were not being timely filed and responded to," that "investigations were biased and or incomplete," and that "appeals were not timely filed." *See* Am. Compl. ¶ 15(i). While defendants argue that this claim is unexhausted, *see* Def. Reply Mem. at 10, it is unnecessary to reach that issue because the claim fails on the merits.

It is well established that a claim of violation of a state grievance procedure is not cognizable in an action under 42

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

U.S.C. § 1983. *See Cancel,* 2001 WL 303713, at *3 ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983"); *accord Davis v. Castleberry,* 364 F.Supp.2d 319, 323 (W.D.N.Y.2005); *Fernandez,* 2005 WL 733664, at *9; *Mahotep v. DeLuca,* 3 F.Supp.2d 385, 390 n. 3 (W.D.N.Y.1998) (citing *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir.1993)).

**\*26** It does not help Lunney's claim if it is construed as one for denial of access to the courts. To state a claim for denial of access to the courts under § 1983, Lunney must demonstrate that defendants "took or [were] responsible for actions that hindered [plaintiff's] efforts to pursue a legal claim." *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003) (internal quotation marks omitted). Only those actions which rise to the level of " 'deliberate and malicious interference' " and which " 'actually impeded his access to the court or prejudiced an existing action' " are sufficient to present a claim. *Green v. Phillips,* 2006 WL 846272, at *11-12 (S.D.N.Y. Mar.31, 2006) (quoting *Cancel v. Goord,* 2001 WL 303713, at *4 (S.D.N.Y. Mar.29, 2001)); *accord Rivera v. Pataki,* 2005 WL 407710, at *17-18 (S.D.N.Y. Feb.7, 2005). The evidence presented by Lunney, however, does not satisfy this standard. The operation of the grievance process is relevant to any access-to-the-courts claim only insofar as the procedure is a prerequisite for the filing of a civil suit under the PLRA. Lunney has not shown how the operation of the grievance procedure denied him such access. Moreover, in light of the fact that prisoners are excused from filing grievances where prison officials prevent them from doing so or make the grievance process not "available," *see, e.g., Brownell,* 446 F.3d at 311-12, any such actions-even if they had been demonstrated-could not be shown to have deprived Lunney of his ability to bring any lawsuit. Thus, this claim too must be dismissed.

### F. *Fourteenth Amendment Due Process Claims*

As in his original complaint, Lunney asserts that his right to due process was violated by two separate actions. First, Lunney claims that Selsky improperly ordered a second disciplinary hearing after the Article 78 proceeding had been filed with respect to the first hearing. *See* Lunney Aff. ¶ 14 (incorporating Am. Compl. ¶ 10). Second, he argues that defendants' failure to provide him with a timely written disposition of his disciplinary hearing was a violation of his due process rights. *See* Am. Compl. ¶¶ 10, 12. This first claim is identical to one

the Court dismissed on the merits in its original ruling, *see Lunney I,* 2005 WL 121720, at *14, and thus the Court will not reconsider it here. Accordingly, we address only the second claim.[FN12]

> **FN12.** The defendants and Lunney discuss the matter of "hearing officer bias" in their summary judgment papers. *See* Def. Mem. at 23-24; Pl. Mem. at 50-52; Def. Reply Mem. at 21-22. However, Lunney did not raise this claim in his amended complaint or in his affidavit and thus we do not consider it.

### 1. *Law Governing Disciplinary Proceedings*

A party asserting a due process claim "must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz,* 380 F.3d at 654 (quoting *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001)). Prisoners subject to disciplinary proceedings can show a liberty interest only if "disciplinary punishment 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *See Hanrahan v. Doling,* 331 F.3d 93, 97 (2d Cir.2003) (per curiam) (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.' " *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004) (quoting *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998)).

**\*27** There is no bright-line rule in determining whether a particular period of confinement in a SHU meets the *Sandin* standard of an "atypical and significant" hardship thereby implicating due process protection. *See id.* (citations omitted). However, as in the original motion, defendants do not argue that Lunney's liberty interests were not implicated by his nine-month sentence of confinement to the SHU-which was later reduced to six months-under the standard established in *Sandin.* It is assumed, therefore, that Lunney's sentence of confinement did implicate a liberty interest for purposes of this motion. Consequently, we consider whether Lunney was denied due process when he was not provided with a written disposition of his disciplinary hearing and when the second

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

hearing was scheduled.

2. *Written Disposition of Disciplinary Hearing*

As noted above, *see* section I.A, Lunney's first disciplinary hearing, in June 2002, resulted in a finding of guilt for which he was sentenced to nine months in the SHU. Lunney appealed this ruling, which was affirmed in August 2002. Lunney then filed an Article 78 petition in the state Supreme Court, which led to an order to show cause directing Selsky to respond to the petition. In October 2002, Selsky rescinded the disciplinary determination and ordered a rehearing on the ground that Lunney had not been given adequate assistance in preparing his defense. The rehearing was held in October 2002, and Lunney was again found guilty and sentenced to nine months in the SHU. He again appealed, arguing this time that he had not received a copy of the hearing disposition. His appeal was denied, although his sentence was reduced to six months because the original sentence had exceeded the guidelines "without further justification." *See* Memorandum, dated Nov. 7, 2002 (reproduced in Ex. J to Selsky Decl., filed July 12, 2005 (Docket # 84) ("Selsky Decl.")). Lunney filed a second Article 78 petition with respect to the rehearing, and in August 2003, a judge of the State Supreme Court dismissed the original misbehavior report and concluded that the failure to provide Lunney with a copy of the hearing disposition was a violation of due process.

With regard to the timing and manner of notifying Lunney about the hearing disposition, Lunney acknowledges that he received oral notification of the result on October 17, 2002. *See* Def. 56.1 ¶ 12; Lunney Aff. ¶ 12. It is undisputed that he also received a tape recording of the hearing on this date, and that the tape "contained all [of] the information contained in the written decision including the evidence relied upon and reasons for the penalty imposed." *See* Def. Reply Mem. at 23.[FN13]

FN13. Lunney wrote a letter to Donald Selsky, *see* Letter, dated Nov. 14, 2002 (reproduced in Ex. K to Selsky Decl.), stating that the original tape he received was defective, and requesting a new one. Defendants state, and Lunney does not dispute, that he received a new tape around that time. *See* Def. Mem. at 24.

The written disposition stated that it was based on "the written report by Officer Hadzovic and because it was recovered in the locker which was lock [sic]. Also from the testimony of Sgt. Guadagno who stated that the showers are normally completed by 7:15-7:30 PM." *See* Superintendent Hearing Disposition Rendered, dated Oct. 17, 2002 (reproduced in Ex. H to Selsky Decl.). It noted the reasons for the disposition as: "to impress upon this person the seriousness of this act and to act a[s] a deterrent to other[s]. Also that the possession of illegal weapons in a correctional facility is very detrimental to the safety and security of all those that work and live [h]ere, and this will not be tolerated." *See id.* Lunney makes no allegations regarding what was or was not on the tape. Nor does he allege that the written decision contained any information that was not on the tape.

**\*28** In its original ruling on this claim, this Court allowed Lunney's claim regarding his failure to receive a written disposition of his disciplinary hearing to proceed because "the right to receive a 'written statement of the disposition' [is] a requirement that has been in place since the Supreme Court's decision in *Wolff v. McDonnell* [418 U.S. 539, 563 (1974) ]." *See Lunney I,* 2005 WL 121720, at \*13 (citing *Luna v. Pico,* 356 F.3d 481, 487 (2d Cir.2004)); *see also Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir.1999); *McCann v. Coughlin,* 698 F.2d 112, 121-22 (2d Cir.1983); *Higgins v. Coombe,* 2002 WL 362776, at \*2 (S.D.N.Y. Mar.6, 2002); *Silva v. Sanford,* 1998 WL 205326, at \*6 (S.D.N.Y. Apr.24, 1998). The Court noted at that time that the defendants might be able to defeat the due process claim based upon additional facts (not contained in the complaint) showing, for example, that Lunney was informed of the disposition or was otherwise given the opportunity to obtain it. *Lunney I,* 2005 WL 121720, at \*13. In addition, the Court left open the possibility that the defendants could show entitlement to qualified immunity. *Id.*

Prison disciplinary hearings are subject to a harmless error analysis. *See Powell v. Coughlin,* 953 F.2d 744, 750 (2d Cir.1991)* ("If a person may be convicted and obliged to serve a substantial prison sentence notwithstanding a constitutional error determined to be harmless, surely the conditions of confinement of a sentenced prisoner may be made temporarily more severe as discipline for a prison rules infraction despite a harmless error in adjudicating the violation.") (internal citations omitted); *Louis v. Ricks,* 2002 WL 31051633, at \*11 (S.D.N.Y. Sept.13, 2002) (citing *Powell,* 953 F.2d at 750). Defendants now argue that any failure to provide Lunney with a written disposition of the result of his disciplinary hearing in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)
(Cite as: 2007 WL 1544629 (S.D.N.Y.))

a timely fashion was harmless, because: (1) "there was no information contained in the written hearing decision not provided to plaintiff before his final challenge to the hearing decision and penalty," *see* Def. Reply Mem. at 23; (2) after receiving a tape recording of the hearing which contained the rationale, "he did not add any new substantive arguments related to the rationale ... because he had already made the best arguments possible," *see* Def. Mem. at 26; and (3) his sentence was reduced for exceeding the guidelines, despite his failure to raise the issue on appeal. *See* Def. Reply Mem. at 23. Thus, defendants argue, the claim must fail. *See* Def. 56.1 ¶¶ 12, 35; Def. Mem. at 22-23; Def. Reply Mem. at 25-27.

Lunney does not contradict any of the relevant facts asserted by defendants on this point. Rather, he states that although his punishment at the second disciplinary hearing was in the end reduced for exceeding the guidelines, he never made this challenge on appeal. *See* Pl. Mem. at 57. He uses this fact to argue that "[p]erhaps if plaintiff had received a copy of the disposition paperwork, he could have argued on appeal that the penalty ... exceeded the guidelines." *See id.* This is the only harm Lunney points to based on his not having received the written disposition.

**\*29** Lunney's argument fails for two reasons. First, he was aware of his nine-month sentence following the disciplinary hearing. *See* Def. 56.1 ¶ 12 (citing Lunney Dep. at 93, 100-101). Thus, nothing prevented Lunney from raising the alleged illegality of the nine-month sentence even without a copy of the actual written disposition. Second, Lunney has not shown that there was any potential for any other outcome had he been provided with a copy of the written disposition. For example, he makes no argument that he could have received an even greater sentence reduction had he had access to the written hearing disposition. Given that the error in the sentence was remedied in November 2002 prior to his serving six months in confinement, any failure on his part to raise the argument that his sentence was incorrect was necessarily harmless.

*Conclusion*

For the foregoing reasons, defendants' motion should be granted, with the exception of the portion of their motion concerning Lunney's claim of (1) excessive force against Blot and Frazier and (2) his First Amendment retaliation claims (a)

against defendant Blot based on the allegedly retaliatory assault, threats, and deprivation of recreation and showers (b) against defendant Frazier for his participation in the retaliatory assault. [FN14]

> [FN14.] Lunney asserts in his amended complaint that Fischer subjected him to "forced labor without pay" while he was in the SHU, *see* Am. Compl. ¶ 16(c). However, this claim is not explained in his affidavit. Nor is any evidence supplied to support it. Accordingly, it is too vague to constitute the basis for a claim and it has not been discussed herein.

## *PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. *See also* Fed.R.Civ.P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Lewis A. Kaplan, 500 Pearl Street, New York, New York 10007, and to the undersigned at the same address. Any request for an extension of time to file objections must be directed to Judge Kaplan. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140, 144-45, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

S.D.N.Y.,2007.
Lunney v. Brureton
Not Reported in F.Supp.2d, 2007 WL 1544629 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

**C**
Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Larry TINSLEY, Plaintiff,
v.
Gary GREENE, Deputy Superintendent of Great
Meadow Correctional Facility; Jim Lanfear,
Maintenance Supervisor, Great Meadow Correctional
Facility; Gary Yule, Corrections Officer, Great Meadow
Correctional Facility; and David Roberts, Senior
Counselor, Great Meadow Correctional Facility,
Defendants.
**No. 95-CV-1765 (RSP/DRH).**

March 31, 1997.

Larry Tinsley, Pro Se.

Dennis C. Vacco, New York State Attorney General,
Darren O'Connor, Assistant Attorney General, of counsel,
for Defendants.

ORDER

POOLER, District Judge.

**\*1** The above matter comes to me following a
report-recommendation and order by Magistrate Judge
David R. Homer, duly filed on the 13th day of September,
1996. Dkt. No. 24. Following ten days from the service
thereof, the clerk has sent me the entire file, including any
objections thereto. Plaintiff Larry Tinsley filed objections.
Dkt. Nos. 25, 26.

In his report-recommendation, Magistrate Judge Homer
advises that Tinsley failed to establish or raise a genuine
issue of material fact regarding the nature of his

confinement. Report-recommendation, Dkt. No. 24, at
9-10. There is no dispute that prison officials confined
Tinsley to keeplock and loss of some privileges for 60
days after they conducted a search of his cell, found a
marijuana cigarette in the cell, and found Tinsley guilty of
possessing a controlled substance after a Tier III
disciplinary hearing. Tinsley's conviction and sentence
were affirmed on administrative appeal. In his lawsuit
under 42 U.S.C. § 1983, Tinsley raises several charges to
the manner in which defendants conducted the search and
disciplinary hearing. However, Tinsley failed to specify in
any manner that his punishment posed an "atypical and
significant hardship on [him] in relation to the ordinary
incidents of prison life." *Sandin v. Connor,* 515 U.S. 472,
----, 115 S.Ct. 2293, 1300, 132 L.Ed.2d 418, ---- (1995).
Without this showing, plaintiff failed to allege a
deprivation of his Fourteenth Amendment due process
liberty interest, and his civil rights claim must fail. *Id.*

In his objections to the report-recommendation, Tinsley
makes general attacks regarding the alleged bias of
Magistrate Judge David Homer and argues that the
magistrate judge has misconstrued his claims. Plaintiff
also asks me to reconsider defendants' summary judgment
motion and review plaintiffs memorandum opposing the
motion. However, Tinsley has not raised any allegation
regarding the nature of his punishment, which is the
threshold issue under *Sandin.* I have reviewed the entire
file in this matter, including plaintiff's many submissions,
and I find that he failed to raised any issue of fact to
support an alleged deprivation of his due process liberty
interests. Magistrate Judge Homer's thorough
report-recommendation is neither biased nor a
mischaracterization of plaintiffs claims.

For the foregoing reasons, it is therefore

ORDERED that the report-recommendation of September
13, 1996, is approved, and

ORDERED that plaintiffs' motion for default summary
judgment is denied as moot, and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

ORDERED that defendants' motion for summary judgment is granted, and it is further

ORDERED that the clerk serve a copy of this order upon the parties by regular mail.

IT IS SO ORDERED.

HOMER, United States Magistrate Judge.

REPORT-RECOMMENDATION AND ORDER [FN1]

> FN1. This matter was referred to the undersigned for report and recommendation by United States District Judge Rosemary S. Pooler pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

The plaintiff a New York State Department of Correctional Services (DOCS) inmate currently confined at the Great Meadow Correctional Facility (Great Meadow), brought this pro se action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants violated his rights under the Fourth and Fourteenth Amendments in connection with a search of his cell and ensuing disciplinary hearing. Plaintiff seeks compensatory and punitive damages as well as injunctive relief.

*2 Presently pending are defendants' motion for summary judgment (Docket No. 17), plaintiff's letter-memorandum requesting summary judgment by default (Docket No. 11), and plaintiff's motions for a pre-trial conference (Docket No. 20) and for appointment of counsel (Docket No. 21). For the reasons stated below, it is recommended that the defendants' motion be granted and that plaintiff's motions be denied.

## I. BACKGROUND

On October 30, 1995, while plaintiff was incarcerated at Great Meadow, defendant Greene received information from a confidential source that plaintiff was concealing escape materials. Defendant Greene ordered the search of plaintiff's prison cell. The search was executed by

Corrections Officer Rando and defendant Yule and was supervised by Sergeant Smith. No escape materials were found. However, the officers found a rolled cigarette in plaintiff's cell. The cigarette tested positive for marijuana. Plaintiff was placed in keeplock [FN2] and was given a contraband receipt for the cigarette that was removed from his cell.

> FN2. "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46 F.3d 189, 192 (2d Cir.1995); N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (1995).

Plaintiff was served with a misbehavior report which charged him with possession of a controlled substance. A Tier III disciplinary hearing [FN3] was commenced on November 3, 1995 before defendant Lanfear as the hearing officer. During the hearing, plaintiff claimed that defendant Greene failed to corroborate the reliability of the confidential informant, the search was improperly supervised, he did not receive the requisite contraband slip, defendants did not remove any contraband item from plaintiff's cell, and defendants failed to sign the misbehavior report. Plaintiff also objected when witnesses were not called in the order he had requested.

> FN3. DOCS regulations provide for three tiers of disciplinary hearings depending on the seriousness of the misconduct charged. A Tier III hearing, or superintendent's hearing, is required whenever disciplinary penalties exceeding thirty days may be imposed. N.Y. Comp.Codes R. & Regs. tit. 7, §§ 254.7(iii), 270.3(a) (1995); Walker v. Bates, 23 F.3d 652, 654 (2d Cir.1994), cert. denied, 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995).

At the conclusion of the hearing on November 7, 1995, defendant Lanfear found plaintiff guilty based upon the

statement in the misbehavior report submitted by C.O. Rando endorsed by C.O. Yule. Testimony during hearing by C.O. Yule verified the report and stated the substance

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

was found in Tinsley's cell. Testimony during hearing by Sgt. Sawyer stated he received the item found by C.O. Rando and tested same which proved positive for controlled substance. Testimony was considered during hearing by Tinsley.

Defs.' Statement Pursuant to Rule 7.1(f) (Docket No. 17), Ex. A, p. 16. Plaintiff was sentenced to confinement in keeplock for sixty days and loss of packages, commissary and telephone privileges for sixty days. Shortly after this action was commenced, plaintiff's conviction and sentence were affirmed on administrative appeal.

## II. SUMMARY JUDGMENT

### A. Legal Standard

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party. Federal Deposit Ins. Corp. v. Giammettei, 34 F.3d 51, 54 (2d Cir.1994); see also Heyman v. Commerce and Industry Ins. Co., 524 F.2d 1317, 1320 (2d Cir.1975). Once the moving party has provided sufficient evidence to support a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed.R.Civ.P. 56(e); accord Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir.1994).

*3 The trial court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmovant. American Cas. Co. of Reading Pa. v. Nordic Leasing, Inc., 42 F.3d 725, 728 (2d Cir.1994); see also Eastway Construction Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir.1985). The nonmovant may defeat summary judgment by producing specific facts showing that there is a genuine issue of material fact for trial. Celotex Corp. v.

Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Discussion

The defendants move for summary judgment on the grounds that (1) plaintiff's due process allegations fail to state a claim, (2) plaintiff's hearing was conducted in accordance with constitutional requirements, (3) the search of plaintiff's cell did not violate any of plaintiff's constitutional rights, and (4) defendants are entitled to qualified immunity.

### 1. Due Process Liberty Interest

Plaintiff contends that his due process rights were violated because the November 3-7, 1995 disciplinary hearing was improperly executed, and as a result, he was wrongly confined to sixty days keeplock.[FN4] In their motion for summary judgment, defendants contend that under Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), plaintiff lacked any liberty interest protected by the Due Process Clause.

> FN4. New York regulations permit placement in keeplock for both disciplinary and administrative reasons. These include, among others, punishment for misconduct and protective custody. N.Y. Comp.Codes R. & Regs. tit. 7, § 301.1-.7 (1995).

A due process claim as alleged by plaintiff will lie under section 1983 only where the alleged violation infringed a cognizable liberty interest. Allison v. Kyle, 66 F.3d 71, 74 (5th Cir.1995). Under Sandin, a court must first determine whether the deprivation of which an inmate complains merits the protections afforded by the Due Process Clause. A protected liberty interest

will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force. nonetheless imposes atypical and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

*significant hardship on the inmate in relation to the ordinary incidents of prison life.*

*Id.* at 2300 (emphasis added). The Court held that confinement of the plaintiff for thirty days in a segregated housing unit infringed no liberty interest protected by the Due Process Clause. *Id.* at 2302.

At first blush *Sandin* appeared to mark a radical change in the litigation of inmates' due process claims. It appeared to suggest that the number of sufficiently stated claims would be drastically reduced. *See Orellana v. Kyle,* 65 F.3d 29, 31-32 (5th Cir.1995), *cert. denied,* 516 U.S. 1059, 116 S.Ct. 736, 133 L.Ed.2d 686 (1996) ("it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status.... [T]he ambit of [inmates'] due process liberty claims has been dramatically narrowed.").

Indeed, several circuit courts have rejected prisoners' due process claims under *Sandin* where the deprivation complained of was solely confinement in segregated housing. *See, e.g., Pichardo v. Kinker,* 73 F.3d 612, 613 (5th Cir.1996) (indefinite confinement in administrative segregation for affiliation with gang not atypical and significant under *Sandin* ); *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir.1995), *cert. denied,* 517 U.S. 1196, 116 S.Ct. 1690, 134 L.Ed.2d 791 (1996) (segregation without more implicates no liberty interest); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir.1995)(placement in administrative segregation not atypical and significant in context of life sentence).

*4 Several judges in this district have adopted this position. *See Polanco v. Allan,* No. 93-CV-1498, 1996 WL 377074, at *2 (N.D.N.Y. July 5, 1996) (McAvoy, C.J.) (confinement in a special housing unit (SHU) for up to one year not protected by Due Process Clause); *Figueroa v. Selsky,* No. 91-CV-510 (N.D.N.Y. Oct. 5, 1995) (Scullin, J.) (seven and one-half months in SHU not protected); *Delaney v. Selsky,* 899 F.Supp. 923, 927 (N.D.N.Y.1995) (McAvoy, C.J.) (197 days in SHU not protected); *Ocasio v. Coughlin,* No. 94-CV-530 (N.D.N.Y. Feb. 5, 1996) (Scullin, J.) (180 days in SHU not protected); *Gonzalez v. Coughlin,* No. 94-CV-1119

(N.D.N.Y. Jan. 10, 1996) (Report-Recommendation of M.J. Hurd) (163 days in keeplock not protected), *adopted,* (N.D.N.Y. May 6, 1996) (Cholakis, J.), *appeal docketed,* No. 96-2494 (2d Cir. June 10, 1996); *Taylor v. Mitchell,* No. 91-CV-1445 (N.D.N.Y. Feb. 5, 1996) (Cholakis, J.) (sixty days in SHU not protected); *Cargill v. Casey,* No. 95-CV-1620, 1996 WL 227859, at *2 (N.D.N.Y. May 2, 1996) (Pooler, J.) (dismissing as frivolous complaint alleging due process violation resulting in keeplock confinement for thirty days). Under these cases, based solely on its duration, plaintiff's confinement in keeplock for sixty days would not constitute a cognizable liberty interest under *Sandin.*

Other circuits, however, have viewed *Sandin* less as a durational, bright line bar to statement of a claim than as an additional issue of fact for litigation. *See, e.g., Bryan v. Duckworth,* 88 F.3d 431, 433-34 (7th Cir.1996) (question of fact whether disciplinary segregation was atypical and significant under *Sandin* ); *Williams v. Fountain,* 77 F.3d 372, 374 n. 3 (11th Cir.1996) (noting *Sandin* decided by only 5-4 majority and holding that segregation for one year provided basis for assuming atypical and significant deprivation under *Sandin* ); *Gotcher v. Wood,* 66 F.3d 1097, 1101 (9th Cir.1995) (placement in disciplinary segregation presents issue of fact whether it constitutes an atypical and significant deprivation under *Sandin* ).

The Second Circuit appears generally to be following the Seventh, Ninth and Eleventh Circuits. The Second Circuit has not yet definitively addressed the effect of *Sandin* on its prior holdings. *See Rodriguez v. Phillips,* 66 F.3d 470, 480 (2d Cir.1995). It has recently held, however, that *Sandin* does apply retroactively and, it appears, that a plaintiff bears the burden of proving that the deprivation in question imposed an atypical and significant hardship. *See Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996); *Samuels v. Mockry,* 77 F.3d 34, 37-38 (2d Cir.1996); *see also Giakoumelos v. Coughlin,* 88 F.3d 56, 62 (2d Cir.1996) (dicta that whether confinement in SHU is "atypical and significant" under *Sandin* presents question of fact). One judge in this district has concluded from these cases that fact-finding is required to resolve whether a deprivation is atypical and significant. *Compare Silas v. Coughlin,* No. 95-CV-1526, 1996 WL 227857, at *1 (N.D.N.Y. April 29, 1996) (Pooler, J.) (denying motion to dismiss due process claim where plaintiff was confined in SHU for 182 days, holding that Second Circuit's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

interpretation of *Sandin* mandated further fact-finding as to nature of plaintiff's alleged deprivation from confinement), *with Cargill v. Casey, supra* (due process claim based on confinement in keeplock for thirty days dismissed as frivolous).

**\*5** Under these cases, consideration must be given to whether a plaintiff has established, or raised, a genuine question of fact concerning his disciplinary confinement. Here, plaintiff has raised no question of fact concerning his confinement in keeplock. Plaintiff has not alleged rare, unique or unusual hardships of the kind cited in *Sandin* as examples of atypical and significant deprivations. 515 U.S. at ----, 115 S.Ct. at 2300 (transfer to a mental hospital and involuntary administration of psychotropic drugs), or that detention in keeplock imposed a hardship on plaintiff because of his special, unique or unusual condition while incarcerated. *See Delaney v. Selsky,* 899 F.Supp. at 927-28 (question of fact whether confinement in SHU created atypical and significant deprivation for inmate who alleged such confinement caused back problems because of his unusual height of nearly seven feet).

Segregated confinement is a known and usual aspect of incarceration in the New York prison system. *See Sandin v. Conner,* 515 U.S. at ----, 115 S.Ct. at 2301 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). The existence of keeplock has been authorized by statute, N.Y. Correct. Law § 112(1) (McKinney 1987), and implemented by DOCS regulations. N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (1995). Those regulations describe the conditions and restrictions of confinement in keeplock. *Id.* at pts. 302-05. The deprivations are, therefore, part of the New York prison "regime ... to be normally expected" by one serving a sentence in that system. *Sandin v. Conner,* 515 U.S. at ----, 115 S. Ct. at 2302.

Moreover. confinement in keeplock or SHU may result not only from the imposition of discipline, as here. Inmates may also be placed in keeplock or SHU for reasons of administration, N.Y. Comp.Codes R. & Regs. tit. 7, § 301.4(b) (1995); protection, *id.* at § 301.5; detention, *id.* at § 301.3; reception, diagnosis and treatment, *id.* at pt. 306; or for any other reason. *Id.* at 301.7(a). The conditions for inmates confined in keeplock,

including plaintiff, are the same regardless of the reason for placement there. *Id.* at pts. 302-05.[FN5]

> FN5. Inmates confined for reasons of protection receive somewhat greater privileges. *See, e.g.,* N.Y. Comp.Codes R. & Regs. tit. 7, § 330.4 (1995) (three hours per day outside cell).

Inmates in the New York system have no right to be incarcerated in any particular institution, cell or block of cells, nor do they enjoy a right to be housed in the general prison population or to participate in any particular program offered at an institution. *Cf. Meachum v. Fano,* 427 U.S. 215, 226, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (no right to remain in particular prison created by state law); *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (right to good time credits created by state statute). Such matters are committed to the discretion of prison authorities. This grant of broad discretion to prison authorities comports with a principle rationale of *Sandin* that

federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.... Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims....

**\*6** 515 U.S. at ---- - ----, 115 S.Ct. at 2299-2300.

Here, plaintiff contends at best that his keeplock confinement was "atypical and significant" under *Sandin* because it subjected him to retaliation, caused closer monitoring by DOCS, affected his transfer to other institutions, and impaired his eligibility for certain prison programs. Pl. Mem. of Law at p. 21. These contentions are conclusory and unsupported in any way. They are also unsworn and unsigned. For these reasons alone, plaintiff's contentions should be rejected as failing to raise any issue of fact under *Sandin.*

On their merits as well, however, these contentions should be rejected. While there may be cases where confinement in keeplock might subject an inmate to retaliation from

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

other inmates or guards such that keeplock confinement imposed "atypical and significant" hardships, no such hardship has been demonstrated here by the non-specific, conclusory assertions of plaintiff. As to the contentions regarding plaintiff's monitoring status and his eligibility for transfer and prison programs, all concern matters for which plaintiff has no special rights or interests, all were known to follow from disciplinary confinement as a regular part of DOCS' regime, and plaintiff has asserted no hardship atypical or significant as to him concerning these matters.

For these reasons plaintiff has failed to meet his burden of demonstrating the existence of any factual issue under *Sandin.* Accordingly, defendants' motion on this ground should be granted.

2. Due Process

Defendants assert that, notwithstanding *Sandin,* plaintiff was not denied due process.

The Due Process Clause requires that an inmate faced with disciplinary confinement has a right to at least twenty-four hours advance notice of the charges against him and to be informed of the reasons for the action taken and the evidence relied upon by the hearing officer. In addition, an inmate has the right to call witnesses and present evidence in his defense "when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell,* 418 U.S. 539, 564-66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *McCann v. Coughlin,* 698 F.2d 112, 121-22 (2d Cir.1983). These rights implicitly include the right to make a statement in the inmate's defense and the right to marshal the facts. *See Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *see also Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986).

Where an inmate is illiterate or where the charges are unusually complex, the inmate is entitled to seek the assistance of another inmate or an employee. *Wolff v. McDonnell,* 418 U.S. at 570. The Second Circuit has extended this right, and directed that inmates who are

confined pending a hearing be provided with some form of assistance. *Eng v. Coughlin,* 858 F.2d 889, 897-98 (2d Cir.1988). Corrections officials are required only to provide inmates with the opportunity to exercise these due process rights. *See, e.g., Maiid v. Henderson,* 533 F.Supp. 1257, 1273 (N.D.N.Y.), *aff'd,* 714 F.2d 115 (2d Cir.1982) ("although [the inmate] had the right to call witnesses at his hearing, there is no evidence in the record that he ever invoked this right").

**\*7** Here, plaintiff argues first that the hearing officer failed to call witnesses in the requested order. However, due process does not mandate that plaintiff be permitted to call his witnesses in a particular order.

Second, plaintiff alleges that the hearing officer failed to conduct an in camera inquiry into the original source of information on which the search was authorized to determine if that source was reliable. However, the issues at the hearing were the results of the search, not the reasons why the search was initiated. The hearing officer's decision did not rest in any part on the information from the confidential informant. Due process thus did not require inquiry into the reliability of the original information.

Third, plaintiff contends that although the original misbehavior report contains the signatures of both defendant Yule and Officer Rando, his copy reflects only defendant Yule's signature. However, an inmate has no right to receive a statement of charges signed by any particular official.[FN6]

> FN6. A misbehavior report is to be made by the employee who has observed the incident. Where another employee has personal knowledge of the facts, he shall, where appropriate, endorse his name on the other employee's report. N.Y. Comp.Codes R. & Regs. tit. 7, § 251-3.1(b) (1995). The misbehavior report here was signed by J. Rando and endorsed by G. Yules as an employee witness, and it is endorsed by the area supervisor. *See* Defs.' Statement Pursuant to Rule 7.1(f), Ex. A, p. 1, Inmate Misbehavior Report.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

Fourth, plaintiff claims that defendant Roberts failed to provide him with various documents plaintiff requested pursuant to New York's Freedom of Information Law after the disciplinary hearing concluded. This claim as well falls outside the scope of the Due Process Clause as described by the cases discussed above. Defendants' failure to provide the requested documents did not violate plaintiff's constitutional right.

Accordingly, defendants' motion should be granted on this ground as well. FN7

> FN7. Throughout his complaint and pleadings, plaintiff refers jointly to his right to due process/equal protection. The facts and arguments in plaintiff's complaint and pleadings point only to a due process claim. No facts or arguments relating to the Equal Protection Clause are asserted. Nevertheless, to the extent plaintiff's complaint is deemed to assert a claim for violation of the Equal Protection Clause, defendants' motion for summary judgment should be granted as to that claim as well.

3. Cell Search

Plaintiff alleges that the search of his cell on October 30, 1995 violated his Fourth Amendment protection against unreasonable searches and seizures. FN8 In *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Id.* at 526. Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights. *DeMaio v. Mann,* 877 F.Supp. 89, 95 (N.D.N.Y.1995) (Kaplan, J.). Plaintiff thus may assert no cause of action here based on an alleged violation of his Fourth Amendment rights. FN9 Defendants' motion for summary judgment as to claims regarding the search of plaintiff's cell should be granted.

> FN8. In his complaint plaintiff also appears to allege that the search violated his Fourteenth Amendment right to due process because he received a receipt for the seizure of the

marijuana five hours after the search was conducted and never received any report of the search. To the extent plaintiff asserts such a claim, summary judgment should be granted to the defendants for the reasons set forth in subsections 1 and 2 above.

> FN9. Nor can an inmate recover under section 1983 for intentional destruction of his personal property by a state employee, as long as the state provides a meaningful post-deprivation remedy. *Hudson v. Palmer,* 468 U.S. at 533. New York provides such a remedy in section 9 of the New York Court of Claims Act. *Smith v. O'Connor,* 901 F.Supp. 644, 647 (S.D.N.Y.1995). Plaintiff may pursue any claim regarding destruction of his personal property in state court.

4. *Qualified Immunity*

Defendants argue in the alternative that they are entitled to summary judgment on the ground of qualified immunity.

A government official is entitled to qualified immunity if his or her conduct did not violate "a clearly established" constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Wright v. Smith,* 21 F.3d 496, 500 (2d Cir.1994). The contours of the right must be established to the extent that a reasonable official would recognize his acts violated that right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The following factors must be considered to determine whether a right is clearly established:

**8** (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question, and (3) whether under pre-existing law a reasonable defendant official would have understood that his or her acts were unlawful.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). A determination in favor of a public officer based on qualified immunity is appropriate when, at the time the officer was acting, the right in question was not clearly established or, even if the right was established, it was not objectively reasonable for the official to recognize that his conduct violated the right. *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993); *Ying Jing Gan v. City of New York,* 996 F.2d 522 (2d Cir.1993).

Here, among other reasons, the defendants could not reasonably have known that the search of plaintiff's cell violated any of his Fourth Amendment rights or that plaintiff's due process rights were violated by the failure to call witnesses in the order requested by plaintiff. *Cf. Walker v. Bates,* 23 F.3d 652, 656-57 (2d Cir.1994), *cert. denied,* 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995) (prison disciplinary hearing officer entitled to qualified immunity in suit claiming violation of due process from denial of prisoner's right to call witnesses in disciplinary hearing); *Cookish v. Powell,* 945 F.2d 441, 449 (1st Cir.1991) (prison official entitled to qualified immunity from charge of violating prisoner's Fourth Amendment rights by conducting body cavity search in view of prison guards of opposite sex). Therefore, the defendants' motion on this ground should be granted.

### III. APPOINTMENT OF COUNSEL

Also pending is a renewed application by plaintiff for appointment of counsel (Docket No. 21). A review of the file in this matter reveals that the issues in dispute in this case are not overly complex. Further, there has been no indication that plaintiff has been unable to investigate the critical facts of this case. Finally, no special reason appears why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. Therefore, based upon the existing record in this case, appointment of counsel is unwarranted.[FN10]

> **FN10.** Also pending is plaintiff's motion for a pre-trial conference and evidentiary hearing (Docket No. 23). This motion is untimely and is hereby denied. Plaintiff has also moved for summary judgment by default (Docket No. 11) in

response to defendants' request for an extension of time to answer the complaint. This extension was granted by order dated March 15, 1996 and defendants have answered. Accordingly, it is recommended that this motion be denied as moot.

### IV. CONCLUSION

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion for summary judgment be GRANTED; and it is further

RECOMMENDED that plaintiff's motion for summary judgment by default be DENIED; and it is hereby

ORDERED that plaintiff's renewed motion for appointment of counsel is DENIED without prejudice; and it is further

ORDERED that plaintiff's motion for a pre-trial conference and an evidentiary hearing is DENIED; and it is further

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon the parties to this action.

*9 Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1997.
Tinsley v. Greene

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

1998 WL 219588
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Tim MAKAS, Plaintiff,

v.

New York State Department of Motor Vehicles,
Keybank (alias Keycorp), Trans Union, Defendants.

No. 97–CV–1892 (NPM).   |   April 29, 1998.

**Attorneys and Law Firms**

Tim Makas, pro se, Cottekill.

Honorable Dennis C. Vacco, Attorney General of the State
of New York, Attorney for Defendant New York State
Department of Motor Vehicles, Albany, Anthony Pietrafesa,
Esq., Assistant Attorney General, Keith E. Kammerer, Esq.,
Assistant Attorney General.

Hiscock & Barclay, LLP, Attorneys for KeyBank National
Association, Albany, John Langan, Esq., Michael J. Smith,
Esq., of Counsel.

**ORDER**

MCCURN, S.J.

 **\*1** Before the court is plaintiff Tim Makas' motion for re-
argument pursuant to Local Rule 7.1(g) of the Local Rules of
the Northern District of New York. In essence, plaintiff seeks
to have this court reconsider its Memorandum–Decision
and Order dated March 23, 1998. In that Memorandum–
Decision and Order the court granted defendants New York
State Department of Motor Vehicles' and Keybank's motions
to dismiss plaintiff's complaint pursuant to Fed. R. Civ.
Proc. 12(b)(6) and denied plaintiff's cross motions to amend
his complaint, to compel discovery, and to require that
defendants "compel, cease and desist" harming plaintiff. *See
Makas v. New York State Dep't of Motor Vehicles,* 97–CV–
1892, 1998 WL 146251 (N.D.N.Y. Mar.23, 1998).

As a preliminary matter, the court observes that plaintiff's
motion is untimely. Local Rule 7.1(g) provides, in pertinent
part, that "[m]otions for reconsideration or reargument,
unless otherwise governed by Fed.R.Civ.P. 60 shall be
served not later than ten (10) days after the entry of the
challenged judgment, order, or decree." L.R. 7.1(g). [1] The
Memorandum–Decision and Order was filed on March 23,
1998. Thus, excluding intermediate Saturdays and Sundays
pursuant to Rule 6 of the Federal Rules of Civil Procedure,
the ten day time period expired on April 6, 1998. Plaintiff did
not file his motion until April 14, 1998, eight days beyond
the required ten day period. Accordingly, plaintiff's motion is
untimely. *See, e.g., Recknall v. New York Power Authority,*
94–CV–1675, 1998 WL 178806 (N.D.N.Y. Apr.8, 1998) (the
court found motion for reconsideration pursuant to Local Rule
7.1(g) untimely because it was filed after the expiration of the
ten day period).

Furthermore, plaintiff has failed to demonstrate cause for
this court to reconsider its March 23, 1998 decision. In
the Second Circuit, the three grounds that generally warrant
reconsideration of a matter already decided are an intervening
change of controlling law, the availability of new evidence,
or the need to correct a clear error or to prevent manifest
injustice. *See Doe v. New York City Dep't of Social Servs.,*
709 F.2d 782 (2d Cir.1983); *Williams v. Salt City Painting
Co.,* 91–CV–320, 1993 WL 513185 (N.D.N.Y. Dec.7, 1993)
(McCurn, S.J.). While plaintiff does not refer to any of these
reasons in support of his motion, it appears to the court that
plaintiff is seeking reargument or reconsideration to either
correct a clear error or to prevent a manifest injustice.

The court has reviewed plaintiff's motion and accompanying
memorandum of law and, after due deliberation, concludes
that plaintiff has failed to demonstrate any reason why the
court should reconsider the conclusions arrived at in its March
23, 1998 Memorandum–Decision and Order. Accordingly,
the court DENIES plaintiff's motion for re-argument or
reconsideration.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1998 WL 219588

Footnotes

1    This motion for reconsideration is not made pursuant to Rule 60(b) of the Federal Rules of Civil Procedure because Rule 60(b) only applies to final judgments and orders. The March 23, 1998 Memorandum–Decision and Order was not a final judgment or order.

2012 WL 5364344
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Leroy M. DOUGLAS; and the Douglas
Corp. of Silver Lake, Plaintiffs,
v.
NEW YORK STATE ADIRONDACK
PARK AGENCY, et al., Defendants.

No. 8:10–CV–0299 (GTS/RFT). | Oct. 30, 2012.

**Attorneys and Law Firms**

Matthew D. Norfolk, Briggs, Norfolk Law Firm, Lake Placid, NY, for Plaintiffs.

Gregory J. Rodriguez, Susan Lee Taylor, Office of the Attorney General, Albany, NY, Loretta Marie Simon, New York State Attorney General, Albany, NY, Edward R. Conan, Bond, Schoeneck Law Firm, Syracuse, NY, Lawrence M. Ordway, Jr., Cecelia R. Cannon, James L. Sonneborn, Bousquet, Holstein Law Firm, Syracuse, NY, Daniel J. Stewart, Brennan, White Law Firm, Queensbury, NY, for Defendants.

*DECISION and ORDER*

GLENN T. SUDDABY, District Judge.

 **\*1** Currently pending before the Court, in this civil rights action filed by Leroy M. Douglas Corporation of Silver Lake ("Plaintiffs") against the New York State Adirondack Park Agency and six of its employees ("APA Defendants"), the Adirondack Council, Inc., and two of its members ("AC Defendants"), Brian Ruder ("Defendant Ruder"), Hawkeye Conservationists, Inc. ("Defendant Hawkeye"), and ten John Does, are the following two motions: (1) Plaintiffs' motion to correct a clerical mistake in the Court's Decision and Order of September 11, 2012, under Fed.R.Civ.P. 60(a) and/or for reconsideration or reargument under Fed.R.Civ.P. 60(b); and (2) Defendant Hawkeye's motion for reconsideration of the Court's Decision and Order of September 11, 2012, under Fed.R.Civ.P. 59(e) and Local Rule 7.1(g). (Dkt.Nos.92, 100.) For the reasons set forth below, Plaintiff's motion is granted in part and denied in part; and Defendant Hawkeye's motion is denied.

# I. RELEVANT BACKGROUND

## A. Court's Decision and Order of September 11, 2012

Because this Decision and Order is intended primarily for the review of the parties, and they have demonstrated an accurate familiarity with the Court's Decision and Order of September 11, 2012, the Court will not describe in detail that Decision and Order. Rather, the Court will merely state that the Decision and Order did the following five things, inter alia: (1) it stated in a footnote that Plaintiff's claim of conspiracy pursuant to "Section 1985" survives as against the APA Defendants; (2) it dismissed Plaintiffs' state-law claim of malicious prosecution against APA Defendants arising out of Administrative Enforcement Proceeding E2007–47 based on the one-year limitations period set forth in N.Y. C.P.L.R. § 215(3); (3) it dismissed Plaintiffs' state-law claim of abuse of process against APA Defendants arising out of Administrative Enforcement Proceeding E2007–47 based on the one-year limitations period set forth in N.Y. C.P.L.R. § 215(3); (4) it did not dismiss Plaintiffs' substantive-due-process claim against Defendant Hawkeye; and (5) it did not dismiss Plaintiffs' state-law claim of tortious interference with contract against Defendant Hawkeye. (*See generally* Dkt. No. 91.)

## B. Parties' Briefing on Plaintiffs' Motion

Although Plaintiffs' motion is, in part, incorrectly based on Fed.R.Civ.P. 60(b), the Court will liberally construe it as having been partially based on Local Rule 7.1(g), out of special solicitude to Plaintiffs as civil rights litigants.

Liberally construed, Plaintiff's motion argues that reconsideration is necessary for three reasons: (1) the existence of a typographical error in footnote 46 on page 117 of the Decision and Order, which states that Plaintiff's claim of conspiracy pursuant to "Section 1985" survives as against the APA Defendants, when the Court clearly intended (based on its ruling in Part III.A.1. of the decision) to state that the claim of conspiracy pursuant to "Section 1983" survives as against the APA Defendants; (2) the existence of a clear error of law, and/or creation of manifest injustice, on pages 41–43 and 117 of the Decision and Order, which dismissed Plaintiffs' state-law claim of malicious prosecution against APA Defendants arising out of Administrative Enforcement Proceeding E2007–47 based on the one-year limitations period set forth in N.Y. C.P.L.R. § 215(3), when that claim did not accrue until the termination of that proceeding, which

(according to Paragraph 197 of the Complaint) allegedly occurred in the fall of 2009, less than one year before the filing date of this action, on March 15, 2010; and (3) the existence of a clear error of law, and/or creation of manifest injustice, on pages 41–43 and 117 of the Decision and Order, which dismissed Plaintiffs' state-law claim of abuse of process against APA Defendants arising out of Administrative Enforcement Proceeding E2007–47 based on the one-year limitations period set forth in N.Y. C.P.L.R. § 215(3), when that claim did not accrue until the termination of that proceeding, which (according to Paragraph 197 of the Complaint) allegedly occurred in the fall of 2009, less than one year before the filing date of this action, on March 15, 2010. (Dkt. No. 92, Attach. 2, at 2–3 [Plfs.' Memo. of Law]; *see also* Dkt. No. 92, Attach. 1, at ¶¶ 5–8 [Plfs.' Atty. Affid.].)

**\*2** In their opposition to Plaintiffs' motion, the APA Defendants assert four arguments: (1) Plaintiffs' reliance on Fed.R.Civ.P. 60(b) is inapposite, because that rule applies only to "a final judgment, order or proceeding," and the Decision and Order in question was not a final judgment, order or proceeding, but an interlocutory order; (2) Plaintiffs should not be permitted to challenge Defendants' statute-of-limitations argument because they failed to do so below, and case law makes clear that a motion for reconsideration is not a vehicle for taking a "second bite at the apple; (3) in any event, even if the Court were to consider Plaintiffs' grounds for reconsideration, the APA Defendants' burden on their underlying motion to dismiss the two state-law claims in question was lightened by the fact that Plaintiffs failed to oppose that motion, raising Plaintiffs' burden on its motion for reconsideration too high for them to meet, as happened in *Continental Ins. Co. v. Coyne Int'l Enter. Corp.,* 700 F.Supp.2d 207, 217–18 (N.D.N.Y.2010) (Suddaby, J.); and (4) in any event, as the APA Defendants explained in their underlying motion papers, alternative grounds exist on which to base a dismissal of the claims in question, specifically, (a) the fact that Administrative Enforcement Proceeding E2007–47 was supported by probable cause, (b) the fact that Administrative Enforcement Proceeding E2007–47 was not pursued by the APA Defendants with the required malice, and (c) the fact that, to recover on their abuse-of-process claim, Plaintiffs must allege and prove actual or special damages, but have not done so. (Dkt. No. 108.)

Neither the AC Defendants nor Defendant Ruder have filed an opposition to Plaintiff's motion. (*See* Dkt. Nos. 109, 110.) Similarly, Defendant Hawkeye has not filed an opposition to Plaintiff's motion. (*See generally* Docket Sheet.) While

Defendant Hawkeye filed its own motion for reconsideration, that motion did not contain an opposition to Plaintiff's motion. (*See* Dkt. No. 100.)

In reply to the APA Defendants' opposition, Plaintiffs argue as follows: (1) whether its Decision and Order was a final order or not, the Court may correct it and reinstate Plaintiffs' state-law claims for malicious prosecution and abuse of process; and (2) Plaintiffs sufficiently opposed the APA Defendants' statute-of-limitations argument by (a) submitting a "voluminous set of papers" opposing the APA Defendants' motion to dismiss "in its entirety," and (b) recounting "the chain of events and the dates or times of the actionable conduct allegedly committed by the APA Defendants." (Dkt. No. 114.)

## C. Parties' Briefing on Defendant Hawkeye's Motion

In its motion, Defendant Hawkeye argues that reconsideration is necessary for the following two reasons: (1) the existence of a clear error of law, and/or creation of manifest injustice, on pages 23–25 and 86 of the Decision and Order, which refused to dismiss Plaintiffs' substantive-due-process claim against Defendant Hawkeye, despite the fact that (a) on pages 3 and 118 of the Decision and Order, the Court granted in its entirety Defendant Hawkeye's motion to dismiss, and (b) on pages 77–81 of its Decision and Order, the Court found that there was no factual allegations plausibly that Defendant Hawkeye was a state actor or was conspiring with a state actor; and (2) the existence of a clear error of law, and/or creation of manifest injustice, on page 115 of the Decision and Order, permitted Plaintiff to file (in his Amended Complaint) a state-law claim of tortious interference with contract against Defendant Hawkeye even though the Amended Complaint is devoid of any factual allegations plausibly suggesting that Defendant Hawkeye "interfered with anything." (Dkt. No. 100, Attach. 2, at 2–4 [Def. Hawkeye's Memo. of Law]; *see also* Dkt. No. 100, Attach. 1, at ¶¶ 3–6 [Def. Hawkeye's Atty. Affid.].)

**\*3** In their opposition to Defendant Hawkeye's motion, Plaintiffs assert the following five arguments: (1) Defendant Hawkeye's reliance on Fed.R.Civ.P. 59(e) is inapposite, because Fed.R.Civ.P. 60 governs its motion for reconsideration; (2) the reason the Court did not dismiss Plaintiffs' substantive-due-process claim against Defendant Hawkeye was that Defendant Hawkeye never, in its underlying motion to dismiss, challenged the pleading sufficiency of the elements of that claim (and thus it would be improper for the Court to entertain such a challenge now);

(3) in any event, even if the Court were to entertain such a challenge now, the fact that the Court found that Plaintiffs had not pled facts plausibly suggesting that Defendant Hawkeye was not a state actor for purposes of Plaintiffs' malicious-prosecution claim does not require the Court to make such a finding with regard to Plaintiffs' substantive-dueprocess claim, because the Court found that a substantive-due-process claim is distinct from a maliciousprosecution claim; (4) in its opposition to Plaintiffs' underlying cross-motion for leave to amend, Defendant Hawkeye never challenged the pleading sufficiency of the elements of that claim, but merely argued that the proposed amendment "would be futile because it would be subject to the same arguments that are presently before the Court, namely that Hawkeye Conservationists, Inc. is not a state actor and did not engage in any conduct which would violate 42 U.S.C. § 1983," which arguments do not apply to Plaintiffs' state-law tortious-interferencewith-contact claim (and thus it would be improper for the Court to entertain such a challenge now); and (5) in any event, even if the Court were to entertain such a challenge now, Defendant Hawkeye points to no specific pleading deficiency in that claim, other than to argue that the Amended Complaint is devoid of any factual allegations plausibly suggesting that Defendant Hawkeye "did anything." (Dkt. No. 112.)

Neither the AC Defendants nor Defendant Ruder have filed an opposition to Plaintiff's motion. (Dkt.Nos.119, 110.) Similarly, while the APA filed an opposition to Plaintiffs' motion for reconsideration, that opposition did not contain an opposition to Defendant Hawkeye's motion. (*See* Dkt. No. 109.)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motion to Correct a Clerical Mistake Pursuant to Fed.R.Civ.P. 60(a)

Rule 60(a) of the Federal Rules of Civil Procedure provides as follows:

**Corrections Based on Clerical Mistakes; Oversights and Omissions.** The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice.

Fed.R.Civ.P. 60(a) (emphasis in original).

### B. Legal Standard Governing Motion for Reconsideration or Reargument Pursuant to Fed.R.Civ.P. 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure provides as follows:

**\*4 Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed.R.Civ.P. 60(b) (emphasis in original).

This rule does not apply where the order or judgment in question is not a final one (such as a partial granting of a motion to dismiss and denial of a cross-motion to amend). *See, e.g., Makas v. New York State Dep't of Motor Vehicles,* 97–CV–1892, 1998 WL 219588,\*1, n. 1 (N.D.N.Y. April 29, 1998) ("This motion for reconsideration is not made pursuant to Rule 60(b) of the Federal Rules of Civil Procedure because Rule 60(b) only applies to final judgments and orders. The March 23, 1998 Memorandum–Decision and Order [which granted motions to dismiss by two of the three defendants, and denied plaintiff's cross-motion to amend] was not a final judgment or order.") (McCurn, J.) [1] Rather, in such a case, reconsideration is properly sought under Local Rule 7.1(g).

### C. Legal Standard Governing Motion for Reconsideration Pursuant to Fed.R.Civ.P. 59(e) and Local Rule 7.1(g)

Rule 59(e) of the Federal Rules of Civil Procedure provides as follows: "**Motion to Alter or Amend a Judgment.** A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed.R.Civ.P. 59(e) (emphasis in original).

As the rule indicates, a judgment must be entered for this rule to be invoked. *See* 11 Charles Alan Wright, Arthur R. Miller, Mary Kane, and Richard L. Marcus, *Federal Practice & Procedure* § 2817 & n. 7 (2d ed.2012) ("[A] Rule 59(e) motion is ... considered untimely if it is made before the entry of judgment."). A "judgment" is defined by Fed.R.Civ.P. 54(a) as a "decree [or] any order from which an appeal lies." Fed.R.Civ.P. 54(a). "Because a denial of a motion to dismiss is an interlocutory order from which no appeal lies, *see* 28 U.S.C. § 1292(a), a motion pursuant to 59(e) to modify this order is procedurally improper." *In re Palermo,* 08–CV7421, 2011 WL 446209, at \*4 (S.D.N.Y. Feb.7, 2011); *accord, Kittay v. Korff,* 08–CV–7421, 2011 WL 446209, at \*4 (S.D.N.Y. Feb.4, 2011) ("Because a denial of a motion to dismiss is an interlocutory order from which no appeal lies ... a motion pursuant to 59(e) to modify this order is procedurally improper ... [and] the only ground available for [defendant] to move for reconsideration is under Local Civil Rule 6.3."). For the same reason, Fed.R.Civ.P. 59(e) may not be relied on to seek reconsideration of an order partially granting a motion to dismiss. *Cf. Williams v. Cnty. of Nassau,* 779 F.Supp.2d 276, 280 n. 2 (E.D.N.Y.2011) (explaining that Fed.R.Civ.P. 59[e] does not apply to a motion for reconsideration of an order denying in part and granting in part a motion for summary judgment);

**\*5** Rather, in such cases, reconsideration is properly sought, in this District, under Local Rule 7.1(g). Local Rule 7.1(g) provides as follows, in pertinent part:

> **Motion for Reconsideration.** Unless Fed.R.Civ.P. 60 otherwise governs, a party may file and serve a motion for reconsideration or reargument no later than **FOURTEEN DAYS** after the entry of the challenged judgment, order, or decree. All motions for reconsideration shall conform with the requirements set forth in L.R. 7.1(a)(1) and (2). The briefing schedule and return date applicable to motions for reconsideration shall conform to L.R. 7.1(b)(2).... The Court will decide motions for reconsideration or reargument on submission of the papers, without oral argument, unless the Court directs otherwise.

N.D.N.Y. L.R. 7.1(g) (emphasis in original).

Generally, a court may justifiably reconsider its previous ruling if "[1] there has been an intervening change in controlling law, [2] there is new evidence, or [3] a need is shown to correct a clear error of law or to prevent manifest injustice." *U.S. v. Sanchez,* 35 F.3d 673, 677 (2d Cir.), *cert. denied,* 514. U.S. 1038 (1995); *accord, Doe v. New York City Dep't of Soc. Servs.,* 709 F.2d 782, 789 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); 18B Wright & Miller, *Federal Practice and Procedure* § 4478, at 670–691 (2d ed. 2002 & Supp.2009). Such is the standard for motions for reconsideration filed under Local Rule 7.1(g) in this District. *See, e.g., In re CTC 9th Ave. P'ship,* 182 B.R. 1, 3 (N.D.N.Y.1995) (McAvoy, C.J.); *Cayuga Indian Nation of New York v. Pataki,* 188 F. Supp.2d 223, 244 (N.D.N.Y.2002) (McCurn, S.J.); *Sumner v. McCall,* 103 F.Supp.2d 555, 558 (N.D.N.Y.2000) (Kahn, J.).

The standard for granting a motion for reconsideration is strict. *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). A motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader,* 70 F.3d at 257. Furthermore, a motion for reconsideration is not to be used for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'...." *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir.1998).

### III. ANALYSIS

#### A. Plaintiffs' Motion

#### 1. Whether the Court Should Amend Footnote 46 on Page 117 of its Decision and Order of September 11, 2012

After carefully considering the matter, the Court answers this question in the affirmative for the reasons offered in Plaintiffs' initial memorandum of law. *See, supra,* Part I.B. of this Decision and Order. The Court would add only that, because the APA Defendants failed to oppose this argument, Plaintiffs' burden with regard to it is lightened such that, in order to succeed on it, they need only show their entitlement to the relief requested with regard to it, which has appropriately been characterized as a "modest" burden. *Dottolo v. Byrne Dairy, Inc.,* 08–CV–0390, 2010 WL 2560551, at \*7, n. 13 (N.D.N.Y. June 22, 2010) (Suddaby, J.) (collecting authorities). While Plaintiffs have met that modest burden with regard to that argument, the Court would accept

that argument even if it were to subject that argument to the more rigorous scrutiny appropriate for a contested motion.

**\*6** *For these reasons, the fifth claim described in footnote 46 of the Court's Decision and Order of September 11, 2012, is hereby amended to read as follows:* "Plaintiffs' conspiracy claim pursuant to 42 U.S.C. § 1983."

## 2. Whether the Court Should Vacate Its Dismissal of Plaintiffs' State–Law Claim of Malicious Prosecution Against APA Defendants Arising Out of Administrative Enforcement Proceeding E2007–47

After carefully considering the matter, the Court answers this question in the affirmative for the reasons offered in Plaintiffs' initial memorandum of law. *See, supra,* Part I.B. of this Decision and Order. The Court would add only the following analysis.

Under New York law, the one-year statute of limitations governing a cause of action for malicious prosecution begins to run upon termination of the underlying proceeding. *10 Ellicott Square Court Corp. v. Violet Realty, Inc.,* 81 A.D.3d 1366, 1368, 916 N.Y.S.2d 705 (N.Y.App. Div., 4th Dep't 2011); *see also Syllman v. Nissan,* 18 A.D.3d 221, 222, 794 N.Y.S.2d 351 (N.Y.App. Div., 1st Dep't 2005) ("The second cause of action, for malicious prosecution, is barred by the statute of limitations since the underlying lawsuits were terminated more than one year before plaintiff commenced the instant action (CPLR 215[3] )."); *Ragland v. New York City Housing Auth.,* 201 A.D.2d 7, 9, 613 N.Y.S.2d 937 (N.Y.App. Div., 2d Dep't 1994) ("[T]he cause of action sounding in malicious prosecution did not accrue until November 7, 1991, when the charges were dismissed by the Criminal Court.").

In their Complaint, Plaintiffs alleged facts plausibly suggesting that the underlying proceeding terminated in the fall of 2009, less than one year before the filing date of this action, on March 15, 2010. (*See, e.g.,* Dkt. No. 1, at ¶ 197 [alleging that "in the fall of 2009, after more than two years of prosecuting plaintiffs in APA administrative enforcement proceeding E2007–47, the Agency Defendants discontinued the proceeding with prejudice"].)

While the Court acknowledges the high hurdle Plaintiffs must overcome with regard to this aspect of their motion (due to the fact that they failed to respond to the APA Defendants' underlying statute-of-limitations argument regarding this

claim),[2] the Court finds that they have overcome that hurdle. The Court included Plaintiffs' state-law malicious-prosecution claim against the APA Defendants among the list of dismissed state-law claims against the APA Defendants out of mere oversight; and it would result in manifest injustice to not correct that error now.

With regard to the alternative grounds that the APA Defendants offer for dismissing the claim in question (specifically, the fact that Administrative Enforcement Proceeding E2007–47 was supported by probable cause, and the fact that Administrative Enforcement Proceeding E2007–47 was not pursued by the APA Defendants with the required malice), the Court rejects those arguments for the same reasons that it rejected them in its Decision and Order, i.e., the reasons offered by Plaintiffs in their underlying opposition memorandum of law. (Dkt. No. 91, at 28–30.)

**\*7** *For these reasons, Plaintiffs' state-law claim of malicious prosecution against APA Defendants arising out of Administrative Enforcement Proceeding E2007–47 is hereby reinstated.* The second paragraph of Part III.A.3.m. of this Court's Decision and Order of September 11, 2012, is hereby amended so as to *not dismiss* that claim. Similarly, the fourteenth claim listed in the first "So Ordered" Paragraph at the end of this Court's Decision and Order of September 11, 2012, is hereby deleted. Finally, footnote 46 of the Court's Decision and Order is amended so as to list seven surviving claims against the APA Defendants, the seventh claim being Plaintiffs' state-law claim of malicious prosecution against APA Defendants arising out of Administrative Enforcement Proceeding E2007–47.

## 3. Whether the Court Should Vacate Its Dismissal of Plaintiffs' State-law Claim of Abuse of Process Against APA Defendants Arising Out of Administrative Enforcement Proceeding E2007–47

After carefully considering the matter, the Court answers this question in the negative.

As an initial matter, it is far from clear that, under New York law, the one-year statute of limitations governing a cause of action for abuse of process begins to run upon termination of the underlying proceeding, as opposed to initiation of that proceeding. The New York Court of Appeals has rather expressly held that "accrual of a cause of action for abuse of process need not await the termination of an action in claimant's favor." *Cunningham v. State of New York,*

53 N.Y.2d 851, 853, 440 N.Y.S.2d 176, 422 N.E.2d 821 (N.Y.1981). Granted, the Third Department has attempted to limit that holding to claims arising under Court of Claims Act § 10. *See Dobies v. Brefka,* 263 A.D.2d 721, 723, 694 N.Y.S.2d 499 (N.Y.App.Div., 3d Dept., 1999) ("While the Court of Appeals has held that in an action under Court of Claims Act § 10, accrual of a cause of action for abuse of process need not await the termination of an action in claimant's favor, here the abuse of process would not have been actionable until the proceeding was concluded since plaintiff would not have been able to allege that he suffered an injury without justification until the proceeding was terminated ....") (internal quotation marks and citation omitted). While some courts have accepted that attempt, others have rejected it, explaining that "termination of the challenged proceedings is not an element of an abuse of process claim under New York law." *See, e.g., Norton v. Town of Islip,* 04–CV–3079, 2009 WL 804702, at * 10 (E.D.N.Y. March 27, 2009), *rev'd in part on other grounds by* 378 F. App'x 85 (2d Cir.2010).[3] However, the Court can imagine a rule holding both that an abuse-of-process claim may be ripe upon the issuance of the process in question, but that the accrual date (for purposes of a statute of limitations) as a matter of policy is effectively tolled until the termination of the proceeding in which the process was issued.[4] Fortunately, the Court need not, and does not, resolve this thorny issue, because an alternative reason exists to reject Plaintiffs' argument that this claim should be reinstated.

**\*8** Specifically, the Court is persuaded by the APA Defendants' underlying argument that the mere opening of Administrative Enforcement Proceeding E2007–47, which was akin to the issuance of a civil summons and complaint (necessary to obtain jurisdiction and begin a lawsuit), was not the use of "regularly issued legal process to compel performance or forbearance of some act," for purposes of an abuse-of-process claim. (Dkt. No. 40, Attach. 1, at 55–56 [attaching pages "46" and "47" of APA Defs.' Memo. of Law]; Dkt. No. 65, at 20 [attaching page "16" of APA Defs.' Reply Memo. of Law].)

As the APA Defendants correctly observed in their underlying reply memorandum of law, Plaintiffs failed to respond to this argument in their response memorandum of law. (Dkt. No. 56, Attach. 4, at 1–4 [attaching pages "35" through "38" of Plfs.' Opp'n Memo. of Law].) As a result, the APA Defendants' burden with regard to the argument was

modest. The APA Defendants have met that modest burden with regard to that argument.

In reaching this conclusion, in addition to relying on the three cases cited by the APA Defendants, the Court relies on the following four other cases: *Muro–Light v. Farley,* 95 A.D.3d 846, 847, 944 N.Y.S.2d 571 (N.Y.App. Div., 2d Dep't 2012) ("The institution of a civil action by summons and complaint will not give rise to a claim to recover damages for abuse of process, as doing so is not legally considered the type of process capable of being abused...."), *Sokol v. Sofokles,* 136 A.D.2d 535, 536, 523 N.Y.S.2d 155 (N.Y.App. Div., 2d Dep't 1988); *Schwartz v. Sayah,* 72 A.D.3d 790, 792, 899 N.Y.S.2d 316 (N.Y.App.Div., 2d Dept.2010) (holding that the mere commencement of plaintiff's civil action against defendant for conversion could not constitute an abuse of process) *Ashcraft Excavating Co., Inc. v. Clark,* 79 A.D.2d 722, 723, 434 N.Y.S.2d 738 (N.Y.App. Div., 3d Dep't 1980) ("One of the three essential elements of the tort of abuse of process ... is that there be regularly issued process, civil or criminal, compelling the performance or forbearance of some prescribed act.... Defendants' initiation of the proceedings described in the present case [in which they filed a petition against developer pursuant to Article 78 seeking to nullify town board's approval of developer's subdivision plans] clearly does not satisfy this basic requirement.").

The Court would add only that it is not persuaded by the alternative ground that the APA Defendants offer, in their opposition to Plaintiffs' motion for reconsideration, for dismissing the claim in question (specifically, the fact that, to recover on their abuse-of-process claim, Plaintiffs must allege and prove actual or special damages, but have not done so). The Court rejects that argument for the same reasons that it rejected that argument in its Decision and Order of September 11, 2012, i.e., the reasons offered by Plaintiffs in their underlying opposition memorandum of law. (Dkt. No. 91, at 28–30.)

For these reasons, Plaintiffs' state-law claim of abuse of process against APA Defendants arising out of Administrative Enforcement Proceeding E2007–47 remains dismissed.

### B. Defendant Hawkeye's Motion

### 1. Whether the Court Should Dismiss Plaintiffs' Substantive–DueProcess Claim Against Defendant Hawkeye

**\*9** After carefully considering the matter, the Court answers this question in the negative for the reasons offered in Plaintiffs' opposition memorandum of law. *See, supra,* Part I.C. of this Decision and Order. The Court would add only the following analysis.

Defendant Hawkeye makes some good arguments regarding Plaintiffs' substantive-due-process claim against it. The time to make those arguments was when it filed its motion to dismiss. If Defendant Hawkeye had made those arguments at that time, Plaintiffs would have been required to respond to them or risk lightening Defendant Hawkeye's burden with regard to them; and the Court would have ruled on them. Instead, Defendant Hawkeye did not raise those arguments.[5] As a result, Plaintiffs did not have fair notice of them, and did not have a chance to respond to them; and the Court did not rule on them.[6] That is why the Court could, and did, grant Defendant Hawkeye's motion to dismiss in its entirety, while permitting this claim to survive. The only thing that would be "manifestly unjust" would be to dismiss that claim now (on a motion for reconsideration of an decision disposing of a motion that did not request the dismissal of the claim).[7] Of course, Defendant Hawkeye is free to challenge the pleading sufficiency of this claim on a motion for summary judgment.[8] But, for now, discovery on this claim shall proceed as U.S. Magistrate Judge Randolph F. Treece sees fit.

For these reasons, Plaintiffs' substantive-due-process claim against Defendant Hawkeye remains pending.

### 2. Whether the Court Should Dismiss Plaintiffs' State–Law TortiousInterference–with–Contract Claim Against Defendant Hawkeye

After carefully considering the matter, the Court answers this question in the negative for the reasons offered in Plaintiffs' opposition memorandum of law. *See, supra,* Part I.C. of this Decision and Order. The Court would add only the following analysis.

Again, Defendant Hawkeye makes a good argument regarding Plaintiffs' tortiousinterference-with-contract claim: the time to make that argument challenging that claim was when it filed its opposition to Plaintiffs' motion to amend. Instead, Defendant Hawkeye made other arguments, not relevant to that claim, in that opposition.[9] (*Compare* Dkt. No. 100, Attach. 2, at 3–4 [Def. Hawkeye's Memo. of Law] *with* Dkt. No. 58, at ¶ 4 [Def. Hawkeye's Opp'n Affid., arguing merely that "would be futile because it would be subject to the same arguments that are presently before the Court, namely that Hawkeye Conservationists, Inc. is not a state actor and did not engage in any conduct which would violate 42 U.S.C. § 1983"].) As a result, it would be wholly improper to dismiss that claim now. Again, Defendant Hawkeye is free to challenge the pleading sufficiency of this claim on a motion for summary judgment; but, for now, discovery on this claim shall proceed as Magistrate Judge Treece sees fit.

**\*10** For these reasons, Plaintiffs' state-law tortious-interference-with-contract claim against Defendant Hawkeye remains pending.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiffs' motion for reconsideration (Dkt. No. 92) is *GRANTED* **in part** in accordance with Parts III.A.1. and III.A.2. of this Decision and Order, **and otherwise** *DENIED;* and it is further

**ORDERED** that Defendant Hawkeye's motion for reconsideration (Dkt. No. 100) is *DENIED.*

### All Citations

Not Reported in F.Supp.2d, 2012 WL 5364344

---

Footnotes

1    *See also Pickering–George v. Cuomo,* 10–CV–0771, 2011 WL 1832560, at \*4 (N.D.N.Y. May 12, 2011) ("Under the circumstances, Rule 60 does not ... govern ... because the Order of which Plaintiff seeks reconsideration [which conditioned dismissal of Plaintiff's action on his failure to file an Amended Complaint] is not a final one but an interlocutory one.") (Suddaby, J.) (internal quotation marks omitted); *Mayes v. Messercola,* 94–CV–0026, 2000 WL 1919874, at \*1, n. 1 (N.D.N.Y. Dec.21, 2000) ("Fed. R. Civ.P.60(b), which only applies to final judgments and orders, is not implicated here because the October 4, 2000 decision held judgment in abeyance pending the outcome of the § 431(c) claim. Thus, it was not a final judgment or order.") (McCurn, J.); *Recknall v. New York Power Auth.,* 94–CV–1675, 1998 WL 178806,

at *1, n. 2 (N.D.N.Y. Apr.8, 1998) (Pooler, J.) ("Denial of a motion for summary judgment is not a final order within the meaning of Fed.R.Civ.P. 60(b).").

2    The Court rejects Plaintiffs' argument, asserted in their reply, that they responded to the APA Defendants' underlying statute-of-limitations argument regarding this claim.

3    *See also Honzawa v. Honzawa,* 268 A.D.2d 327, 330–31, 701 N.Y.S.2d 411 (N.Y.App.Div., 1st Dept.2000) (holding that the statute of limitations governing an action for an abuse of process may begin to run from the date of a letter demanding the release of attached funds in escrow from an attorney and threatening a lawsuit, if there is a refusal to release the funds).

4    *See, e.g., Daystar Constr. Mgmt., Inc. v. Mitchell,* No. 04C–05–175, 2006 WL 2053649, at *11 (Del.Super. July 12, 2006) (considering contribution and indemnification claims to be ripe even when they have not yet accrued).

5    On page 85 of the Decision and Order, the Court rather clearly stated that "[i]t does not appear that Defendant Hawkeye specifically challenges the pleading sufficiency of the elements of Plaintiffs' due process claims against it in its motion to dismiss (other than to challenge the sufficiency of the allegation that it was a state actor for purposes of all of Plaintiffs' federal claims)." (Dkt. No. 91, at 85.) Because Defendant Hawkeye did not identify this claim, Defendant Hawkeye could not include that claim among the list of federal claims regarding which Defendant Hawkeye was asserting its state-actor argument. *See Ford v. Smith,* 11–CV–0212, 2012 WL 4492181, at *6 (N.D.N.Y. Sept.28, 2012) (Suddaby, J.) (finding that, because defendants did not identify plaintiff's retaliation claim, they could not have moved for dismissal of that claim); *Green v. LaClair,* 07–CV–0351, 2012 WL 1144569, at *14, 20 (N.D.N.Y. Feb.24, 2012) (Peebles, M.J.) (finding that, because defendants did not identify plaintiff's claim regarding the deprivation of exercise during keeplock confinement, they could not have moved for dismissal of that claim), *adopted,* 2012 WL 1048764 (N.D.N.Y. March 28, 2012) (Suddaby, J.); *cf. McCarroll v. Fed. Bureau of Prisons,* 08–CV–1343, Decision and Order, at 5–6 (N.D.N.Y. filed March 2, 2010) (Lowe, M.J.) ("Despite the clarity of Plaintiff's complaint, Defendants repeatedly state that Plaintiff 'alleges the DNA Act is unconstitutional' and devote several pages to arguing that Plaintiff has failed to state a Fourth Amendment claim.... As a result of this focus on issues that are not raised by this case, Defendants' briefs largely fail to discuss the issues that are raised by this case.").

6    While the Court accepted Defendant Hawkeye's state-actor arguments with regard to each of the other federal claims, the Court never did so with regard to this claim.

7    It is conceivable to the Court that Plaintiffs could have, upon proper notice, persuaded the Court (through better briefing, if not a revised proposed Amended Complaint) that Defendant Hawkeye could be a state actor for purposes of a substantive-due-process claim while not being a state actor for purposes of a malicious-prosecution claim. *See George v. Pacific–CSC Work Furlough,* 91 F.3d 1227, 1230 (9th Cir.1996) ("An entity may be a state actor for some purposes but not for others."); *accord, Lee v. Katz,* 276 F.3d 550, 555, n. 5 (9th Cir.2002); *Cornish v. Corr. Servs. Corp.,* 402 F.3d 545, 550 (5th Cir.2005); *Bell v. Mgmt. & Training Corp.,* 122 F. App'x 219, 223 (6th Cir.2005); *Caviness v. Horizon Cmty. Learning Ctr.,* 590 F.3d 806, 813 (9th Cir.2010).

8    "To the extent that a defendant's motion for summary judgment under Fed.R.Civ.P. 56 is based entirely on the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6)." *Wade v. Tiffin Motorhomes, Inc.,* 686 F.Supp.2d 174, 181–82 (N.D.N.Y.2009) (Suddaby, J.). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique,* 405 F.2d 270, 273–74 (2d Cir.1968).

9    Furthermore, Defendant Hawkeye made those arguments in a two-page attorney affidavit. Counsel is respectfully reminded that such a practice simultaneously violates Local Rule 7.1(a)(2)'s proscription against affidavits containing legal arguments, and Local Rule 7.1(a)(1)'s requirement that memoranda of law contain table of contents (and citations to legal authorities). *See Topliff v. Wal–Mart Stores East LP,* 04–CV–0297, 2007 WL 911891, at *23 (N.D.N.Y. March 22, 2007) (Lowe, M.J.) ("[T]o the extent that Plaintiff's counsel is attempting to present arguments in refutation of the arguments advanced by Defendant ..., the place for those arguments is in Plaintiff's opposition memorandum of law."); *accord, Danford v. City of Syracuse,* 09–CV–0307, 2012 WL 4006240, at *4 & nn. 9–11 (N.D.N.Y. Sep 12, 2012) (Suddaby, J.) ("The requirement that a memorandum of law contain a table of contents is an important one warranting enforcement, because it requires a party to separate and label its legal arguments, and enables the Court to identify and evaluate those legal arguments.") (collecting cases).

---